FILED

2003 NOV 14  P 3: 49

US DISTRICT COURT

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE LAPENNA | : | **CIVIL ACTION** |
| | : | **MASTER DOCKET** |
| Plaintiff, | : | **3:02CV753 (SRU)** |
| v. | : | |
| | : | |
| CITY OF HARTFORD, HARTFORD | : | |
| PUBLIC SCHOOLS, STATE BOARD | : | |
| OF TRUSTEES FOR THE HARTFORD | : | |
| PUBLIC SCHOOLS, ANTHONY | : | |
| AMATO, JUNE BERNABUCCI | : | |
| and JOSE COLON-RIVAS | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| JANICE LAPENNA | : | **CIVIL ACTION NO.** |
| Plaintiff, | : | **3:03CV1126 (SRU)** |
| v. | : | |
| | : | |
| JOSE COLON-RIVAS | : | |
| Defendant. | : | |
| | : | **NOVEMBER 14, 2003** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

The Defendants, City of Hartford, Hartford Public Schools, State Board of Trustees for the Hartford Public Schools, Anthony Amato, June Bernabucci and Jose Colon-Rivas, respectfully submit this Memorandum of Law in support of its Motion for Summary Judgment. Summary judgment should enter in favor of the Defendants on all counts.

I.    BACKGROUND

Plaintiff, a physical education teacher in the Hartford public school system, originally

brought an action against the "City of Hartford/Hartford Public Schools," Anthony Amato and

June Bernabucci. Through various amendments and the commencement of another action, the

defendants in this case are now: the City of Hartford, Hartford Public Schools, the State Board

of Trustees for the Hartford Public Schools (the "State Board"), former Superintendent of

Schools Anthony Amato, June Bernabucci and Jose Colon-Rivas (hereafter "Dr. Colon")

(collectively, the "Defendants"). Plaintiff's claims revolve around her reassignment from

Hartford Public High School ("HPHS") to Noah Webster Elementary School for less than one

month at the beginning of the 2000-2001 school year. As a result of her reassignment, Plaintiff

lost her extracurricular position as HPHS's Faculty Manager. Another teacher, David Hodge,

was assigned as the Acting Faculty Manager for HPHS for the 2000-2001 school year. Even

though she did not perform the duties of Faculty Manager, Plaintiff, eventually, was paid for the

Faculty Manager position for the 2000-2001 school year—which marked the end of her

contractual term as Faculty Manager.

In the Spring of 2001, the Faculty Manager extra curricular position was posted and both

Plaintiff and Mr. Hodge applied and both were interviewed by a panel. Plaintiff admits that she

performed poorly during that interview. Consequently, Mr. Hodge was selected to be the

Faculty Manager for a two-year term.  In short, Plaintiff has been paid everything that she is conceivably owed.

Based on these occurrences, Plaintiff claims that she is the victim of unlawful age and gender discrimination and also claims that her First Amendment and Fourteenth Amendment equal protection and due process rights were violated.  The operative complaints contain the following causes of action:  (1) Claims brought pursuant to 42 U.S.C. §1983 against all Defendants, alleging:  (a) violations of Plaintiff's First Amendment right to free speech; (b) violations of Plaintiff's Fourteenth Amendment equal protection rights, based on gender discrimination; and (c) violations of Plaintiff's Fourteenth Amendment due process rights; (2) gender discrimination claims brought pursuant to Title VII and the Connecticut Fair Employment Practices Act ("CFEPA"); and (3) age discrimination claims brought pursuant to the Age Discrimination in Employment Act ("ADEA") and CFEPA.

## II.    DISCUSSION

### A.    Summary Judgment Standard.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party opposing a motion for summary judgment "may not rest

upon the mere allegations or denials of [his] pleading, but [his] response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In determining when a party has raised a genuine issue of material fact, the Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986) (citations omitted). Indeed, a plaintiff may not get to a jury without "any significant probative evidence tending to support the complaint." Anderson, 477 U.S. at 249 (quoting, First Nat'l Bank of Arizona v. Cities Servs. Co., 391 U.S. 253, 290 (1968)). The moving party's burden may be fulfilled by "pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The Second Circuit has stated that the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Yerdon v. Henry, 91 F.3d 370, 374 (2d Cir. 1996), quoting, Anderson, 477 U.S. at 252; see also, Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000) ("An inference is not a suspicion or guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist."). Further, the Second Circuit has stated that the non-movant

4

"cannot rely on inadmissible hearsay in opposing a motion for summary judgment." <u>Burlington</u>
<u>Coat Factory Warehouse Corp. v. Espirit de Corp.</u>, 769 F.2d 919, 924 (2d Cir. 1985). Thus,
"even in the discrimination context, a plaintiff must provide more than conclusory allegations of
discrimination to defeat a motion for summary judgment." <u>Meiri v. Dacon</u>, 759 F.2d 989, 998
(2d Cir.), <u>cert. denied</u>, 474 U.S. 829 (1985). In fact, the plaintiff's evidence must be precise and
specific, and may not be based on conjecture and surmise. <u>Bickerstaff</u>, 196 F.3d at 451
("affidavits must be based upon 'concrete particulars,' not conclusory allegations."); <u>Lisa's Party</u>
<u>City, Inc. v. Town of Henrietta</u>, 185 F.3d 12, 17 (2d Cir. 1999); <u>see also</u>, <u>McLee v. Chrysler</u>
<u>Corp.</u>, 109 F.3d 130, 135 (2d Cir. 1997) (plaintiff's rationalizations are insufficient to create
genuine issues of material fact). In this case, Plaintiff has failed to raise a genuine issue of
material fact necessitating a trial.

     B.     <u>Plaintiff's Sex and Age Discrimination Claims are Infirm.</u>

     In the course of discovery, Plaintiff has not produced or uncovered evidence sufficient to
create a genuine issue of material fact as to the question of whether she was the victim of
unlawful gender or age discrimination. Therefore, summary judgment should enter in favor of
the Defendants on all counts alleging gender or age discrimination.

     1.     <u>The Prima Facie Case.</u>

     In a case such as this, where the plaintiff cannot offer any direct evidence of
discrimination, the plaintiff is required to present a prima facie case. "In order to establish the

prima facie case, plaintiff must demonstrate that: (i) he is a member of a protected class; (ii) he

was qualified for the position; (iii) he was subjected to an adverse employment decision; and (iv)

either the position remained open or he was replaced by someone not a member of his protected

class." De la Cruz v. New York City Human Resources Admin. Dept. of Social Serv.s, 82 F.3d

16, 20 (2d Cir. 1996); see also, Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001)

(the McDonnell-Douglas burden shifting framework applies to ADEA claims); Sioson v. Knights

of Columbus, 160 F. Supp. 2d 316, 321 (D. Conn. 2001), appeal dismissed, 303 F.3d 458 (2d

Cir. 2002) ("The same standard applies to both the CFEPA and Title VII claims brought in this

cause of action."); Sedotto v. Borg-Warner Protective Serv.s Corp., 94 F. Supp. 2d 251, 268 (D.

