UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE LAPENNA | : | CIVIL ACTION |
| | : | MASTER DOCKET |
| Plaintiff, | : | 3:02CV753 (SRU) |
| v. | : | |
| | : | |
| CITY OF HARTFORD, HARTFORD | : | |
| PUBLIC SCHOOLS, STATE BOARD | : | |
| OF TRUSTEES FOR THE HARTFORD | : | |
| PUBLIC SCHOOLS, ANTHONY | : | |
| AMATO, JUNE BERNABUCCI | : | |
| and JOSE COLON-RIVAS | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| JANICE LAPENNA | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:03CV1126 (SRU) |
| v. | : | |
| | : | |
| JOSE COLON-RIVAS | : | |
| Defendant. | : | |
| | : | NOVEMBER 14, 2003 |

### RULE 56(a)(1) STATEMENT OF FACTS NOT IN DISPUTE

The following facts are not in dispute:

1. Plaintiff is a female physical education teacher at Hartford Public High School ("HPHS"). Her date of birth is August 28, 1951 and, thus, she was over the age of 40 during all times relevant to this action. Transcript of the April 14, 2003 Deposition of Janice LaPenna ("LaPenna Tr."), attached hereto as Exhibit A, at 7; Plaintiff's Responses to Defendants' First

Set of Interrogatories and Requests for Production Directed to Plaintiff, relevant portions of which are attached hereto as Exhibit B, at Response to Interrogatory 14.

2. The City of Hartford is a municipality in Connecticut.

3. The Hartford Public Schools is the name of the Hartford school district.

4. Anthony Amato was the Superintendent of Schools in Hartford from April of 1999 to late October or early November of 2002. He is now the Superintendent of Schools in New Orleans, Louisiana. Transcript of the June 3, 2003 Deposition of Anthony Amato ("Amato Tr."), relevant portions of which are attached hereto at Exhibit C, at 6, 10-11.

5. June Bernabucci is the Director of Unified Arts for the Hartford Public Schools. In that role, she oversees music, art, physical education and athletics for the Hartford Public Schools. As such, she serves as the Athletic Director for the Hartford Public Schools. Transcript of the May 16, 2003 Deposition of June Bernabucci ("Bernabucci I Tr."), attached hereto as Exhibit D, at 6; November 13, 2003 Affidavit of June Bernabucci ("Bernabucci Aff't."), attached hereto as Exhibit E, at ¶2.

6. Jose Colon-Rivas ("Dr. Colon") was the principal of HPHS during the 2000-2001 school year. Amato Tr. at 18; Second Amended Complaint ("Complaint") at ¶8.

The State Board of Trustees

7. In 1997, the Connecticut Legislature passed Special Act 97-4 which, inter alia, dissolved the Hartford Board of Education effective June 1, 1997 and legislated that "[t]he State

Board of Trustees for the Hartford Public Schools . . . shall be solely responsible for the management of the Hartford School District." Special Act 97-4(2); see also, Special Act 97-4(4)(a)(1) (The State Board "shall be responsible for all aspects of school district governance and management . . . .") [Attached hereto as Exhibit G].

8. The State Board continued to manage the Hartford school district through December 2, 2002. See, Special Act 01-7(2)(B), attached hereto as Exhibit H.

The Impending Loss of Accreditation

9. In 2000, HPHS was in danger of losing its accreditation from the New England Association of Secondary Schools ("NEASC"). Amato Tr. at 16-18.

10. Based on his conversations with the NEASC Board, it was clear to Anthony Amato that HPHS would lose its accreditation in 2000. Amato Tr. at 18.

11. Anthony Amato asked the NEASC Board for one additional year in which to accomplish accreditation for HPHS. That request was granted. Amato Tr. at 18.

12. In the summer of 2000, Mr. Amato asked Dr. Colon to assume leadership of HPHS and gave him one year in which to attain accreditation. Amato Tr. at 18; see also, Transcript of the May 15, 2003 Deposition of Jose Colon-Rivas ("Colon Tr."), relevant portions of which are attached hereto as Exhibit F, at 47, 106.

13. Dr. Colon told Mr. Amato that he wanted to make changes in the school and wanted to reassign certain teachers out of HPHS in order to better prepare the school for

3

accreditation. Mr. Amato supported Dr. Colon with respect to such issues. Amato Tr. at 18-19, 24-26; Colon Tr. at 59.

14.   Mr. Amato did not recommend that Dr. Colon reassign any teachers. Colon Tr. at 106.

Plaintiff's Reassignment and Return to HPHS

15.   Dr. Colon made the decision to reassign Plaintiff and another female physical education teacher from HPHS to other schools. Colon Tr. at 88-89.

