UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JANICE LAPENNA** : | **CIVIL ACTION** |
| : | **MASTER DOCKET** |
| **Plaintiff,** : | **3:02CV753 (SRU)** |
| v. : | |
| : | |
| **CITY OF HARTFORD, HARTFORD** : | |
| **PUBLIC SCHOOLS, STATE BOARD** : | |
| **OF TRUSTEES FOR THE HARTFORD** : | |
| **PUBLIC SCHOOLS, ANTHONY** : | |
| **AMATO, JUNE BERNABUCCI** : | |
| **and JOSE COLON-RIVAS** : | |
| **Defendants.** : | |
| : | |

| | | |
|---|---|---|
| **JANICE LAPENNA** : | **CIVIL ACTION NO.** |
| **Plaintiff,** : | **3:03CV1126 (SRU)** |
| v. : | |
| : | |
| **JOSE COLON-RIVAS** : | |
| **Defendant.** : | |
| : | **FEBRUARY 13, 2004** |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

The Defendants, City of Hartford, Hartford Public Schools, State Board of Trustees for the Hartford Public Schools, Anthony Amato, June Bernabucci and Jose Colon-Rivas (collectively, the "Defendants") respectfully submit this brief in reply to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment ("Opposition") dated January 20, 2004 and in support of their Motion for Summary Judgment.

In her Opposition, Plaintiff attempts to conjure genuine issues of material fact from the opinions of non-decision makers, surmise, conjecture and hearsay. Plaintiff also attempts to re-write her own deposition testimony and weakly suggests that the plain meaning of the words she spoke in response to straight-forward questions posed to her in that deposition constitute a "strained reading" of the transcript. Opposition at 18. Naturally, the space limitations inherent in a reply brief do not allow for a point-by-point refutation of each of Plaintiff's assertions. Suffice it to say, Plaintiff may not rest upon such conjecture and surmise to prevent the entry of summary judgment in favor of the Defendants. Nonetheless, one issue addressed in the Opposition deserves a fuller response.

I. <u>The State Board of Trustees is Entitled to Sovereign and Eleventh Amendment Immunity.</u>

Plaintiff argues that the Defendants "did not plead either Eleventh Amendment or any other theory of sovereign immunity as an affirmative defense, and they are therefore barred from asserting it." Opposition at 36. The record reveals otherwise.

Plaintiff filed her complaint on or about April 30, 2002 and mailed her waiver of service form on or about May 8, 2002. The Defendants filed a Motion to Dismiss. At oral argument on the Motion to Dismiss, the undersigned argued, <u>inter alia</u>, that the "City of Hartford/Hartford Public Schools" was not a proper defendant in this action because of the effect of Connecticut Special Act 97-4, which created and empowered the State Board of Trustees for the Hartford Public Schools ("State Board"). During the course of oral argument, the notion of naming the

State Board as a defendant was raised and plaintiff's counsel mentioned that the Defendants were likely to claim sovereign immunity as a defense. Of course, the Defendants never denied that such a defense would be pursued if the State Board was named as a party.

On or about November 25, 2002, plaintiff's counsel filed a Motion to Amend the complaint which sought, <u>inter</u> <u>alia</u>, to name the State Board as an additional defendant. Defendants did not oppose this motion and the court granted it on or about January 3, 2003. On February 18, 2003, the Defendants filed their Answer and Affirmative Defenses to the Amended Complaint. In that Answer, the Defendants asserted a number of affirmative defenses, including the Fourth Affirmative Defense which reads: "The State Board of Trustees is shielded from liability in this action by the Eleventh Amendment to the United States Constitution" and the Fifth Affirmative Defense which reads: "The City of Hartford/Hartford Public Schools and the State Board of Trustees are entitled to the protections of governmental immunity."

On or about July 30, 2003, the court granted plaintiff's contested Motion to Amend Complaint and Join Additional Defendants. The stated purpose of such motion was to "join two additional parties defendant, Jose Colon-Rivas and Hartford Public Schools, and to amend her complaint to include the additional defendants in the pleadings." Motion to Amend Complaint and Join Additional Defendants at p. 1. Thus, the Motion to Amend did not purport to alter the allegations asserted against the State Board. Nonetheless, the Defendants, including the State Board, recently filed answers to the Second Amended Complaint. Consistent with the previous Answer filed in this case, the State Board's Answer asserts affirmative defenses asserting the

Eleventh Amendment and sovereign immunity defenses.  See, Third & Fifth Affirmative Defenses.

Thus, the record reveals that plaintiff's counsel has been on notice since at least oral argument on the Motion to Dismiss that the State Board would be asserting the defenses of Eleventh Amendment and sovereign or governmental immunity.  Moreover, such defenses have been included in all Answers to the various complaints filed in this action.  Thus, Plaintiff's waiver argument is infirm.

