UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LYDIA MELE
    Plaintiff,

v.

HARTFORD PUBLIC SCHOOLS, and
the BOARD OF TRUSTEES for the
HARTFORD PUBLIC SCHOOLS,
    Defendants.

Civil No. 3:02CV1371 (AVC)

## RULING ON THE DEFENDANT BOARD OF TRUSTEES FOR THE HARTFORD PUBLIC SCHOOL'S MOTION TO DISMISS

This is an action for damages and injunctive relief alleging failure to furnish accommodations to a disabled person. It is brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. section 12101, et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. section 46a-58, et seq. The defendant, Board of Trustees for the Hartford Public Schools, has filed the within motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[1]

The issues presented are: 1) whether the Board of Trustees for the Hartford Public Schools is an arm of the state, and thus, entitled to assert Eleventh Amendment immunity from suit; and 2) whether the court may exercise supplemental jurisdiction over the Connecticut state law cause of action for damages.

For the reasons hereinafter set forth the court concludes that: 1) the Board of Trustees for the Hartford Public Schools is not an arm of the state, and consequently, is not entitled to

---

[1] While the defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), stating that a cause of action was not stated, the gravamen of the defendant's argument is that the court lacks jurisdiction to entertain the matter. The court, therefore, treats this as a motion under Rule 12(b)(1).

Eleventh Amendment immunity; and 2) the court has supplemental jurisdiction over the Connecticut state law cause of action for damages. The motion to dismiss, therefore, is denied.

## FACTS

Examination of the complaint, motion to dismiss, the exhibits accompanying the motion to dismiss, and the responses thereto, reveals the following:

The plaintiff, Lydia Mele, is a resident of East Hartford, Connecticut. Mele claims to be "a person with disabilities within the meaning of the ADA and CFEPA."[2] The defendant, the Board of Trustees for the Hartford Public Schools ("board"), is a statutory entity authorized by special act of the legislature with it's offices and principal place of business in Hartford, Connecticut.[3]

In 1997, the Connecticut legislature created a "State Board of Trustees for the Hartford Public Schools to be responsible for the governance, management and fiscal operations of the Hartford school district." 1997 Conn. Spec. Acts 4 § 3 (amended by 2001 Conn. Spec. Acts 7 § 3(b)("Special Act 01-7"). The board's members are jointly appointed by the governor and leaders of the state legislature. The enabling statute, however, does not authorize the governor or the state legislature to supervise the board's actions.

Under Special Act 01-7, "[t]he city of Hartford shall remain financially responsible for any liabilities or obligations, including contingent liabilities and obligations, incurred by the city council, the Hartford Board of Education prior to June 1, 1997, *or* the state Board of Trustees for

---

[2]The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-58, et seq.

[3]Hartford Public Schools is also named as a defendant in this action but has not filed a Motion to Dismiss.

2

the Hartford Public Schools." Id. § 3(d)(emphasis added). Additionally, Special Act 01-7 provides that an advisory council appointed jointly by the board and the superintendent of schools "shall advise the [board] on matters as curriculum, student achievement, parental and community involvement, and school safety and discipline." Id. § 3(b).

In January 1999, the board and Hartford Public Schools employed Mele as a guidance counselor at Hartford Transitional Learning Academy ("HTLA").[4] At the time, Mele's physician had placed Mele "on modified duty" that limited her to no more than one hour of walking or standing per eight hour work day. Mele alleges that "[r]ather than attempt to accommodate these restrictions, the Defendants sent [her] home."

In September 1999, Mele returned to work under the same walking and standing restrictions. In an attempt to minimize the amount of standing and walking she would have to do, Mele requested a key to access the elevator and requested clerical assistance.

In November 1999, the defendants provided Mele with an elevator key and a half hour of clerical assistance each day. Mele claims these accommodations were insufficient and were "a substantial factor in exacerbating [her] injuries and disabilities."

In December 1999, Mele attempted to correct what she claims were work-related injuries by undergoing surgery. On or about May 1, 2000, Mele had surgery on her hand. Three days later, the board and the Hartford Public Schools instructed Mele to clean out her office to make room for a temporary counselor. Mele claims that the board and the Hartford Public Schools gave this instruction knowing that she had undergone hand surgery.

On or about June 19, 2000, Mele's physician authorized Mele to return to work "with the

---

[4]Mele has been employed by the defendants since 1972.

3

restriction that she perform sedentary work only -- less than thirty (30) minutes standing or walking." According to Mele, the board and Hartford Public Schools "refused to accept her back to work with this limitation."

On or about July 6, 2000, the board and Hartford Public Schools involuntarily transferred Mele from HTLA to Fox Middle School, "a facility that was substantially larger than HTLA and involved an increased amount of standing and walking." One week prior to reporting to work at Fox Middle School, "Mele requested that a lumbar support chair prescribed by her doctor be sent to her new assignment along with her other materials." Mele claims that the board and Hartford Public Schools did not provide her with the chair until almost two years later.