Conn. 2000) ("It is well-settled that the same legal standards apply to claims under CFEPA as to

claims under Title VII and the ADEA."). Defendants acknowledge that the "level of proof a

plaintiff is required to present in order to establish a prima facie case is low." Id.

For purposes of this motion, Defendants do not contest that: Plaintiff was a member of a

protected class in that she was female and over the age of 40 when she was reassigned; Plaintiff

was qualified to teach physical education at a high school level and, thus, qualified for such

position; and when Plaintiff and another female physical education were reassigned out of

HPHS, a male and female, both under the age of 40, were reassigned to teach physical education

at HPHS. Thus, Defendants assert that Plaintiff cannot show that she suffered an adverse

employment action and that, with respect to her gender discrimination claims, she cannot prove that her assignment at HPHS was filled by a male.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabaya v. New York City Bd. of Ed., 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted). However, "not every unpleasant matter short of discharge or demotion constitutes an adverse employment action." Rider v. Town of Farmington, 162 F. Supp. 2d 45, 52 (D. Conn. 2001) (citations omitted). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Id. "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. "A lateral transfer that does not result in a reduction in pay or benefits may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiffs employment in a materially negative way." Patrolmen's Benevolent Assoc. of the City of New York, Inc. v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002), cert. denied, 123 S. Ct. 2076 (2003); de la Cruz, 83 F.3d at 21.

In this case, Plaintiff was reassigned from teaching physical education at a high school to an elementary school. As a result of this reassignment, Plaintiff has never claimed that she lost pay or benefits as a teacher. Moreover, Plaintiff cannot establish that her reassignment

materially altered her working conditions.  The record reveals that, according to Plaintiff:  the

school year began on August 28, 2000; on September 11, 2000, Dr. Colon, the principal of

HPHS, asked Plaintiff to return to HPHS, but Plaintiff did not respond to Dr. Colon's request; on

September 22, 2000, Dr. Colon called Plaintiff and again asked her whether she would return to

HPHS; on September 25, 2000, Plaintiff returned to HPHS as a physical education teacher.

Thus, Plaintiff was reassigned for less than one month.[1]  Of course, Plaintiff complains that, due

to her reassignment, she lost her extracurricular (or extra duty) position as the Faculty Manager

at HPHS.  However, the record also reveals that:  Plaintiff was paid for the entire length of her

term as the Faculty Manager, including the 2000-2001 school year; the Faculty Manager position

was posted in the Spring of 2001, in accordance with the relevant bargaining agreement; Plaintiff

applied for the Faculty Manager position at HPHS; and Plaintiff interviewed for the Faculty

Manager position.  Thus, Plaintiff did not lose any pay or benefits from the extracurricular

assignment and was allowed to apply for and interview for such position.  Unfortunately for her,

Plaintiff described her performance in the interview as "lousy."  Thus, not surprisingly, she was

not selected for the extracurricular position.  Accordingly, Plaintiff cannot show that the terms

and conditions of her employment were materially altered as a result of her very brief

reassignment.

---

[1] It must be noted that Plaintiff's failure to respond to Dr. Colon's September 11, 2000 request simply elongated the time during which she was assigned outside of HPHS.

In <u>Galabya v. New York City Bd. of Ed.</u>, 202 F.3d 636 (2d Cir. 2000), the Second Circuit

affirmed a district court's determination that a public school teacher's reassignment did not

constitute an adverse employment action. In <u>Galabya</u>, the plaintiff taught at a special education

junior high school. In 1993, because of a new school policy and union seniority rights, Galabya

was erroneously reassigned to a mainstream high school, but the principal of that school rejected

the reassignment because Galabya's skills did not fit the open position at that school. Galabya

was then reassigned to another mainstream high school. Because of administrative delays in

effecting the reassignments, Galabya did not arrive at his ultimate assignment until

approximately one month after the commencement of the school year. The Second Circuit found

that administrative miscues in the reassignment and the allegedly inferior facilities at the new

school did not amount to an adverse employment action. 202 F.3d at 640. In addressing the

issue of Gabalya's reassignment to a mainstream high school after having spent 14 years as a

special education teacher, the court compared the case to <u>Rodriguez v. Bd. of Ed.</u>, 620 F.2d 362

(2d Cir. 1980). The court summarized <u>Rodriguez</u> as follows:

> In <u>Rodriguez</u>, the plaintiff was a junior high school art teacher with twenty years
> of experience. In obtaining a master's and doctoral degree in art and art
> education, she had focused her studies on art programs for junior high school
> students. Her doctoral dissertation was titled, "A Model Arts Program for the
> Middle School of Eastchester School District No. 1." On being transferred to
> teach elementary school art, she proffered evidence that the two jobs were
> "profoundly different," so different, in fact as to render her twenty years of
> experience "useless." Additionally the plaintiff proffered evidence to show that
> the transfer was "in effect, a demotion that would constitute a serious professional

9

setback and stigma to her career." Notwithstanding this evidence, the district court granted summary judgment for the defendants, finding that there had been no adverse employment action because plaintiff had not lost salary, benefits, seniority, or tenure. Reversing this determination, we held that the transfer was a "radical change in the nature of the work," which thus constituted "interference with a condition or privilege of employment."

Galabya, 202 F.3d at 640-641 (internal citations omitted). The Galabya court concluded that "Rodriguez may be read for the proposition that a transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." 202 F.3d at 641. The court found that it was not self-evident that Galabya's reassignment was a setback for his career and no evidence in the record supported such a conclusion. Id. Consequently, no adverse employment action was found.

In considering whether a reassignment constitutes an adverse employment action, courts also take into account the duration of the reassignment. Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 23-27 (1st Cir. 2002) ("Merrero left work after spending no more than three days in her new position. Given that short time span, she could not show that the increase in work was anything more than an unintended and temporary inconvenience caused by the transition."); Como v. O'Neill, 2002 U.S. Dist. LEXIS 23314 (D. Conn. Dec. 4, 2002) (finding no adverse employment action based on a reassignment and stating: "If [Como's reassignment] obviated the overtime opportunities plaintiff was used to, it was only for a short time.").