16.   On or about July 27, 2000, Plaintiff learned that she would be reassigned from HPHS to Noah Webster Elementary School. LaPenna Tr. at 63-64, 67.

17.   The first day of school for the 2000-2001 school year was August 28. Complaint at ¶33.

18.   After speaking with Plaintiff, other physical education teachers and at least one parent, Dr. Colon realized that he had made a mistake and decided that he needed to return Plaintiff to HPHS. Colon Tr. at 110, 139.

19.   According to Plaintiff, on September 11, 2000, Plaintiff received a telephone call from Dr. Colon (and, allegedly, was told that June Bernabucci was on the line, but never spoke to Ms. Bernabucci) and offered the opportunity to return to HPHS as a teacher only. Plaintiff did not respond to such offer. LaPenna Tr. at 79-80; Complaint at ¶37.

20. According to Plaintiff, on September 22, 2000, Plaintiff received another telephone call from Dr. Colon asking whether she would return to HPHS. Plaintiff said that she would have to speak to her union. Her union instructed her to report to work at HPHS on September 25, 2000. LaPenna Tr. at 80-81; Complaint at ¶¶38-39.

21. On or about September 25, 2003, plaintiff returned to HPHS as a physical education teacher. Complaint at ¶40.

The Faculty Manager Position

22. Each of the three public high schools in Hartford employed one Faculty Manager. See, Bernabucci I Tr. at 86; Transcript of the June 3, 2003 Deposition of June Bernabucci ("Bernabucci II Tr."), relevant portions of which are attached at Exhibit D, at 61; Bernabucci Aff't. at ¶3.

23. The Faculty Manager position was an extracurricular or extra-duty assignment. LaPenna Tr. at 20; Bernabucci Aff't. at ¶4.

24. Under the relevant collective bargaining agreements, the Faculty Manager's term is two years. At the end of the term, the position is posted and eligible applicants are free to apply for the position. LaPenna Tr. at 131; Bernabucci I Tr. at 17, 19-20, 104 & Exhibit 7 thereto.

25. In December of 1996, Plaintiff became the Faculty Manager at HPHS. LaPenna Tr. at 17-19.

26. As described by Plaintiff, the Faculty Manager at HPHS served as a liaison between the athletic coaches and the Athletic Director's office. LaPenna Tr. at 19-20; see also, Bernabucci I Tr. 82-83, 95-96 & Exhibits 5 & 7 thereto; Bernabucci Aff't. at ¶5.

27. In effect, the Faculty Manager serves as the on-site representative of the Athletic Director at each high school. Bernabucci Aff't. at ¶6.

28. As a result of her reassignment out of HPHS, Ms. Bernabucci felt that Plaintiff could no longer perform the duties of Faculty Manager because she was not physically located at HPHS. Bernabucci I Tr. at 24-28, 81.

29. Plaintiff recalls that Freeman Burr, the principal at Noah Webster, did not object to Plaintiff continuing as the Faculty Manager at HPHS as long as such activities did not interfere with her teaching classes. LaPenna Tr. at 71-72.

30. Ms. Bernabucci recalls that Freeman Burr, the principal of Noah Webster, indicated that he could not allow Plaintiff to leave his school early because he needed her to teach classes until the end of the school day. Bernabucci I Tr. at 109-111.

31. Plaintiff admits that there was no precedent for a person serving as a Faculty Manager for a high school while assigned to teach at another school. LaPenna Tr. at 73.

32. David Hodge, a white male under the age of 40, was reassigned into HPHS as a physical education teacher. See, Bernabucci II Tr. at 88.

33. Mr. Hodge was appointed the acting Faculty Manager at HPHS. Bernabucci I Tr. at 74; Bernabucci II Tr. at 56; Colon Tr. at 137-138.

34. During the time that Dr. Colon was attempting to return Plaintiff to HPHS, Mr. Hodge voluntarily left his assignment as a physical education teacher to take an assignment as a math teacher at HPHS. Bernabucci II Tr. at 93-94; see also, Colon Tr. at 149.

35. After Plaintiff's return to HPHS, Mr. Hodge continued to function as the Acting Faculty Manager. See Colon Tr. at 156-157, 181.

36. Plaintiff filed a grievance over her not returning to the extracurricular Faculty Manager assignment. LaPenna Tr. at 81.

37. Plaintiff's grievance was settled and Plaintiff was paid for the Faculty Manager assignement through the end of the 2000-2001 school year. LaPenna Tr. at 129-131; Bernabucci I Tr. at 59.