Plaintiff's primary argument is that the State Board is not an arm of the state.  Opposition at 36-38.  However, the evidence reveals otherwise.  Defendants agree with Plaintiff that, in determining whether an entity functions as an arm of the state, a court should examine the six factors distilled from Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S. Ct. 1171 (1979), namely:  (1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state.  Mancuso v. New York State Thruway Authority, 86 F.3d 289, 293 (2d Cir.), cert. denied, 519 U.S. 992 (1996).  "If these factors point in one direction, the inquiry is complete.  If not, a court must ask whether a suit against the entity in federal court would threaten the integrity of the state and expose its treasury to risk. . . .  If the answer is still

in doubt, a concern for the state fisc will control." McGinty v. State of New York, 251 F.3d 84, 96 (2d Cir. 2001).

As Plaintiff concedes (Opposition at 37-38), the first two factors weigh in favor of a finding of immunity: the entity is named the "State Board" and its members are appointed by state authorities. The parties disagree as to the third factor. However, from an objective viewpoint, the Hartford Public Schools have been funded primarily through state grants-in-aid. As set forth in the Affidavit of Christian Johnson, Controller for the City of Hartford, and in the Exhibit attached thereto (attached as Exhibit K), funding for the Hartford Public Schools is overwhelmingly provided by the state for all years at issue in this case. For example, during the 2000-2001 school year, state grants in aid received for the Hartford Public Schools totaled $168.47 million, while the City of Hartford's adjusted general fund appropriation was $31.56 million and the total percentage of state funding for the operation of the Hartford Public Schools was 84.2%. In all other years covered by Exhibit K, the percentage of state funding for the operation of the Hartford Public Schools was above 80%. Thus, the evidence suggests that the Hartford Public Schools were funded primarily by the state during the time period in question. This is not surprising since Connecticut provides the most public school funding to the neediest school districts. Sheff v. O'Neill, 238 Conn. 1, 10, 678 A.2d 1267 (1996) ("The legislature provides substantial support to communities throughout the state to finance public school operations. State financial aid is distributed so that the neediest school districts receive the most aid. . . . The state reimburses Hartford for its school renovation projects at a rate that is

considerably higher than the reimbursement rate for the twenty-one surrounding suburban towns."). Thus, the third factor points in favor of a finding of immunity. Cf., McGinty, 251 F.3d at 97 (where employees, the state and other employers contributed to pension funds, the court found that the third factor weighed in favor of immunity).[1]

As to the fourth factor, the function of the State Board is traditionally a function of state government. Article Eighth of the Connecticut Constitution provides, in part: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation." See also, Sheff, 238 Conn. at 17 ("Article Eighth §1, and Article First §§ 1 and 20, impose on the legislature an *affirmative* constitutional obligation to provide schoolchildren throughout the state with a substantially equal educational opportunity" and "Our Connecticut constitution, by contrast [to the federal Constitution], contains a fundamental right to education and a corresponding affirmative state obligation to implement and maintain that right."). Consistent with this mandate, the legislature established a statutory scheme under which this state obligation would be carried out through local boards of education, which function as agents of both the state and the municipality or municipalities served. See, Town of Cheshire v. McKenney, 182 Conn. 253, 258, 438 A.2d 88 (1980); see also, Conn. Gen. Stat. §10-240. Indeed, the Connecticut Supreme Court has observed, "Directly or

---

[1] It should be noted that Judge Covello reached an opposite conclusion in Mele v. Hartford Public Schools et al., 3:02CV1371 (AVC), "Ruling on the Defendant Board of Trustees for the Hartford Public School's Motion to Dismiss", attached hereto as Exhibit L. In Mele, the court ruled on a Motion to Dismiss and, obviously, did not have an opportunity to review the record available to this court, or the Affidavit of Mr. Johnson. Based on the arguments and evidence presented in this case, the Defendants respectfully disagree with the conclusions reached by Judge Covello on the limited record in front of him.

indirectly, the state has always controlled public elementary and secondary education in Connecticut. The legislature directs many aspects of local school programs, including courses of study and curricula, standardized testing, bilingual education, graduation requirements and school attendance." Sheff, 238 Conn. at 9. Thus, the function of providing free public elementary and secondary schools remains, at all times, an obligation and function of the state. The fact that the state legislature dissolved the Hartford Board of Education and established the State Board is simply further evidence that the function of the State Board is traditionally one reserved to the state. Thus, the fourth factor tilts in favor of a finding of immunity.