On August 28, 2000, Mele appeared for work at Fox Middle School. Upon arrival, the board and Hartford Public Schools provided Mele with an office "that was in disarray and appeared to be used as a storage area. Furniture was piled on the desk, her chair was broken and unusable, and papers and boxes dating back to 1978-79 were stacked throughout the office." Three days after requesting, and not receiving, custodial assistance to remove the items from her office, Mele, with the assistance of other teachers, began clearing out her office.

On or about September 14, 2000, the board and Hartford Public Schools sent Mele home "because of her doctor's restrictions on sitting and standing." On or about September 19, 2000, Mele's physician authorized her to return to work with the limitation that she was not to walk or stand for more than three hours in an eight hour day.

On September 20, 2000, the board and Hartford Public Schools stated in a letter that Mele was not allowed to return to work. Mele claims the board and Hartford Public School refused to allow her to return to work because "they needed a counselor who is mobile throughout the

school and that Ms. Mele's restrictions were an impediment to her ability to perform her job."

On September 29, 2000, the board and Hartford Public Schools canceled Mele's paycheck. However, less than three weeks later the board and Hartford Public Schools permitted her to return to work. In an attempt to accommodate Mele's disability, the board and Hartford Public Schools provided Mele with what she claims to have been a "malfunctioning scooter." In addition, Mele the board and Hartford Public Schools gave Mele a handicapped parking spot, which was to be shared with another teacher. Mele claims that having two vehicles park side-by-side in one spot caused difficulty in getting in and out of the vehicles.

In December 2000, a guidance counselor's position opened up at the Adult Education Facility, where adequate handicapped parking was available. The Adult Education Facility was also located all on one floor. Mele requested a transfer to this position but the board and Hartford Public Schools denied the transfer despite, according to Mele, "being qualified for this position and being capable of performing the essential functions of the job."

Mele alleges that the board's and Hartford Public Schools' conduct "is part of a larger pattern and practice of retaliation, harassment and discrimination that has been directed against [her] in violation of the ADA and CFEPA." Additionally, Mele avers that "[a]s a direct and proximate result of the [board's and Hartford Public Schools'] repeated failures to accommodate [her] disabilities [she] has suffered an exacerbation of her injuries and disabilities, emotional distress and lost wages and benefits."

## STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) must be granted if a plaintiff has failed to establish subject matter jurisdiction. Makarova v. United States, 201

5

F.3d 110, 113 (2d Cir. 2000). "Federal courts are empowered to hear only those cases that (1) are within the judicial power of the United States, as defined by the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by Congress." Wright & Miller, Federal Practice and Procedure § 3522 (1984); see Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365 (1978). If the defendant challenges the district court's subject matter jurisdiction, the district court may resolve disputed factual issues by referring to evidence outside the pleadings. Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002). The plaintiff asserting subject matter jurisdiction has the burden of proving that it exists. Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). If the district court concludes that it does not have subject matter jurisdiction, it must dismiss the case. See Golden Hill Pauqussett Tribe of Indians v. Weicher, 839 F. Supp. 130, 136 (D. Conn. 1993).

## DISCUSSION

I.   The Board of Trustees and the Eleventh Amendment

The board argues that it cannot be sued for damages because it functions as an arm of the state and is entitled to sovereign immunity under the Eleventh Amendment of the United States Constitution. Specifically, the board argues that because the state legislature created it, its members are jointly appointed by the governor and leaders of the state legislature, it is referred to as the State Board of Trustees for the Hartford Public Schools, and is partially funded by the state it is, therefore, immune from suit in federal courts.

Mele responds that the board should not be considered an arm of the state, and thus, is not entitled to Eleventh Amendment immunity. Specifically, Mele argues that because the board performs municipal functions that are traditionally exercised by local school boards and are not binding upon the state, and because Connecticut has no veto power over it, the board should not

be considered an arm of the state. Mele further argues that because "[s]chool funding is traditionally the province of the towns in which the schools are located . . . the City of Hartford, not the State of Connecticut, appears to be the party that will bear the financial burden of any adverse judgment in this matter."

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI. While the literal reading of the Eleventh Amendment provides immunity "to suits against a State by citizens of another State," the Supreme Court has "extended the Amendment's applicability to suits by citizens against their own States." Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); see Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-72 (2000). Counties, municipal corporations, and other political subdivisions are not immunized from suits in federal courts. Mancuso v. N.Y. Thruway Auth., 86 F.3d 289, 292 (2d Cir. 1996). However, an entity "is entitled to immunity if it can demonstrate that it is more like 'an arm of the State,' such as a state agency, than like 'a municipal corporation or other political subdivision.'" Id. at 292 (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)). In the usual case, a local school board "is more like a county or city than it is like an arm of the state," and therefore, is "not entitled to assert any Eleventh Amendment immunity from suit in federal courts." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280-81 (1977). However, because in this case the board was created by the state legislature to temporarily supersede the board of education for the Hartford school district, the immunity issue is not clear-cut, and the court must conduct an analysis to determine whether the

board is entitled to Eleventh Amendment immunity.