In this case, Plaintiff was reassigned out of HPHS for less than one month of the school year. Moreover, there is no evidence in the record to suggest that this very brief reassignment constituted a setback to Plaintiff's career as a physical education teacher. Thus, Plaintiff's brief reassignment could not possibly constitute an adverse employment action sufficient to make out a prima facie case. Accordingly, summary judgment should enter on behalf of the Defendants on all of Plaintiff's gender and age discrimination claims.

    2.    <u>Non-Discriminatory Reasons for the Reassignment.</u>

In the event that the Court finds that Plaintiff has established her prima facie case, the burden of production shifts to the Defendants to articulate some legitimate, nondiscriminatory reason for the adverse employment action. <u>Farias v. Instructional Systems, Inc.</u>, 259 F.3d 91, 98 (2d Cir. 2001). "The defendant is not required to prove that the articulated reason actually motivated its actions." <u>Farias</u>, 259 F.3d at 98.

The Defendants articulate the following legitimate, nondiscriminatory reasons: In 2000, it was clear to Anthony Amato, the then-Superintendent of Schools, that HPHS would lose its accreditation from the New England Association of Secondary Schools ("NEASC"). Mr. Amato asked for and was granted one year (the 2000-2001 school year) in which to accomplish tasks necessary to preserve accreditation for HPHS. In the summer of 2000, Mr. Amato asked Dr. Colon to become the principal of HPHS and to attain accreditation for the school. Dr. Colon told Mr. Amato that he wanted to make changes at HPHS and to reassign some teachers out of the

building in order to prepare the school to attain accreditation. Mr. Amato supported Dr. Colon. Given the very short time frame, Dr. Colon had to make quick decisions. Among other reassignment decisions, Dr. Colon decided to reassign Plaintiff and another female physical education teacher away from HPHS. After speaking with Plaintiff, other physical education teachers and at least one parent, Dr. Colon realized that he had made a mistake and decided that he needed to have Plaintiff and the other female physical education teacher reassigned back at HPHS. Plaintiff returned to HPHS on September 25, 2000. Plaintiff was fully compensated for the entirety of her term as the Faculty Manager and never lost any of her teacher's pay or benefits.

> 3.    Plaintiff Cannot Present Sufficient Evidence of Intentional Gender or Age Discrimination.

"If the defendant bears its burden of production the presumption [of discrimination] drops out of the analysis . . . and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" Farias, 259 F.3d at 98 (citations omitted). "Further, [i]f the plaintiff's evidence was barely sufficient to make out a prima facie case, it may not be sufficient to establish discrimination after the defendant has proffered a neutral rationale." Stern, 131 F.3d at 312 (citations omitted).

Evidence sufficient to establish the minimal prima facie case combined with evidence of falsity of the employer's proffered reason for the employment decision may not be sufficient to

satisfy the plaintiff's burden.  <u>James v. New York Racing Ass'n.</u>, 233 F.3d 149, 155-57 (2d Cir.

2000).  In other words, if Plaintiff can offer proof that Defendant's stated reasons for not

promoting her were false, a genuine issue of material fact is <u>not</u> necessarily created.  Indeed,

proof of the falsity of a defendant's stated non-discriminatory reasons does not mean that the true

reason was illegal discrimination based on gender or age.  Thus, the Second Circuit "mandates a

case-by-case approach, with a Court examining the entire record to determine whether the

plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff.'"  <u>Schnabel v. Abramson</u>, 232 F.3d 83, 90 (2d

Cir. 2001) (citations omitted).  Thus, "the way to tell whether a plaintiff's case is sufficient to

sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports

an inference of the facts plaintiff must prove—particularly discrimination."

<u>James</u>, 233 F.3d at 157.[2]  In analyzing that evidence, "a court is not to second-guess the

defendant's judgment as long as it is not for a discriminatory reason."  <u>Cunliffe v. Sikorsky</u>

<u>Aircraft Corp.</u>, 9 F. Supp. 2d 125, 132 (D. Conn. 1998).

     With respect to Plaintiff's gender discrimination claims, Plaintiff's evidence consists of

nothing more than the fact that she and another female physical education teacher were briefly

---

[2] The Second Circuit has determined that the Supreme Court's opinion in <u>Reeves v. Sanderson Plumbing Prod.s, Inc.</u>, 530 U.S. 133 (2000) does not overrule and, in fact, is in harmony with, Second Circuit precedent in this area, as set forth in <u>Fisher v. Vassar College</u>, 114 F.3d 1332 (2d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1075 (1998).  <u>James</u>, 233 F.3d at 155-57; <u>Schnabel</u>, 232 F.3d at 89-91.

reassigned out of HPHS and that a male (David Hodge) took over her extracurricular duties as the Faculty Manager. LaPenna Tr. at 85-87, 90. Moreover, with respect to at least Mr. Amato and Ms. Bernabucci, Plaintiff is unaware of any pattern of sex discrimination. LaPenna Tr. at 91, 101. Once again, Plaintiff and the other female physical education teacher were reassigned back to HPHS after Dr. Colon realized that he had made a mistake. Plaintiff was paid for the entirety of her term as the Faculty Manager, even though she did not perform such duties during the 2000-2001 school year. With respect to the Spring 2001 posting for the Faculty Manager position, Plaintiff applied for the position and was interviewed by a panel of interviewers. Plaintiff described her performance in the interview as "lousy." LaPenna Tr. at 135. She also admitted that she went to the interview "very unprepared" and that she made a "bad professional decision by letting my emotions get in the way of that interview." LaPenna Tr. at 135, 138-140. Not surprisingly, the interview panel did not recommend her for the 2001-2003 Faculty Manager extracurricular position. In short, the record is devoid of any evidence of gender discrimination by any of the Defendants. Plaintiff may not create a genuine issue of material fact by relying upon her conclusory allegations and speculation. Because Plaintiff can present no evidence of gender discrimination, summary judgment should enter on behalf of the Defendants on Seventh and Eighth Counts of Plaintiff's Second Amended Complaint.

     With respect to her claims of age discrimination, Plaintiff can point to no relevant, specific evidence of age discrimination beyond the fact that she was briefly reassigned away

14

from HPHS and a younger person (David Hodge) took over her extracurricular duties as Faculty Manager. Plaintiff contends that, during a CHRO hearing, Dr. Colon used the phrase "new blood." However, Plaintiff does not know what Dr. Colon meant by the term "new blood" or the context within which the phrase was allegedly used. LaPenna Tr. at 95-96. Indeed, under the evidence presented, there is no suggestion that, even if Dr. Colon used the term "new blood," at the CHRO, that Dr. Colon's usage of the term evidences age discrimination. Indeed, the evidence shows that Dr. Colon wanted to reassign teachers out of HPHS and, presumably, bring in new teachers. However, there is no evidence in the record to suggest that Dr. Colon intended to bring in new teachers based on any age criteria. At best, Plaintiff's assertions as to Dr. Colon's alleged utterance of the term "new blood" constitutes a stray remark which cannot, standing alone (or with Plaintiff's alleged prima facie case), serve as a basis for avoiding summary judgment. Woroski v. Nashua Corp., 31 F.3d 105 (2d Cir. 1994).

Next, Plaintiff contends that three instances in which "young" male coaches were hired for boys' basketball coaching positions somehow supports her speculation regarding age discrimination. First, Plaintiff alleges that Anthony Menard was hired at Weaver High School to be the boys basketball coach, but does not recall who hired Mr. Menard. Plaintiff does recall that Christine Mahoney was the principal at Weaver at the time. However, Plaintiff acknowledges that Mr. Menard only lasted one year and that Plaintiff's 46 or 47 year old husband was then hired to be the boys' basketball coach. LaPenna Tr. at 96-97. Second, Plaintiff alleges that

Rudy Alvarez was hired as the boys' basketball coach at Bulkeley High School, but does not know whether he actually coached a game. Plaintiff testified that, as a result of a grievance, a man in his fifties, Eddy Griffin, was awarded the position. LaPenna Tr. at 97-98. Thus, Plaintiff does not even know whether Mr. Alvarez was, in fact, hired. Third, Plaintiff testified that Ed Quick was hired as the basketball coach at HPHS. Plaintiff thinks that someone else applied for the position but does not know the person's name. LaPenna Tr. at 99-100. In none of these examples is Plaintiff aware of any facts showing that the Defendants intentionally discriminated against anyone based on their age. In fact, in the Weaver and Bulkeley high school examples, males over the age of 40 were hired as the boys' basketball coaches. With regard to the HPHS boys' basketball position, there is no evidence that anyone over the age of 40 applied for the position. Thus, Plaintiff's speculation does nothing to support her theory regarding age discrimination. Also, these examples are irrelevant to the questions of whether age discrimination motivated Dr. Colon to briefly reassign her out of HPHS or for the interview panel to recommend Mr. Hodge for the HPHS Faculty Manager assignment in 2001. These boys basketball positions are not similarly situated to the Faculty Manager positions. In fact, Plaintiff testified that the Faculty Managers at the other City high schools were either around the same age as Plaintiff or older than Plaintiff. LaPenna Tr. at 94-95. In short, Plaintiff cannot produce sufficient evidence of age discrimination to create a genuine issue of material fact necessitating a

trial of such claims. Accordingly, summary judgment should enter in favor of the Defendants on the Fifth and Sixth Counts of the Second Amended Complaint.

      C.      <u>Plaintiff Cannot Establish a Section 1983 Claim.</u>

Summary judgment should enter in favor of the Defendants on Plaintiff's claims brought pursuant to 42 U.S.C. §1983. As then-District Judge Cabranes wrote, "'§1983 does not provide any substantive rights at all' but merely 'authorizes a cause of action based on deprivation of civil rights guaranteed by other Acts of Congress.' It is therefore evident that 'one cannot go into court and claim 'a violation of §1983'—for §1983 by itself does not protect anyone against anything.'" <u>Banerjee v. Roberts</u>, 641 F. Supp. 1093, 1103 (D. Conn. 1986) (<u>quoting, Chapman v. Houston Welfare Rights Organization</u>, 441 U.S. 600, 618, 99 S. Ct. 1905 (1979)). In this case, Plaintiff has identified three Constitutional bases for her §1983 claims: (1) the First Amendment right to free speech; (2) the Fourteenth Amendment's equal protection clause; and (3) the Fourteenth Amendment's due process clause. However, based on the record before the court, Plaintiff cannot establish a genuine issue of material fact necessitating a trial based on any of these identified rights.

      1.      <u>Plaintiff's Equal Protection Claims are Infirm.</u>

For the same reasons that Plaintiff's gender discrimination claims must fail, Plaintiff's equal protection claims must also fail. Plaintiff claims that each Defendant's conduct "constitutes intentional discrimination on the basis of Plaintiff's sex, female, and thereby

constitutes a violation of Plaintiff's right to equal protection of the laws." <u>See</u>, Second Amended Complaint at ¶¶42(b), 47(b), 52(b), 56(b) & Colon Complaint at ¶38(b).

The Second Circuit has stated that: "In analyzing whether conduct was unlawfully discriminatory for purposes of §1983, we borrow the burden-shifting framework of Title VII claims." <u>Annis v. County of Westchester</u>, 136 F.3d 239, 245 (2d Cir. 1998) ("An employee is denied her equal protection right to be free from gender discrimination when she is treated differently from other similarly situated employees, thus suffering 'disparate treatment because of gender.'"). As stated in the above section discussing Plaintiff's Title VII and CFEPA gender discrimination claims, Plaintiff simply has produced no evidence of gender discrimination beyond her alleged prima facie case.

Moreover, she has not produced any additional evidence of gender discrimination by any of the individual Defendants who are named in the §1983 counts. Therefore, if Plaintiff has failed to raise a genuine issue of material fact with respect to her Title VII and CFEPA claims, she has also failed to raise a genuine issue of material fact with respect to her equal protection claims.

Additionally, "A supervisor may be liable when he has been deliberately indifferent to an employee's complaints of sex discrimination." <u>Annis</u>, 136 F.3d at 245. Once again, Plaintiff has not produced any evidence of gender discrimination in this case. However, even if one were to assume evidence of sex discrimination, the record reveals that neither Mr. Amato nor Ms.

Bernabucci were involved in the decision to reassign Plaintiff out of HPHS. Dr. Colon made that decision. Moreover, once Dr. Colon realized that he made a mistake, he rectified that mistake by having Plaintiff reassigned to HPHS. Plaintiff was also fully compensated for the term of her service as the Faculty Manager at HPHS. Thus, to the extent that Mr. Amato or Ms. Bernabucci are considered supervisors, the facts in the record reveal nothing approaching deliberate indifference to Plaintiff's equal protection rights. Accordingly, summary judgment should enter in favor of the Defendants on all of Plaintiff's equal protection claims.

       2.     <u>Plaintiff Cannot Establish that She was Deprived of a Property Right</u>.

Plaintiff's due process claims must fail because she cannot establish that she was deprived of a property right. In her complaints, Plaintiff asserts that each Defendant's "conduct was intended to injure the Plaintiff for a reason unrelated to a legitimate government objective, and constitutes a violation of Plaintiff's due process rights." Second Amended Complaint at ¶¶42(c), 47(c), 52(c), 56(c) & Colon Complaint at ¶38(c).

In order to state a due process claim, Plaintiff must establish that she was deprived of a property or liberty interest. <u>Ciambriello v. City of Nassau</u>, 292 F.3d 307, 313 (2d Cir. 2002); <u>Kaluczky v. City of White Plains</u>, 57 F.3d 202, 211 (2d Cir. 1995). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation in it. He must, instead, have a legitimate claim of entitlement

to it." Hajjar v. Dayner, 96 F. Supp. 2d 142, 144 (D. Conn. 2000) (quoting, Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).

As Judge Goettel wrote in a similar case: "While most of the cases involving transfers concern school teachers, all of them agree that there is no property interest per se in a transfer or, by analogy, a refusal to transfer." Hajjar, 96 F. Supp. 2d at 144 (collecting cases). "In Sekor v. Board of Educ. of Ridgefield, 240 Conn. 119, 128, 689 A.2d 1112 (1997), the Connecticut Supreme Court held that a tenured teacher had a right only to a generic position as a teacher, rather than a right to a specific position, and that the school board had plenary administrative authority over her assignments." Hajjar, 96 F. Supp. 2d at 144-145.

In this case, Plaintiff was never deprived of her position as a teacher or her assignment as a physical education teacher. Rather, for a very brief period of time, Plaintiff was assigned to a different school within the district. This does not constitute the deprivation of a property interest for Constitutional purposes. Plaintiff's property interest in her teaching position does not extend to any extracurricular assignment that she may have. Moreover, in this case, Plaintiff was paid in full for her term as the Faculty Manager at HPHS. Thus, she was not deprived of any Constitutionally protected property right.

Additionally, Plaintiff cannot establish a substantive due process claim. The substantive due process clause protects individuals from encroachment on their liberty by outrageous government actions regardless of the procedures used to implement them. Sundbye v. Ogunleye,

3 F. Supp. 2d 254, 261 (E.D.N.Y. 1998). Thus, in order to prevail on a substantive due process claim, Plaintiff must prove that the municipal defendant's actions were "arbitrary or conscience-shocking, in a constitutional sense." Sundbye, 3 F. Supp. 2d at 261. Indeed, the "doctrine is applied with 'caution and restraint.'" DeLeon v. Little, 981 F. Supp. 728, 734 (D. Conn. 1997). Thus, most torts, including intentional torts by government actors, do not rise to the level of substantive due process violations. Sundbye, 3 F. Supp. 2d at 261.

In this case, the Defendants needed to retain HPHS's accreditation. Mr. Amato appointed Dr. Colon as the principal of HPHS in the summer of 2000 and he had one school year in which to save HPHS's accreditation. Dr. Colon decided that he needed to reassign some teachers out of the building in order to accomplish the task. Plaintiff was reassigned out of HPHS. When Dr. Colon realized that he had made a mistake, he was able to have Plaintiff reassigned back to HPHS. Plaintiff was paid for the entirety of her term as Faculty Manager. There is simply nothing conscience shocking about these facts from a Constitutional perspective. Additionally, the evidence reveals that Mr. Amato and Ms. Bernabucci were not involved in the decision to reassign Plaintiff out of the building. Therefore, Plaintiff cannot establish a substantive due process claim.

Accordingly, summary judgment should enter in favor of the Defendants on all of Plaintiff's due process claims.

3.     <u>Plaintiff's First Amendment Claims Must Fail Because She Cannot Establish that She Spoke Out on a Matter of Public Concern.</u>

Plaintiff's First Amendment claims must fail because she cannot establish that she spoke out on a matter of public concern. In her Complaints, Plaintiff alleges that each Defendants' conduct was "substantially motivated by Plaintiff's speech on a matter of public concern, and a desire to chill further speech, thereby depriving Plaintiff of her First Amendment rights." Complaint at ¶¶42(a), 47(a), 52(a), 56(a) & Colon Rivas Complaint at ¶38(a). However, Plaintiff cannot establish that she spoke out on a matter of public concern.

In order to make out a prima facie case of a First Amendment violation, "a government employee must show that: (1) his speech can be 'fairly characterized as constituting speech on a matter of public concern,' and (2) the speech was 'at least a 'substantial' or 'motivating' factor in the discharge." <u>Sheppard v. Beerman</u>, 317 F.3d 351, 355 (2d Cir.), <u>cert. denied</u>, 157 L. Ed. 2d 41 (2003). "A government official may nonetheless fire an employee for speaking on a matter of public concern if the employee's speech is reasonably likely to disrupt the effective functioning of the office, and the employee is fired to prevent this disruption." <u>Id</u>.

In <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983) (citations omitted), the Supreme Court explained:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency

allegedly in reaction to the employee's behavior. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State.

Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. n.7 [n.7: The inquiry into the protected status of speech is one of law, not of fact . . . .].

In her Complaint (at ¶13), Plaintiff claims to have spoken out on matters of public concern. In her deposition, Plaintiff testified that the only issues of public concern that she recalls speaking out on were confined to issues regarding the inclusion of the Sports Sciences Academy, a charter school in Hartford, in athletic contests with the traditional public high schools in Hartford. LaPenna Tr. at 44-47. Plaintiff does not recall any of the specifics of her speech regarding this issue. LaPenna Tr. at 45-46.

Putting aside the question of whether issues regarding the inclusion of the Sports Sciences Academy in athletics contests against the traditional high schools in Hartford rises to the level of public concern, there is no evidence that Plaintiff spoke out on this topic. Put another way, there is no evidence of speech in this case and, in the absence of speech, the analysis never progresses to the point of considering whether speech addressed a matter of public interest.

Plaintiff testified that she recalls attending a meeting with then-Interim Superintendent Ben Dixon, some Hartford Public Schools employees, at which discussion, spearheaded by Paul

23

Stringer, a principal in the Hartford Public Schools, revolved around Sports Sciences Academy

and the scheduling of athletic contests. LaPenna Tr. at 27-30. At this meeting, Plaintiff recalls

stating that she had been in Hartford long before any of the administrators arrived and would be

in Hartford long after they left. However, Plaintiff did not recall advocating any particular

position. LaPenna Tr. at 30-32. After this meeting, Plaintiff did not have any conversations with

June Bernabucci or any other administrator regarding the Sports Sciences Academy. LaPenna

Tr. at 31-32.

Further, Plaintiff testified that she sent a memorandum to Superintendent Amato.

LaPenna Tr. at 34 & Exhibit 3 thereto. The memo is dated October 8, 1999 and is addressed to

defendant Amato and indicates that it is from the "Athletic Coaches of the Hartford Public High

Schools." LaPenna Tr. at Exhibit 3. Plaintiff did not sign the memo, nor was she a coach at that

time. LaPenna Tr. at 34. In the letter itself, the coaches did not advocate any position. Rather,

the letter simply asked for a meeting between the coaches and Superintendent Amato. LaPenna

Tr. at 41-42 & Exhibit 3 thereto. Plaintiff was never contacted regarding this memo and does not

recall discussing it with any administrator, including Ms. Bernabucci and Mr. Amato. LaPenna

Tr. at 42-43. Plaintiff does not recall discussing her views regarding the Sports Sciences

Academy and the scheduling of athletic contests against teams from the Sports Sciences

Academy with any administrator. LaPenna Tr. at 43.

The record simply does not reveal any speech on a matter of public concern. Consequently, the Defendants could not possibly have punished Plaintiff for speaking out on a matter of public concern. Therefore, Plaintiff's First Amendment rights have not been implicated. As a result, summary judgment must enter in favor of the Defendants on all of Plaintiff's First Amendment claims.

>    4.    Ms. Bernabucci Could Not Have Caused Any Constitutional Violation.

Summary judgment should enter in favor of Ms. Bernabucci because Plaintiff cannot establish neither proximate causation nor supervisory liability as to her. Thus, Ms. Bernabucci did not proximately cause any of Plaintiff's alleged Constitutional injuries.

The Second Circuit has explained:

> Civil actions brought under §1983 are analogous to state common law tort actions, serving primarily the tort objective of compensation. A §1983 action, like its state tort analogs, employs the principle of proximate causation. Although proximate causation in the §1983 context is a question of federal law, in determining the meaning of the concept we look to those state court analogs, because the Supreme Court has made it crystal clear that principles of causation borrowed from tort law are relevant to civil rights actions brought under §1983.

Barnes v. Anderson, 202 F.3d 150, 158 (2d Cir. 1999) (multiple citations and quotation marks omitted). The record reveals that Dr. Colon made the decision to reassign Plaintiff out of HPHS. Colon Tr. at 88-89. In fact, the record reveals that Ms. Bernabucci was not involved in the decision to reassign Plaintiff out of HPHS and was opposed to Plaintiff's reassignment out of HPHS. Bernabucci Tr. at 127-133. Additionally, with respect to the 2001 Faculty Manager

interview process, Ms. Bernabucci did not cast a vote. Bernabucci Aff't. at ¶11. Thus, Ms.

Bernabucci did not proximately cause Plaintiff's alleged Constitutional injuries.

In order for supervisory personnel to be held liable under §1983, the Second Circuit has

articulated the following standard:

> A supervisory official is liable for constitutional violations if he or she (1) directly
> participated in the violation; (2) failed to remedy the violation after learning of it
> through a report or appeal; (3) created a custom or policy fostering the violation
> or allowed the custom or policy to continue after learning of it; or (4) was grossly
> negligent in supervising subordinates who caused the violation.

Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997).

Again, in this case, Dr. Colon made the decision to reassign Plaintiff out of HPHS and

Ms. Bernabucci opposed that decision. Thus, Ms. Bernabucci was not personally involved in the

decision to reassign Plaintiff or in the decision to recommend Mr. Hodge for the Faculty

Manager assignment in 2001. There is no evidence in the record to suggest that Ms. Bernabucci

was Dr. Colon's supervisor. In fact, she was not. Moreover, Mr. Amato lent Dr. Colon his

support. Amato Tr. at 18-19. Obviously, Ms. Bernabucci had no authority to overrule the

Superintendent. Therefore, Ms. Bernabucci cannot be subjected to supervisory liability.

Accordingly, summary judgment should enter in favor of Ms. Bernabucci on any claims

remaining against her.

5.    The Individual Defendants are Entitled to Qualified Immunity.

In the event that the court has not already granted summary judgment on Plaintiff's claims asserted against Mr. Amato, Ms. Bernabucci and Dr. Colon, the individual Defendants are entitled to the protections of qualified immunity. Qualified immunity protects government officials in their individual capacities when they are performing discretionary functions and when their conduct does not violate clearly established federal statutory or Constitutional rights of which a reasonable person would have known at the time in question. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Indeed, qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal [immunity] question." Behrens v. Pelletier, 516 U.S. 299, 306 (1996); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). In order to protect this entitlement, district courts are obligated to exercise their discretion to protect the substance of the qualified immunity defense. Crawford-El v. Britton, 523 U.S. 574, 598 (1998).

"A government agent enjoys qualified immunity when he or she performs discretionary functions if either (1) the conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that the conduct did not violate clearly established rights." McCullough v. Wyandanch Union Free School District, 187 F.3d 272, 278 (2d Cir. 1999).

The first inquiry, of course, is to "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all . . . ." Sound Aircraft Serv.s, Inc. v. Shoreline Aviation, Inc., 192 F.3d 329, 334 (2d Cir. 1999). Again, in this case, Plaintiff was reassigned out of HPHS for a period of less than one month and was paid for the entirety of her term as the Faculty Manager. Thus, Plaintiff has not been deprived of any constitutional right.

In the event that the Court finds that Plaintiff has provided evidence of the deprivation of a Constitutional right, the next question is whether the right is clearly established. In determining whether a right is clearly established for these purposes, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough, 187 F.3d at 278. Thus, the Second Circuit has stated, "[t]he unlawfulness must be apparent." Id. Moreover, district courts have been admonished to avoid defining the constitutional right at issue too broadly. Lewis v. Cowen, 165 F.3d 154, 166-67 (2d Cir. 1999), cert. denied, 528 U.S. 823 (1999) ("The relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech."). Undoubtedly, the act of reassigning an employee is a discretionary act. Additionally, no one would argue that, in the abstract, citizens should be aware that Americans enjoy a right to freedom of speech and a right to be free from gender and age discrimination.

However, the question of whether it was objectively reasonable for the individual Defendants to believe that their actions violated Plaintiff's right to free speech or the right to be free of gender and age discrimination favors the Defendants.

Most obviously, Ms. Bernabucci is entitled to qualified immunity. She did not make the decision to reassign Plaintiff out of HPHS. Therefore, it could not possibly be objectively reasonable for her to believe that her actions deprived Plaintiff of any Constitutional right.

Next, Dr. Colon is entitled to the protections of qualified immunity. As he admits, he made the decision to reassign Plaintiff out of HPHS and, subsequently, realized that he had made a mistake and arranged for her to come back to HPHS. While Plaintiff can argue that Dr. Colon should have known, from a programmatic perspective, that he should not have made the decision to reassign her out of HPHS, it was objectively reasonable for Dr. Colon to believe that by reassigning Plaintiff, he was not intentionally discriminating against her on the basis of her gender or age or violating her right to free speech. Dr. Colon had a very short time in which to turn the direction of HPHS around and attain accreditation. In order to do that, he felt that he needed to reassign teachers.

Finally, it was objectively reasonable for Mr. Amato to believe that by supporting whatever decisions Dr. Colon made regarding the reassignment of teachers, he was not intentionally discriminating against Plaintiff on the basis of her gender or age or somehow violating her right to free speech. Mr. Amato does not remember Plaintiff and Plaintiff admits

that she never had a conversation with Mr. Amato. Amato Tr. at 13-14, 16; Lapenna Tr. at 84.

Dr. Colon and Mr. Amato never discussed the Faculty Manager position. Colon Tr. at 184-185.

Mr. Amato had no involvement in the selection of Plaintiff for a reassignment and had no

objection to Plaintiff's return to HPHS. Amato Tr. at 17-19; Colon Tr. at 106, 184. Based on

this evidence, there was no reason for Mr. Amato to know that his support for Dr. Colon's efforts

to turn around HPHS would result in the deprivation of one of Plaintiff's Constitutional rights.

Therefore, the individual Defendants are entitled to qualified immunity on all of

Plaintiff's claims and summary judgment should enter in favor of the Defendants on all counts

asserted against them.

      6.    <u>The State Board is Entitled to Sovereign Immunity</u>.

The Supreme Court has squarely held that a state and its officials acting in their official

capacities are not person within the meaning of §1983. <u>Will v. Michigan Dept. of State Police</u>,

491 U.S. 58, 64, 71 (1989). Of course, §1983 provides in relevant part that "Every <u>person</u> who,

under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . .

subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law . . ." Naturally, because §1983 only subjects "persons" to liability and

because the state is not a person for §1983 purposes, the state cannot be held liable for damages

under §1983.

The State Board was established by the Connecticut General Assembly through Special Act 97-4. State Board members were selected by the Governor and legislative leaders within the General Assembly. Special Act 97-4(3). The State Board was created in response to a legislative finding that the Hartford schools were in a state of crisis and the General Assembly made the State Board solely responsible for the management of the Hartford school district. Special Act 97-4(1), (2). As such, the State Board was the state agency created by the General Assembly to govern, manage and oversee the finances of the Hartford school system. As a result, the State Board is a state agency entitled to the protections of sovereign immunity. Consequently, summary judgment should enter in favor of the State Board on any remaining §1983 claims.

7.     The City of Hartford is Entitled to Summary Judgment on Plaintiff's §1983 Claims.

If the City of Hartford, Hartford Public Schools is not granted summary judgment for the reasons stated above, summary judgment should enter in its favor of the City of Hartford on plaintiff's §1983 claim because Plaintiff cannot establish a municipal policy or custom to deprive teachers of their First and Fourteenth Amendment rights. In short, the City of Hartford did not take any actions against Plaintiff and did not establish any policy with respect to the Hartford Public Schools.

In 1978, the Supreme Court held that a municipality could be subject to liability under §1983 for the execution of municipal policies or customs created either by the municipality's lawmakers or by "those who edicts or acts may fairly be said to represent official policy . . ." Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694 (1978). At the same time, however, the Supreme Court held that "a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Thus, the Second Circuit has held that in order to hold a municipality liable under 42 U.S.C. §1983, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citations omitted); Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). As a result, where a plaintiff fails to present the Court with any evidence of an official policy, summary judgment is appropriate. Sagendorf-Teal v. County of Rensselaer, 100 F.3d 270, 277 (2d Cir. 1996) (summary judgment granted in favor of defendant county based upon plaintiff's failure to produce any evidence of a county policy or custom).

As the Defendants have consistently argued in this case, the City of Hartford, during the relevant period, never had the power to create policy on behalf of the Hartford school district. Under Connecticut General Statutes §10-240, "Each town shall through its board of education maintain the control of all the public schools within its limits and for this purpose shall be a school district and have all the powers and duties of school districts . . . ." Thus, each

municipality in Connecticut is a school district.  <u>Bd. of Ed. of the Town of Ellington v. Ellington</u>,

151 Conn. 1, 9, 193 A. 2d 466 (1963) ("The town of Ellington is a school district under General

Statutes §10-240.").  However, as Judge Dorsey recently ruled on a motion to dismiss, in a

similar case:

> Recent events foreclose the possibility that the City is a proper party to this
> action.  On April 18, 1997, in response to systematic problems in the public
> school system, the State of Connecticut dissolved the Hartford Board of
> Education and transferred all authority to the State Board of Trustees.  1997
> Conn. Special Act 4 §§1, 2 (enacted Apr. 18, 1997).  As such, '[t]he State Board
> of Trustees . . . [became] solely responsible for the management of the Hartford
> school district.  <u>Id.</u> §2.  As a result the City effectively became a spectator in the
> administration of the school system.  Although the Mayor of Hartford is included
> as a member of the Board of Trustees, he has no vote in proceedings, <u>id.</u> §3, thus
> no control.  Additionally, none of the remaining members of the Board of
> Trustees may be 'a relative . . . of any person employed by the Hartford School
> District or the city of Hartford."  <u>Id</u>.  The act further requires assignment of all
> contracts and agreement made on behalf of the Hartford Board of Education to the
> State Board of Trustees.  <u>Id.</u> §4.  The Superintendent is elected by vote of the
> school board members pursuant to Conn. Gen. Stat. §10-157(a), and thus, as a
> consequence of the Act, is elected by vote of the Board of Trustees.  The only
> involvement the City thus has in the school system as a result of the Act is the
> fiduciary obligation of providing funding to the school system.  <u>See</u>, 1997 Conn.
> Special Act 4 §§4(d), 6(a).
>
> As such, in the time period involved in the present complaint, the City has been
> stripped of any control over the administration of the school system and the State
> of Connecticut has taken over all aspects of its administration.  Plaintiff therefore
> argues that the funding provided as ordered by the State subjects it to liability, or
> the fact that the school rests within its limits requires the same.  The City has no
> indicia of control in the day-to-day affairs of the HPS, The relevant dates in the
> complaint fall within the period in which the State assumed control, thus
> geography alone is offered as the basis for the complaint against the City.  Absent
> any ability to influence events within the school system, either positively or

negatively, the City cannot be held liable for the acts or omissions complained of by plaintiff. The City is dismissed as a party to the present action.

Lee v. City of Hartford/Hartford Public Schools et al., 2003 U.S. Dist. LEXIS 19059 (D. Conn. March 28, 2003) (attached as Exhibit I). The Court reaffirmed this holding upon reconsideration. See, Lee v. City of Hartford/Hartford Public Schools et al., 2003 U.S. Dist. LEXIS 19060 (D. Conn. May 21, 2003) (attached as Exhibit J).

In the normal course of events, the local school board makes policy on behalf of a local school district. See, Conn. Gen. Stat. §10-220. Thus, in the normal course of events, a court should not find, for §1983 purposes, that a municipality was liable for the intentional torts of the school board's employees. However, at all relevant times, Hartford was not operating under normal circumstances. Rather, the State of Connecticut had seized control of Hartford's schools. Thus, by operation of Special Act 97-4, the only entity exercising power over the Hartford school district was the State Board of Trustees for the Hartford Public Schools. As a consequence, no policy of the City of Hartford could conceivably have caused Plaintiff to suffer the denial of a Constitutional right. Moreover, there is no evidence in the record to suggest that any policy of the City of Hartford caused the Plaintiff's alleged injuries. In short, the record reveals no evidence to suggest that the City of Hartford caused Plaintiff to suffer a Constitutional deprivation. Therefore, Plaintiff cannot establish a Monell claim against the City of Hartford.

As a result, summary judgment must enter on behalf of the City of Hartford on any §1983 claims asserted against it.

    D.    <u>The City of Hartford is Entitled to Summary Judgment on Any Remaining Claims</u>.

For the reasons stated in Judge Dorsey's opinions in <u>Clara Lee v. City of Hartford/Hartford Public Schools</u>, Plaintiff's Title VII, ADEA and CFEPA claims against the City of Hartford must fail.  Exhibits I & J.  Unlike in §1983 cases, municipal employers facing Title VII, ADEA and CFEPA claims are more likely to be subject to vicarious liability for the acts of their employees.  <u>See</u>, <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998).  Holding employers liable for the actions of their employees acting within the scope of their employment is based in agency principles.  524 U.S. at 791.

In Connecticut, public school teachers are employed by their local board of education.  Conn. Gen. Stat. §10-151(a)(2) & (b), 10-220.  Likewise, superintendents are employed by local boards of education.  Conn. Gen. Stat. §10-157.  However, once again, the Hartford Public Schools had been taken over by the State during the relevant time.  Therefore, even if one were to make the assumption that a municipality employs public school teachers and administrators, the City of Hartford cannot be held liable in this case because, during all relevant times, any normal agency relationship was severed by operation of Special Act 97-4.  As Judge Dorsey points out in his Ruling (Exhibit I), the City of Hartford has been stripped of all control over

administration of the schools and such authority rested in the hands of the state. Thus, the City of Hartford could not possibly exercise any authority over any of its alleged agents working in the Hartford schools. As a result, any discriminatory acts allegedly committed against Plaintiff could not possibly be attributed as acts of the City of Hartford. Therefore, summary judgment should enter on behalf of the City of Hartford with regard to any remaining claims.

     E.    <u>The Hartford Public Schools is Not a Proper Defendant</u>.

     The Hartford Public Schools is simply the name of the Hartford school district. Under the reasoning contained in Judge Dorsey's Rulings in the Clara Lee case (Exhibits I & J), the Hartford Public Schools cannot be held liable for the alleged intentional torts of the individual Defendants. Special Act 97-4 specifically states, "The State Board of Trustees for the Hartford Public Schools . . .shall be <u>solely</u> responsible for management of the <u>Hartford school district</u>." Special Act 97-4(2) (underlining supplied). Thus, the only entity that exercised any degree of control over the Hartford school district (or Hartford Public Schools) was the State Board.

     Once again, to the extent that the Hartford school district ever exercised any control over the teachers and administrators employed by the Hartford board of education, any agency relationship was severed by state legislative action. Because the State Board was the only entity exercising any degree of control over the Hartford school district, the State Board is the only entity that could possibly be vicariously liable for alleged actions of the individual Defendants.

F.     <u>The State Board is Entitled to Eleventh Amendment Immunity</u>.

Eleventh Amendment immunity precludes Plaintiff from proceeding with her ADEA and CFEPA claims. Under the Eleventh Amendment, states are immune from suits in federal courts. "Immunity extends to suits brought against a state, its agencies or state officials sued in their official capacities." <u>Lyon v. Jones</u>, 168 F. Supp. 2d 1, 5 (D. Conn. 2001). "A state may be subject to suit in federal court in two ways: (1) Congress can divest a state of immunity through a statutory enactment; or (2) a state may waive its immunity and agree to be sued in federal court." <u>Id</u>. The undersigned is unaware of any evidence that the State of Connecticut has waived its immunity to suit or agreed to be sued in this case. Moreover, the Supreme Court has found that Congress exceeded its authority when divesting states of immunity for suits brought under the ADEA. <u>Kimel v. Bd. of Regents</u>, 528 U.S. 62 (2000). As a result, the State Board is immune from ADEA claims by operation of the Eleventh Amendment.

Similarly, Judge Hall has found that while the State of Connecticut has waived its immunity as to claims brought under CFEPA in Connecticut state courts, the State of Connecticut has not expressly waived its Eleventh Amendment immunity as to CFEPA claims brought in federal court. <u>Lyon</u>, 168 F. Supp. 2d at 6. Therefore, the Eleventh Amendment bars any CFEPA claims brought against the State Board in this action.

Accordingly, summary judgment should enter in favor of the State Board on any ADEA or CFEPA claims remaining in this action.

III.    <u>CONCLUSION</u>

For the foregoing reasons, summary judgment should enter in favor of the Defendant on

all claims contained in Plaintiff's Amended Complaint.

DEFENDANTS,
CITY OF HARTFORD, HARTFORD PUBLIC
SCHOOLS, STATE BOARD OF TRUSTEES FOR
THE HARTFORD PUBLIC SCHOOLS,
ANTHONY AMATO, JUNE BERNABUCCI AND
JOSE COLON-RIVAS

By _____
Joseph W. McQuade, ct12121
Kainen, Escalera & McHale, P.C.
21 Oak Street, Suite 601
Hartford, CT  06106
Telephone (860) 493-0870
Facsimile (860) 493-0871
jmcquade@kemlaw.com
Their Attorney

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing Memorandum of Law in Support of

Defendants' Motion for Summary Judgment was sent via first class U.S. mail, postage prepaid,

on this the 14th day of November 2003 to:

> Judith D. Meyer, Esq.
> Law Office of Judith D. Meyer
> 152 Simsbury Road
> P.O. Box 451
> Avon, CT  06001-0451

_____
Joseph W. McQuade

11660