The 2001 Interview for the Faculty Manager Position

38. In the Spring of 2001, the Faculty Manager extracurricular position at HPHS was posted and both Plaintiff and Mr. Hodge applied for it. LaPenna Tr. at 131-132 & Exhibit 5 thereto; Bernabucci Aff't. at ¶¶7-8.

39. Interviews for Faculty Manager were conducted before June Bernabucci and various coaches and physical education teachers at HPHS, specifically: Ezequiel Alejandro,

Lindy Remigino, Margery Jackson, Aida Ramos, Cindy Turcotte and Helen Gray. LaPenna Tr. at 133 & Exhibit 6 thereto; Bernabucci Aff't. at ¶¶9-10.

40. When she interviewed for the Faculty Manager position in 2001, Plaintiff described her performance in the interview as "lousy." LaPenna Tr. at 135.

41. She said that she had an uncontrollable visceral reaction to seeing David Hodge and had a similar reaction to seeing June Bernabucci. LaPenna Tr. at 131-134.

42. Despite advice from others, plaintiff went to this interview "very unprepared." LaPenna Tr. at 135, 138-139.

43. In the interview, plaintiff made a "bad professional decision by letting my emotions get in the way of that interview." LaPenna Tr. at 140.

44. According to Plaintiff, Mr. Alejandro and Ms. Turcotte voted in favor of Plaintiff for the Faculty Manager position, while the remaining members of the interview panel voted in favor of Mr. Hodge. LaPenna Tr. at 142; see also, Bernabucci Aff't. at ¶12.

45. Ms. Bernabucci did not cast a vote. Bernabucci Aff't. at ¶11.

46. Thereafter, Mr. Hodge was selected for the Faculty Manager position for the 2001-2003 time period. LaPenna Tr. at 127; Bernabucci Aff't. at ¶13.

47. Plaintiff filed a grievance over her non-selection for the Faculty Manager position in 2001. However, her union advised her to drop the grievance. LaPenna Tr. at 147-148.

### Mr. Amato's Involvement

48.  Plaintiff has sued Anthony Amato because he was the Superintendent of Schools. LaPenna Tr. at 21-22.

49.  Plaintiff is unaware of any actions that Anthony Amato took against her, other than "signing" her reassignment. LaPenna Tr. at 22-24.

50.  In fact, Anthony Amato did not have any involvement in the decision to reassign plaintiff. Amato Tr. at 17-19, 73-74; Colon Tr. at 106.

51.  Dr. Colon went to Mr. Amato and told him that he had decided to bring back Plaintiff and the other female physical education teacher to HPHS. According to Dr. Colon, Mr. Amato did not want to know who the individuals were who would be reassigned back to HPHS. Mr. Amato was "fine" with Dr. Colon's decisions. Colon Tr. at 184.

52.  Dr. Colon never discussed the Faculty Manager issue with Mr. Amato. Colon Tr. at 184-185.

53.  Plaintiff never had a conversation with Mr. Amato and, with the exception of an October 8, 1999 memo from athletic coaches to Mr. Amato (which Plaintiff did not sign), never corresponded with Mr. Amato. LaPenna Tr. at 84.

54.  Mr. Amato does not remember Plaintiff. Amato Tr. at 13-14, 16.

Ms. Bernabucci's Involvement

55. Ms. Bernabucci was not involved in the decision to reassign Plaintiff out of HPHS. Bernabucci I Tr. at 127-129.

56. Ms. Bernabucci objected to the reassignment of Plaintiff out of HPHS. Bernabucci I Tr. at 128-133.

Plaintiff's First Amendment Claim

57. Plaintiff alleges that she had conversations with June Bernabucci concerning issues related to the Sports Sciences Academy. Plaintiff did not recall the number of conversations or the contents of such conversations. LaPenna Tr. at 26-28.

58. At a meeting with then-Interim Superintendent, Ben Dixon, some Hartford Public Schools employees, spearheaded by Paul Stringer, a principal in the Hartford Public Schools, discussed Sports Sciences Academy, a charter school located in Hartford, and the scheduling of athletic contests. LaPenna Tr. at 27-30.

59. At this meeting with then-Interim Superintendent Ben Dixon, Plaintiff spoke about her history in Hartford but did not advocate any particular position. LaPenna Tr. at 30-32.

60. After this meeting, Plaintiff did not have any conversations with June Bernabucci or any other administrator regarding the Sports Sciences Academy. LaPenna Tr. at 31-32.

61. Plaintiff testified that she sent correspondence to Superintendent Amato. LaPenna Tr. at 34 & Exhibit 3 thereto. The correspondence is dated October 8, 1999 and is

addressed to defendant Amato and is from the "Athletic Coaches of the Hartford Public High Schools." LaPenna Tr. at Exhibit 3.

62. Plaintiff did not sign the correspondence, nor was she a coach at that time. LaPenna Tr. at 34.

63. In the correspondence itself, the coaches did not advocate any position. Rather, the coaches simply asked for a meeting with Superintendent Amato. LaPenna Tr. at 41-42 & Exhibit 3 thereto.

64. Plaintiff was never contacted regarding this correspondence and does not recall discussing it with any administrator, including Ms. Bernabucci and Mr. Amato. LaPenna Tr. at 42-43.

65. Plaintiff does not recall discussing her views regarding the Sports Sciences Academy and the scheduling of athletic contests against teams from the Sports Sciences Academy with any administrator. LaPenna Tr. at 43.

66. The only issues of public concern that plaintiff recalls speaking out on were confined to issues regarding the inclusion of the Sports Sciences Academy in athletic contests. LaPenna Tr. at 44-47. She does not recall any of the specifics of her speech regarding these issues. LaPenna Tr. at 45-46.

11

Plaintiff's Sex Discrimination Claim

67.  Plaintiff's "evidence" of sex discrimination by Mr. Amato or Ms. Bernabucci is that a male replaced her as the Faculty Manager at HPHS when she was temporarily reassigned to an elementary school.  LaPenna Tr. at 85-87, 90.  Plaintiff is unaware of any pattern of sex discrimination by either Mr. Amato or Ms. Bernabucci.  LaPenna Tr. at 91; see also, 101.

Plaintiff's Age Discrimination Claim

68.  Plaintiff's "evidence" of age discrimination consists of:  (a) the fact that the person who replaced her as Faculty Manager at HPHS after her temporary reassignment to an elementary school is under 40 and younger than plaintiff; (b) an alleged remark of Dr. Colon that he wanted "new blood" in the school; (c) the Hartford Public Schools' hiring of Anthony Menard, a "young male from outside of the school system," to be the boys basketball coach at Weaver High School; (d) the alleged hiring of Rudy Alvarez to be the boys basketball coach at Bulkeley High School; and (e) the hiring of Ed Quick as the boys basketball coach at HPHS.  LaPenna Tr. at 94-100.

69.  Plaintiff alleges that Dr. Colon used the term "new blood" at her CHRO hearing.  However, Plaintiff does not know what Jose Colon allegedly meant by the term "new blood" or the context in which it was used.  LaPenna Tr. at 95-96.

70.  Plaintiff does not recall who hired Anthony Menard but recalls that the Principal at Weaver High School, at the time, was Christine Mahoney.  Mr. Menard lasted for one year as

boys basketball coach at Weaver High School and was succeeded by plaintiff's husband, Lou LaPenna, who was age 46 or 47 at the time. LaPenna Tr. at 96-97.

71.  Plaintiff believes that Rudy Alvarez was hired to be the basketball coach at Bulkeley High School, but does not know if he actually coached a game. According to Plaintiff, a grievance was filed and Eddy Griffin, a man in his fifties, was awarded the job. LaPenna Tr. at 97-98.

72.  Plaintiff testified that Ed Quick was hired for the boys basketball coaching position at HPHS approximately three years ago and that, she believes, another applicant applied for the position but does not know the person's name. LaPenna Tr. at 99-100.

73.  At the time of her deposition, Plaintiff testified that Matthew Steele, the Faculty Manager at Weaver High School, was "about my age" and that Robert Raffalo, the Faculty Manager at Bulkeley High School, was "older" than Plaintiff. LaPenna Tr. at 94-95.

74.  At her deposition, plaintiff was unaware of any additional evidence of age discrimination. LaPenna Tr. at 100.

DEFENDANTS,
CITY OF HARTFORD, HARTFORD PUBLIC
SCHOOLS, STATE BOARD OF TRUSTEES FOR
THE HARTFORD PUBLIC SCHOOLS,
ANTHONY AMATO, JUNE BERNABUCCI AND
JOSE COLON-RIVAS

By *Joseph W. McQuade*
Joseph W. McQuade, ct12121
Kainen, Escalera & McHale, P.C.
21 Oak Street, Suite 601
Hartford, CT 06106
Telephone (860) 493-0870
Facsimile (860) 493-0871
jmcquade@kemlaw.com
Their Attorney

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing Rule 56(a)1 Statement of Facts Not in Dispute was sent via first class U.S. mail, postage prepaid, on this the 14th day of November 2003 to:

Judith D. Meyer, Esq.
Law Office of Judith D. Meyer
152 Simsbury Road
P.O. Box 451
Avon, CT  06001-0451

_____
Joseph W. McQuade

10537