As to the fifth factor, Plaintiff notes that "the state maintained only the veto power it would over any municipal board of education." Opposition at 38. In Special Act 97-4, the actions of State Board were reviewed by two state monitors, appointed by the Commissioner of Education, who were tasked with the assignment of preparing a monthly report to the Commissioner of Education and the State Board of Education on the progress and needs of the Hartford school district. Exhibit G at subsection 8. In turn, the Commissioner of Education and the State Board of Education are required to submit a quarterly report to the Governor and the joint standing committee of the General Assembly "having cognizance of matters relating to education on the operation of the Hartford school district and progress made under the management of the State Board of Trustees for the Hartford Public Schools." Exhibit G at subsection 9. Thus, the State Board is subject to strong oversight by the Commissioner of Education, the State Board of Education, the Governor and the legislature. Therefore, this case

is more analogous to the facts in McGinty v. State of New York, 251 F.3d 84, 98-99 (2d Cir. 2001) (finding that because the New York State and Local Employees Retirement System could not exercise "unfettered discretion" and its actions were subject to "strong oversight protections", the fifth factor in the analysis tipped in favor of a finding of immunity) than to the facts in Mancuso, 86 F.3d at 295-96 (finding that state statutes providing the state Comptroller with generalized oversight authority over the New York State Thruway Commission did not tip the scales in favor of immunity).  Therefore, the fifth factor in the test, as applied to this case, tips the scales in favor of a finding of immunity.

The relevant question with respect to the sixth factor is whether a judgment against the State Board would have the practical effect of requiring payments from the state.  McGinty, 251 F.3d at 99.  This factor points in favor of a finding of immunity.  In analyzing this factor, the McGinty court found that the Thruway authority at issue in Mancuso was self-sustaining and produced no evidence that it could not satisfy a judgment, while the Retirement System, at issue in McGinty, was not self-sustaining "as it requires contributions from employees, the state and other participating employers." Id.  As detailed in Exhibit K, the Hartford Public Schools are not self-sustaining.  Rather, the vast majority of funding for the Hartford Public Schools comes from the state.

In addition, the McGinty court found it significant that the New York state constitution mandated that the benefits of the Retirement System at issue in that case not be diminished or impaired and consequently reached the conclusion that, "the state will become responsible for

replenishing monies used from the pension accumulation fund and other reserve funds to pay a judgment increasing the amount of death and/or disability benefits owed." Id. In this case, as set out above, the Connecticut constitution imposes "on the legislature an *affirmative* constitutional obligation to provide schoolchildren throughout the state with a substantially equal educational opportunity." Sheff, 238 Conn. at 17. In order to accomplish such mandate, the state provides substantial funding to school districts, concentrating such spending in the areas serving the neediest students. See, Sheff, 238 Conn. at 10. The Connecticut Supreme Court has specifically recognized that students in Hartford suffer because of the effects of poverty and racial/ethnic isolation. Sheff, 238 Conn. at 3. As a result, the Connecticut Supreme Court has found that the racial/ethnic isolation experienced in the Hartford area violates the Connecticut Constitution and, in the first instance, has left the proper remedy to the legislature. Sheff, 238 Conn. at 45-47. The practical effect of Connecticut's Constitutional mandate and the Sheff decision is that the state is ultimately responsible for providing Hartford public school students with equal educational opportunity. Thus, any dollars spent on paying a judgment in this case are dollars that cannot be spent on providing the public school students of Hartford with educational opportunities equal to those experienced by students in surrounding towns. As in the McGinty case, the state's constitutional obligations directly are affected by any judgment in this case. Thus, the state fisc is implicated by any judgment in this case. Therefore, the sixth factor weighs in favor of a finding of immunity.

Because all six factors contained in the Lake Country Estates test point in favor of immunity, the State Board should be considered an arm of state and, thus, entitled to the protections of the Eleventh Amendment and sovereign immunity. Therefore, all counts against the State Board should be dismissed for failure to state a claim.

DEFENDANTS,
CITY OF HARTFORD, HARTFORD PUBLIC SCHOOLS, STATE BOARD OF TRUSTEES FOR THE HARTFORD PUBLIC SCHOOLS, ANTHONY AMATO, JUNE BERNABUCCI AND JOSE COLON-RIVAS

By_____
Joseph W. McQuade, ct12121
Kainen, Escalera & McHale, P.C.
21 Oak Street, Suite 601
Hartford, CT  06106
Telephone (860) 493-0870
Facsimile (860) 493-0871
jmcquade@kemlaw.com
Their Attorney

**CERTIFICATION OF SERVICE**

  This is to certify that a copy of the foregoing Defendants' Reply Brief was sent via first class U.S. mail, postage prepaid, on this the 13th day of February 2004 to:

Judith D. Meyer, Esq.
Law Office of Judith D. Meyer
152 Simsbury Road
P.O. Box 451
Avon, CT  06001-0451

                         Joseph W. McQuade

12817