The Supreme Court and the Second Circuit have considered six factors in determining whether an entity falls within the ambit of a state's Eleventh Amendment immunity: "(1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity were appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state." Mancuso v. N.Y. Thruway Auth., 86 F.3d 289, 293 (2d Cir. 1996) (concluding that the New York Thruway Authority was not an arm of the state); Feeney v. Port Auth. Trans-Hudson Corp., 873 F.2d 628, 630-31 (2d Cir. 1989)(deducing six factors from Supreme Court's decision in Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391 (1979)). If the factors do not point in one direction, the court will consider "the two purposes underlying the Eleventh Amendment--protection against state liability and respect for state sovereignty." Mancuso, 86 F.3d at 296.

Applying these factors to the present case, the court concludes that the board is not an arm of the state, and accordingly, is not entitled to Eleventh Amendment sovereign immunity. First, the court rejects the board's contention that "the fact that the [board] is referred to as the State Board of Trustees for the Hartford Public Schools indicate[s] that this body is an arm of the state."[5] An equally compelling argument could be made that the appearance of "Hartford" in the board's name signifies that it is a municipality and not an arm of the state.

Second, it is undisputed that the board was created by the state legislature and its

---

[5] See Mancuso, 86 F.3d at 297 (concluding that the New York Thruway Authority was not a state actor); Christy v. Pa. Turnpike Comm'n, 54 F.3d 1140, 1148 (3d Cir. 1995)(Pennsylvania Turnpike Commission not arm of the state).

members are jointly appointed by the governor and the leaders of the state legislature, which favors a finding of immunity. However, the court in <u>Mancuso v. N.Y. Thruway Auth.</u>, 86 F.3d 289, 292 (2d Cir. 1996), similarly determined that while the New York Thruway Authority was selected by the governor and the state legislature, it was not an arm of the state.

Third, the board argues that the third factor militates in favor of immunity given that "a large portion of the funding for local education comes from state and federal funding."[6] However, it is clear from the plain language of the statute that authorizes the board's existence (Special Act 01-7) that the city of Hartford bears all financial responsibility for the board's actions.[7] 2001 Conn. Spec. Acts § 3(d). Thus, this factor weighs against immunity.

Fourth, whether the board's function is state or local, the board is "responsible for the governance, management and fiscal operations of the Hartford school district, all in order to . . . allocate and manage resources efficiently and effectively," all of which are areas of local governmental concern. <u>Id.</u> § 1(A); <u>see</u> <u>Mt. Healthy City Sch. Dist. Bd. of Educ.</u>, 429 U.S. at 280. Thus, this factor weighs against immunity.

Fifth, it is undisputed that the state of Connecticut holds no veto power over the board. Moreover, the board is advised by an advisory council consisting of members not appointed by the state but rather jointly selected by the board and the superintendent, thereby suggesting that

---

[6]Even assuming that the state provides a substantial amount of funding for the Hartford public school district does not necessarily indicate that the board acts as an arm of the state. <u>See</u> <u>Mt. Healthy City Sch. Dist. Bd. of Educ.</u>, 429 U.S. at 280 (local school board considered a municipality despite "receiv[ing] a significant amount of money from the state").

[7]"The city of Hartford shall remain financially responsible for any liabilities . . . incurred by . . . the state Board of Trustees for the Hartford Public Schools." 2001 Conn. Spec. Acts 7 § 3(d).

9

the state retains little or no control over the board.[8] 2001 Conn. Spec. Acts § 3(b).

The last factor, whether the board's obligations are binding upon the state, weighs against immunity. As noted above, the city of Hartford is financially responsible for "any liabilities or obligations" incurred by the board. Id. § 3(d). Thus, the board's obligations are binding upon the city of Hartford and not the state.

For these reasons, the court concludes that the board does not function as an arm of the state and that subjecting the board to federal suit would not impugn the "state['s] sovereignty and dignity" or "place the state treasury at risk." Mancuso v. N.Y. Thruway Auth., 86 F.3d 289, 296 (2d Cir. 1996). Accordingly, sovereign immunity does not attach, and therefore, the court does have jurisdiction with respect to the damages claim for violations of the ADA.

## II   Injunctive Relief and Supplemental Jurisdiction over Mele's claims under the Connecticut Fair Employment Practices Act

The board concedes that the court has jurisdiction over Mele's claim for injunctive relief for violations of the ADA as well as supplemental jurisdiction over Mele's claim for injunctive relief for violations of the CFEPA. However, the board contests the court's exercise of supplemental jurisdiction over the damages claim for violations of the CFEPA. Given that the court has concluded that the board does not function as an arm of the state, whether "an express waiver of Eleventh Amendment immunity for CFEPA claims" exists need not be determined.

---

[8] The board further argues that because the board is monitored by two commissioners who are required to submit a quarterly report to the governor and the joint standing committee of the general assembly, the board is "subject to strong oversight" by the state. However, in Mancuso, the court rejected a similar argument where the New York Thruway Authority was required to submit reports to the state. 86 F.3d at 295.

## **CONCLUSION**

For the foregoing reasons, the Board of Trustees for the Hartford Public Schools' motion to dismiss (document no. 7) is denied.

It is so ordered, this 24th day of June, 2003, at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge