**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **JANICE LAPENNA** | : | **CIVIL ACTION** |
| | : | **MASTER DOCKET** |
| **Plaintiff,** | : | **3:02CV753 (SRU)** |
| **v.** | : | |
| | : | |
| **CITY OF HARTFORD, HARTFORD** | : | |
| **PUBLIC SCHOOLS, STATE BOARD** | : | |
| **OF TRUSTEES FOR THE HARTFORD** | : | |
| **PUBLIC SCHOOLS, ANTHONY** | : | |
| **AMATO, JUNE BERNABUCCI** | : | |
| **and JOSE COLON-RIVAS** | : | |
| **Defendants.** | : | |
| | : | |

| | | |
|---|---|---|
| **JANICE LAPENNA** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:03CV1126 (SRU)** |
| **v.** | : | |
| | : | |
| **JOSE COLON-RIVAS** | : | |
| **Defendant.** | : | |
| | : | **JANUARY 31, 2005** |

**PRE-TRIAL MEMORANDUM**

1.     **TRIAL COUNSEL:**

For the Plaintiff:

Attorney Judith D. Meyer
3785 N. Camino de Oeste
Tucson, AZ  85745
(520) 743-8058 (tel.)
(520) 743-8059 (fax)

For the Defendants:

Joseph W. McQuade
Kainen, Escalera & McHale, P.C.
21 Oak Street, Suite 601
Hartford, CT  06106
(860) 493-0870 (tel.)
(860) 493-0871 (fax)

2. **JURISDICTION:**

Jurisdiction over the Second, Third, Fourth, Fifth and Seventh Counts of the Second

Amended Complaint in the original action is predicated upon 28 U.S.C. §1331 and 1343(3) and

the First and Fourteenth Amendments to the United States Constitution.  Jurisdiction over the

Sixth and Eighth Counts is predicated upon 28 U.S.C. §1367.  (The Court dismissed the First

Count, against former Defendant Anthony Amato, upon the defendants' Motion for Summary

Judgment.)

Jurisdiction over the consolidated Complaint against Jose Colon-Rivas is predicated on

28 U.S.C. §§1331 and 1343(3), and the Fourteenth Amendment to the United States

Constitution.  (The Court dismissed a First Amendment claim as to this defendant only.)

3. **JURY/NON-JURY:**

This case was duly claimed for the jury by the plaintiff.

4.    **LENGTH OF TRIAL**:

The parties believe this case is likely to require six days of evidence.

5.    **FURTHER PROCEEDINGS**:

The parties do not believe further proceedings are required, beyond the final pretrial and rulings on the motions in limine and evidentiary issues.

6.    **NATURE OF THE CASE**:

After the summary judgment dismissal of Anthony Amato and the City of Hartford as defendants, and of any claim against Jose Colon-Rivas based upon the First Amendment, the following causes of action remain.

In the Second Count, Ms. LaPenna claims that Defendant June Bernabucci caused her to be transferred out of Hartford High and removed from her position as Faculty Manager for unlawful purposes which violate 42 U.S.C. §1983, in that:  Ms. Bernabucci was motivated by an intent to punish Ms. LaPenna for the exercise of speech on a matter of public concern, and to chill speech by teachers, in violation of the First Amendment; she intentionally discriminated against Ms. LaPenna on the basis of her sex, in violation of her rights under the Equal Protection Clause; and she intended to injure Ms. LaPenna for a reason unrelated to a legitimate

government objective and take away a property right without due process of law, thus violating her rights under the Due Process Clause.  Ms. LaPenna seeks lost earnings and earning capacity, interest, and compensatory damages for mental, physical and emotional distress, humiliation and embarrassment, damage to her professional reputation, and loss of self-esteem. She further seeks punitive damages, attorneys' fees, costs of litigation and pre- and post-judgment interest, including that based upon her Offer of Judgment.

In the Third Count, Ms. LaPenna claims that Defendant Jose Colon-Rivas violated her rights under 42 U.S.C. §1983, in that he caused her to be transferred out of Hartford High and removed from her position of Faculty Manager and not returned to that position because of her sex, female, in violation of the Equal Protection Clause, and for reasons unrelated to any legitimate governmental interest, and he intentionally took away a property right without due process of law, in violation of the Due Process Clause. Ms. LaPenna seeks lost earnings and earning capacity, interest, and compensatory damages for mental, physical and emotional distress, humiliation and embarrassment, damage to her professional reputation, and loss of self-esteem.  She further seeks punitive damages, attorneys' fees, costs of litigation and pre- and post-judgment interest, including that based upon her Offer of Judgment.

In the Fourth Count Ms. LaPenna claims that the Hartford Public Schools and the State Board of Trustees for the Hartford Public Schools are liable for the decisions of their administrative employees Anthony Amato, June Bernabucci and Jose Colon-Rivas, to all of

whom authority was delegated to make decisions regarding Ms. LaPenna's job assignments. Ms. LaPenna charges that the corporate defendants knew, or should have known, of the violation of her rights, and took no action to train the administrators concerning retaliation for exercising First Amendment rights and sex discrimination, thereby showing deliberate indifference.  Ms. LaPenna seeks lost earnings and earning capacity, interest, and compensatory damages for mental, physical and emotional distress, humiliation and embarrassment, damage to her professional reputation, and loss of self-esteem.  She further seeks punitive damages, attorneys' fees, costs of litigation and pre- and post-judgment interest, including that based upon her Offer of Judgment.

In the Fifth Count Ms. LaPenna seeks damages for willful age discrimination, as against HPS and SBT, pursuant to the ADEA.  She seeks lost wages, an equal amount as liquidated damages, attorneys' fees, costs of litigation and pre- and post-judgment interest, including that based upon her Offer of Judgment.

In the Sixth Count Ms. LaPenna seeks damages from HPS and SBT for willful age discrimination under the Connecticut Fair Employment Practices Act.  Ms. LaPenna seeks lost earnings and earning capacity, interest, and compensatory damages for mental, physical and emotional distress, humiliation and embarrassment, damage to her professional reputation, and loss of self-esteem.  She further seeks attorneys' fees, costs of litigation and pre- and post-judgment interest, including that based upon her Offer of Judgment.

In the Seventh Count, Ms. LaPenna seeks damages from HPS and SBT for willful gender discrimination in violation of Title VII of the Civil Rights Act of 1964.  Ms. LaPenna seeks lost earnings and earning capacity, interest, and compensatory damages for mental, physical and emotional distress, humiliation and embarrassment, damage to her professional reputation, and loss of self-esteem.  She further seeks punitive damages, attorneys' fees, costs of litigation and pre- and post-judgment interest, including that based upon her Offer of Judgment.

In the Eighth Count Ms. LaPenna seeks damages for intentional gender discrimination under the Connecticut Fair Employment Practices Act.  Ms. LaPenna seeks lost earnings and earning capacity, interest, and compensatory damages for mental, physical and emotional distress, humiliation and embarrassment, damage to her professional reputation, and loss of self-esteem.  She further seeks punitive damages, attorneys' fees, costs of litigation and pre- and post-judgment interest, including that based upon her Offer of Judgment.

In the consolidated one-count Complaint against Jose Colon-Rivas, Ms. LaPenna claims that he caused her to be transferred out of Hartford High and refused to permit her to continue in her position of Faculty Manager, in violation of her rights under 42 U.S.C. §1983.  She claims that he violated her rights under the Equal Protection Clause in that he disadvantaged her intentionally, because of her gender.  She further claims that he caused or permitted the transfer and the refusal to allow her to continue in her Faculty Manager position, in violation of

her Due Process Clause rights, in that he had no legitimate governmental objective to violate her established property rights in her position.  Ms. LaPenna seeks lost earnings and earning capacity, interest, and compensatory damages for mental, physical and emotional distress, humiliation and embarrassment, damage to her professional reputation, and loss of self-esteem. She further seeks punitive damages, attorneys' fees, costs of litigation and pre- and post-judgment interest, including that based upon her Offer of Judgment.

The Defendants have asserted an affirmative defense of failure to properly mitigate damages.  The Individual Defendants have asserted the affirmative defense of qualified immunity.  The Institutional Defendants have asserted affirmative defenses based on sovereign immunity, governmental immunity and Eleventh Amendment immunity.

7.     **STATEMENT OF THE CASE**:

The plaintiff, Janice LaPenna, had been a physical education teacher at Hartford Public High School (or "Hartford High") and had been its Faculty Manager of athletic programs since 1996.  In the summer of 2000, the Hartford Public Schools transferred Ms. LaPenna out of Hartford High and assigned her to teach at an elementary school.  When she was transferred to the elementary school, she no longer served as the Faculty Manager at Hartford High.  A younger man named David Hodge was assigned to be a physical education teacher and the

acting Faculty Manager at Hartford High.  Four weeks into the school year, Ms. LaPenna

returned to Hartford High as a teacher, but not as Faculty Manager.

Ms. LaPenna claims that the Defendants transferred her out of Hartford High and took

away her Faculty Manager position in order to punish her for speaking up about certain

administrative decisions she felt should be addressed, and to prevent other teachers from

speaking up.  She claims, further, that the Defendants disadvantaged her because of her age,

fifteen years older than Mr. Hodge, and because she is a woman.  Ms. LaPenna claims that,

upon her return to Hartford High, the Defendants refused to reinstate her as Faculty Manager

asserting that it would be unfair to Mr. Hodge if they did so.

The Defendants in this case are the Hartford Public Schools, the State Board of Trustees

for the Hartford Public Schools, June Bernabucci and Jose Colon-Rivas.  Ms. Bernabucci is the

Director of Unified Arts for the Hartford Public Schools and serves as the school district's

Athletic Director.  Mr. Colon-Rivas is the former Principal at Hartford Public High School.

The Defendants claim that the Faculty Manager at each high school in Hartford serves as a

liaison between the school district's Athletic Director and the coaches at the high school where

she or he is stationed.  They assert that the Faculty Manager is an extracurricular assignment

and that the teacher serving as the Faculty Manager at a particular high school receives a

stipend above and beyond their salary as a teacher.  They further claim that, once Ms. LaPenna

was transferred out of Hartford High, she could no longer serve as the Faculty Manager at

Hartford High because she was not present at the school during the school day.  The

Defendants deny that they unlawfully discriminated against Ms. LaPenna or that they retaliated

against her for speaking out on a matter of public concern.

8.      **TRIAL BY MAGISTRATE JUDGE:**

The parties have not consented to trial before a Magistrate Judge.

9.      **LIST OF WITNESSES:**

   A.      **WITNESSES PLAINTIFF EXPECTS TO CALL AT TRIAL**

   1.      Janice LaPenna
           387 Great Swamp Road
           Glastonbury, CT 06033

Ms. LaPenna will testify to her education, training and experience as a teacher

and as the Faculty Manager at Hartford High; the nature of and her performance of assigned job

duties; and the feedback she received from supervisors, colleagues and other administrators.

She will testify about the contract under which she held the position as Faculty Manager and

her teaching contract.  She will testify about the controversy about the inclusion of Sports

Sciences Academy in the interscholastic programs and meetings and communications related

thereto, her own concerns about the issue and how she expressed them.  She will testify about

the petition she drafted for the coaches at Hartford High to sign, and the investigation

conducted by June Bernabucci, as well as Ms. Bernabucci's subsequent communications which
apparently resulted from the petition.  She will discuss her interactions with Ms. Bernabucci
thereafter.  She will testify about her communications with Dr. Colon and other HPS
administrators, with her union leaders and with her new principal and other teachers, regarding
her transfers during the summer and fall of 2000, out of and back into Hartford High, and
regarding her continuance or removal from her position as Faculty Manager.  She will also
testify to the reasons why it would be easier to perform the Faculty Manager position at
Hartford High, while she was assigned to teach at Webster School.  Ms. LaPenna will discuss
the NEASC reports on Hartford High, including the recommendations NEASC made for
improving Hartford High, and the lack of any recommendation that any faculty be transferred
out of the school, or that any changes be made in the physical education or athletic programs at
the school.  Ms. LaPenna will further testify to statements made by the defendants in her
presence, regarding the reasons why she was transferred and the reasons why she was not
permitted to continue in her position as Faculty Manager.  She will testify about her union
grievances and HPS's responses to them.  Ms. LaPenna will testify about the effects on her
willingness to advocate for her students, of the defendants' comments and threats about her
"making trouble," and having her terms and conditions of employment altered because "her
mouth had gotten her in trouble."  She will testify to the effects of the transfer, the loss of her

Faculty Manager position, and the statements made by HPS administrators about the reasons

for the decisions, on her economic and personal life and well-being.

 2. Louis LaPenna
  387 Great Swamp Road
  Glastonbury, CT 06033

 Mr. LaPenna witness will testify concerning his education, training and

experience as a teacher and athletic coach for the Hartford Public Schools.  He will testify

about the controversy about the inclusion of Sports Sciences Academy in the interscholastic

programs, his own beliefs and position on the matter, and his participation in and observation

of meetings and communications related thereto.  He will testify about the disciplinary

measures threatened and taken against him for allegedly faxing a memorandum from

Superintendent Anthony Amato to a person outside HPS, and the proceedings on his grievance

of June Bernabucci's action against him.  He will testify to the intimidation he felt, when June

Bernabucci questioned him and his colleagues after he signed a petition seeking further

communications with Mr. Amato about the Sports Sciences Academy issue, and the chilling

effect on him of the HPS administration's response.  Mr. LaPenna will testify to his interactions

with the Faculty Manager at Weaver High, and his observation of Matt Steele's job

performance as Faculty Manager at Weaver High, and the fact that Mr. Steele teaches at a

different school much of the day and does not return to Weaver High until some time after the

end of the school day.  Mr. LaPenna will also testify about his observations of the effects upon

his wife, Janice LaPenna, her transfer out of Hartford High and her removal from her position as Faculty Manager, and the related threats and communications.

    3.      Elizabeth Gunn
             Hartford Public High School
             Hartford, CT

Elizabeth Gunn will testify to her experience as a teacher and coach at Hartford High, and her experience of what the Faculty Manager does at the school.  She will testify to statements made to her by Jose Colon regarding Janice LaPenna's transfer out of Hartford High and her discussions about the subject with Anthony Amato, June Bernabucci and Robert Stacy. She will also testify about the statement Dr. Colon made in her presence, that he had no problem with Ms. LaPenna continuing as Faculty Manager while she was teaching at Webster School.

    4.      William F. Hagan
             21 Griswold Street
             Hartford, CT 06114

Mr. Hagan will testify about his experiences with the HPS administration concerning the transfer of teachers out of Hartford High in the summer of 2000, including what was stated at the meeting when Anthony Amato announced the transfers.  He will testify about his meeting with Ed Vargas and Dr. Colon about whether the decisions could or would be rescinded as to each individual teacher, and his subsequent meeting with June Bernabucci

concerning Janice LaPenna and Cynthia Turcotte's transfers.  He will further discuss his

experience handling a grievance for Louis LaPenna concerning disciplinary measures

administered by June Bernabucci, and in particular his meeting with Ms. Bernabucci and Louis

LaPenna.  He will discuss his handling of grievances in behalf of Janice LaPenna as well.

     5.     Harry Holloway
               1134 Smith Road
               Worcester, NY 12197

        Mr. Holloway will testify to his experience supervising Janice LaPenna as both

a teacher and the Faculty Manager at Hartford High when he was the Executive Vice Principal

of the school.  He will discuss her performance, and any comments he recalls making or

hearing regarding Ms. LaPenna's performance, attitude, dedication, cooperativeness and

willingness to work for the best interests of Hartford High and its students and the accreditation

of Hartford High.  He will also testify about the job of Faculty Manager, its requirements, and

the feasibility of having a Faculty Manager for Hartford High who was not present for the first

hour or so after the school day.

     6.     Jose Colon-Rivas
               153 Market Street
               Hartford, CT 06103

        Dr. Colon is expected to testify as an adverse witness, substantially in accord

with some or all of his previous testimony.  He will be questioned, generally, about his

13

background and experience in the Hartford Public Schools, his involvement in decisions related to Janice LaPenna's employment, and any reasons he knows for those decisions.

      7.     Cynthia Turcotte

Cynthia Turcotte will testify to her education, training and experience as a physical education teacher and coach for the Hartford Public Schools. She will testify to a meeting between herself, Janice LaPenna and Dr. Colon and Dr. Colon's conduct and statements in that meeting. She will further testify to her communications with June Bernabucci about Dr. Colon's claim, to the effect that he was attempting to have the transfers out of Hartford High of Ms. LaPenna and Ms. Turcotte rescinded but Ms. Bernabucci would not allow it. Ms. Turcotte will also testify to Dr. Colon's statement, in her presence, that he believed she was still the Faculty Manager for Hartford High as of the first day of the 2000-2001 school year, while Ms. LaPenna was a teacher at Webster School, and he had no problem that.

      8.     Joseph Wall
                  301 Broad Way
                  Coventry, CT

Mr. Wall will testify concerning his experience working with Janice LaPenna, and her performance at Hartford High while he was Principal. He will testify that he never suggested Ms. LaPenna should be transferred out of Hartford High; nor did he place her name

on any list of teachers to be transferred out of the school; nor was he aware of any reason to do so. He will further testify that he did not state, or hear anyone else state, that Janice LaPenna was "not a team player." He will testify to his experience with the NEASC accreditation process, and that NEASC never recommended that any faculty members be transferred out of Hartford High. He may testify concerning Anthony Amato's statement that he wanted to transfer some teachers out of Hartford High, and his subsequent request that Mr. Wall review a list of teachers Dr. Colon would prepare for that purpose.

> 9.    Robert Stacy
>        66 Carriage Drive
>        Avon, CT

Mr. Stacy will be called to testify about the terms of the union contract between the Hartford Federation of Teachers and the State Board of Trustees for the Hartford Public Schools. He will testify to what procedure, if any, he made available to Janice LaPenna, prior to allowing her to be transferred out of Hartford High. He will be asked to testify about the meetings he attended and all information he has concerning the transfer of Janice LaPenna out of and back into Hartford High, and her removal from the position of Faculty Manager.

B.     **WITNESSES PLAINTIFF MAY CALL AT TRIAL IF THE NEED ARISES**

1.     Edwin Vargas
       141 Douglas Street
       Hartford, CT

Mr. Vargas may be called to testify about his experiences with the HPS administration concerning the transfer of teachers out of Hartford High in the summer of 2000, including what was stated at the meeting when Anthony Amato announced the transfers.  He will testify about his meeting with Bill Hagan and Dr. Colon about whether the decisions could or would be rescinded as to each individual teacher, and his subsequent meeting with June Bernabucci concerning Janice LaPenna and Cynthia Turcotte's transfers.

2.     Frank J. Dumont
       94-12 80th Street
       Ozone Park, NY

Plaintiff may call Mr. Dumont to testify about his involvement in decisions related to her employment with HPS, what he knows about who made such decisions, and any reasons he knows for those decisions.

3.     Margery Jackson
       Hartford Public High School
       Hartford, CT

Ms. Jackson may be called to testify about the process by which a Faculty Manager was selected for Hartford High for the 2001-2003 term.  She may also be asked to

testify to her observations of Janice LaPenna's performance as a teacher and as Faculty

Manager at Hartford High.


### C.    WITNESSES THE DEFENDANTS INTEND TO CALL AT TRIAL:

1.    Jose Colon-Rivas, 960 Main Street, Hartford, CT 06103. Mr. Colon-Rivas, a

defendant in this action, will testify regarding all aspects of the Plaintiff's complaint and the

Defendants' defenses to which he has knowledge. In particular, he will testify regarding his

assumption of the Principalship at Hartford Public High School; his demands for taking on the

Principalship; the staff changes he undertook; his decision to reassign Plaintiff to Webster

School and his decision to request that Plaintiff be transferred back to Hartford Public High

School; his decisions regarding the Faculty Manager assignment; and any aspects of damages.

2.    June Bernabucci, 960 Main Street, Hartford, CT 06103. Ms. Bernabucci, a

defendant in this action, will testify regarding all aspects of the Plaintiff's complaint and the

Defendants' defenses to which she has knowledge. In particular, she will testify regarding her

job duties; her involvement or lack thereof in the reassignment of physical education teachers at

Hartford Public High School; the athletic program at HPHS and in the district; the Faculty

Manager assignment; any recommendations that she may have made regarding the Faculty

Manager assignment at HPHS; the interviews for the Faculty Manager assignment at HPHS in

2001; Plaintiff's First Amendment claims; and any aspects of damages.

3.     Gail Johnson, 960 Main Street, Hartford, CT  06103.  Ms. Johnson, the Executive Director of Human Resources for the Hartford Public Schools, will testify regarding the employment policies of the Hartford Public Schools; any relevant portions of the collective bargaining agreement, including, but not limited to, any sections regarding extracurricular assignments; and any damages issues on which she has knowledge.

4.     Robert Henry, 960 Main Street, Hartford, CT  06103.  Mr. Henry, the Superintendent of Schools in Hartford, will testify regarding the policies of the Hartford Public Schools; the accreditation situation at HPHS; and any knowledge that he has regarding the Plaintiff's claims and the Defendants' defenses.

5.     Harriet Marek, 960 Main Street, Hartford, CT  06103.  Ms. Marek, a Human Resources Administrator during the relevant time, will testify regarding Plaintiff's reassignments from and back to HPHS, as well as any knowledge that she may have regarding Plaintiff's claims or Defendants' defenses.

6.     David Hodge, 55 Forest Street, Hartford, CT  06105.  Mr. Hodge will testify regarding his reassignment to HPHS; his background and qualifications; his performance of the duties of Faculty Manager; his preparations for and his interviews for the Faculty Manager assignment since 2000.

7.      Aida Fernandez-Ramos, 55 Forest Street, Hartford, CT  06105.  Ms. Ramos, an Assistant Principal at HPHS, will testify regarding the interviews conducted for the Faculty Manager assignment since 2000.

8.      Mark Zito, 55 Forest Street, Hartford, CT  06105.  Mr. Zito, the Principal at Hartford Public High School, will testify regarding the Faculty Manager selection process in 2003 and the functions of the Faculty Manager at HPHS.

9.      Lindy Remigino, Last known address:  22 Paris Lane, Newington, Connecticut 06111.  Mr. Remigino will testify regarding the interviews, in 2001, for the Faculty Manager assignment.

10.     Helen Green, Last known address:  330 Laurel Street, Apt. 104, Hartford, Connecticut 06105.  Ms. Green will testify regarding the interviews, in 2001, for the Faculty Manager assignment.

11.     Marjorie Jackson, HPHS, 55 Forest Street, Hartford, Connecticut 06105. Ms. Jackson will testify regarding the interviews, in 2001, for the Faculty Manager assignment.

*Plaintiff's Objections:  Plaintiff objects to the naming of numerous witnesses never identified before by defendants, including in their Rule 26(a)(1) Disclosures;  and to the naming of witnesses to testify to collateral matters and entirely immaterial or irrelevant matters.*

*This trial is not about the Special Acts or the need for accreditation for Hartford High School, which the defendants have never actually linked credibly to the actions taken against plaintiff*

*It would compound the proceedings dramatically and entirely unnecessarily to include either testimony or documentary evidence of the Special Acts, the various plans for improvement of the Hartford Public Schools(unless the defendants first make some credible showing that the plan is directly pertinent to the actions at issue in this case.*

### D.    WITNESSES THE DEFENDANTS MAY CALL IF THE NEED ARISES:

Anthony Amato, 3510 General DeGaulle Drive, New Orleans, Louisiana 70114. Mr. Amato, the former Superintendent of Schools in Hartford and a former defendant in this action, may testify regarding his knowledge as to the Plaintiff's claims or the Defendants' defenses. In particular, he may testify regarding the accreditation crisis at HPHS; his discussions with NEASC personnel regarding accreditation; his selection of Mr. Colon-Rivas as the Principal of HPHS; Mr. Colon-Rivas' conditions on accepting the position; the authority he granted to Mr. Colon-Rivas in order to save HPHS's accreditation; and his knowledge or lack thereof regarding Plaintiff's First Amendment claims. Mr. Amato may testify in person or through his deposition.

Robert Stacy, 66 Carriage Drive, Avon, Connecticut 06001. Mr. Stacy, the former Executive Director of Human Resources for the Hartford Public Schools may testify regarding the reassignments of Plaintiff to and from HPHS; relevant collective bargaining agreements; and any other matter in which he has relevant knowledge.

Frank Dumont, 94-12 80th Street, Ozone Park, New York.  Mr. Dumont, former Labor Relations Manager for the Hartford Public Schools, may testify regarding his involvement in the resolution of Plaintiff's reassignments and the Faculty Manager position.  Mr. Dumont may testify via his deposition.

Cynthia Turcotte, 53 Vernon Street, Hartford, Connecticut 06106.  Ms. Turcotte may testify regarding the interviews, in 2001, for the Faculty Manager assignment.

Ezequiel Alejandro, Last known address:  254 Oak Street, Manchester, Connecticut 06040.  Mr. Alejandro may testify regarding the interviews, in 2001, for the Faculty Manager assignment, his interactions with students and his departure from the Hartford Public Schools.

Paul Stringer, 415 Granby Street, Hartford, Connecticut 06112.  Mr. Stringer may testify regarding Plaintiff's First Amendment claim and the Faculty Manager assignment at Weaver High School.

Matthew Steele, 415 Granby Street, Hartford, Connecticut 06112.  Mr. Steele may testify regarding the Faculty Manager assignment at Weaver High School.

Diane Kutsavage-Prescod, Burr School, 400 Wethersfield Avenue, Hartford, Connecticut 06114.  Ms. Kutsavage-Prescod may testify regarding accreditation issues at HPHS, the transition between Principal Wall and Principal Colon-Rivas and the transfer of teachers to and from HPHS.

Norma Lavoie, Sport & Medical Sciences Academy, 275 Asylum Street, Hartford, Connecticut 06103.  Ms. Lavoie may testify regarding the accreditation issues at HPHS, the transition from Principal Wall to Principal Colon-Rivas, the transfer of teachers to and from HPHS and her experiences as an Assistant Principal at HPHS.

Marilyn Kulpa, 960 Main Street, Hartford, Connecticut 06103; 11 Foothills Way, Bloomfield, Connecticut 06002.  Ms. Kulpa may testify regarding the transfer of teachers to and from HPHS and the state of affairs at HPS in 2000.

Thomas Ritter, Brown, Rudnick, Berlack, Israels LLP, 185 Asylum Street, 38th floor, Hartford, CT  06103-3402.  Mr. Ritter may testify regarding:  the adoption and implementation of Special Acts 97-4 and 01-7; the role of the State Board of Trustees for the Hartford Public Schools ("State Board"); the State Board's objectives and expectations; and efforts to improve the quality of education in Hartford, including Hartford Public High School.

Freeman Burr, 5 Cone Street, Hartford, CT  06105.  Mr. Burr, the Principal at Webster Elementary School, may testify regarding the schedule at his school for physical education and his inability to allow Plaintiff to leave Webster Elementary School prior to the end of the school day.  He may further testify regarding any communications that he may have had regarding Plaintiff and the Faculty Manager assignment at Hartford Public High School.

Joseph Lee, 960 Main Street, Hartford, CT  06103.  Mr. Lee may testify regarding his conversation with Elizabeth Gunn and the resulting memo that he wrote.  He may also testify

regarding any knowledge that he has regarding Plaintiff's transfers and the Faculty Manager

assignment at Hartford Public High School.

**10.    DEPOSITION TESTIMONY:**

**June 3, 2003 Deposition of Anthony Amato**

Defendants' Designations                                    Plaintiff's Designations

| Page | Lines | Page | Lines |
|------|-------|------|-------|
| 6 | 14-18 | | |
| 11 | 3-9 | | |
| 13 | 21-25 | | |
| 14 | 1-7 | | |
| 16 | 18-25 | | |
| 17 | 1-25 | | |
| 18 | 1-25 | | |
| 19 | 1-6 | | |
| 20 | 7-25 | | |
| 21 | 1-25 | | |
| 22 | 1-14 | | |
| 23 | 4-23 | | |
| 24 | 24-25 | 24 | 25 |
| 25 | 1-25 | 25 | 1-25 |
| 26 | 1, 13-21 | 26 | 1-25 |
| | | 27 | 1-4, 20-25 |
| | | 28 | 1-25 |
| 29 | 16-25 | 29 | 1-15 |
| 30 | 1-6 | | |
| 32 | 19-24 | | |
| | | 33 | 12-25 |
| | | 34 | 1-21 |
| 35 | 15-25 | | |
| 42 | 3-6, 10-24 | | |
| 43 | 3-5, 14-25 | | |
| 44 | 1-23 | | |

| | | | |
|---|---|---|---|
| 46 | 1-17 | | |
| 47 | 9-17 | | |
| 50 | 7-25 | | |
| 51 | 1-25 | | |
| 52 | 1-6 | | |
| | | 62 | 18-25 |
| | | 63 | 1-25 |
| | | 64 | 1-16 |
| 66 | 18-25 | | |
| 67 | 1-25 | | |
| 68 | 1-2 | | |
| 72 | 6-12 | | |

| | | | |
|---|---|---|---|
| Plaintiff's Cross-Designations: | | 19 | 7-13 |
| | | 30 | 7-17 |
| | | 52 | 7-14 |

## Defendants' Objections to Proposed Deposition Testimony

On page 26 (lines 22-25) and continuing on page 27 (line 1), Defendants object to the compound question and request that the first question asked be redacted when read to the jury. As to Plaintiff's designation of testimony on pages 62-64, Defendants object on the grounds that the proposed testimony is irrelevant and unduly prejudicial and confusing under Fed. R. Evid. 403. Defendants reserve the right to object on further grounds based on the presentation of evidence and the court's evidentiary rulings prior to and during trial.

## Plaintiff's Objections to Defendants' Designations

Plaintiff objects to the following designations by defendants on the stated bases

| | | |
|---|---|---|
| 22 | 1-14 | Witness could not answer question, gave unresponsive answer |
| 35 | 15-25 | Witness speculating, expressly stated did not remember |
| 46 | 1-17 | Witness speculating |
| 66 | 18-25 | Witness speculating |
| 67-68 | | Witness speculating |

**October 10, 2003 Deposition of Frank Dumont**

| Defendants' Designations | | Plaintiff's Designations | |
|---|---|---|---|
| Page | Lines | Page | Lines |
| | | 7 | 17-25 |
| | | 8 | 1-25 |
| | | 9 | 1-15 |
| | | 20 | 11-15 |
| 36 | 12-16 | | |
| | | 38 | 11-17 |
| 45 | 9-15 | 45 | 9-25 |
| 46 | 22-23 | 46 | 1-25 |
| | | 47 | 1-2 |
| | | 48 | 1-17 |
| 53 | 19-25 | 53 | 19-25 |
| | | 54 | 1-25 |
| 55 | 20-25 | 55 | 1-3, 20-25 |
| | | 56 | 1-15 |
| | | 63 | 3-25 |
| | | 64 | 1-25 |
| 65 | 20-25 | 65 | 1-25 |
| 66 | 1-3 | 66 | 1-25 |
| | | 67 | 1-25 |

25

| | | | |
|---|---|---|---|
| | | 68 | 1-24 |
| 80 | 14-24 | 80 | 14-25 |
| 81 | 3-8 | 81 | 1-25 |
| | | 82 | 1-25 |
| | | 83 | 1-12 |
| | | 88 | 8-25 |
| | | 89 | 1-11, 20-25 |
| | | 90-105 | 1-25 |
| | | 106 | 1-13 |
| | | 107 | 20-25 |
| | | 108 | 1-2 |
| 123 | 23-25 | | |
| 124 | 1-23 | | |
| 125 | 6-20 | | |
| 133 | 13-25 | | |

Plaintiff's Cross-Designations:

| | | | |
|---|---|---|---|
| | | 124 | 24-25 |
| | | 125 | 1-5 |

Plaintiff's Objections:

36   17-20   immaterial.

### Defendants' Objections to Proposed Deposition Testimony

Defendants object to Plaintiff's designations of pages 63 (lines 3-25) through 65 (lines 1-19) and 66 (lines 3-25), 67, 68 (line 1-24) on the basis that the testimony is speculative. The witness could not identify the document at issue and the responses obviously consist of speculation. Fed. R. Evid. 602, 701. Defendants also object to Plaintiff's designation of pages 90-108 on the grounds of relevance. Fed. R. Evid. 402. Mr. Dumont's interpretation of the collective bargaining agreement between the State Board and the teacher's union has no

relevance to this dispute. Defendants reserve the right to object on further grounds based on the

presentation of evidence and the court's evidentiary rulings prior to and during trial.

### Deposition of Robert Stacy

Plaintiff's Designations

| Page | Lines |
|------|-------|
| 3 | 16-25 |
| 4 | 1-25 |
| 5 | 1-22 |
| 11 | 14-25 |
| 12-14 | 1-25 |
| 15 | 1-22 |
| 21 | 8-25 |
| 22 | 1-19 |
| 23 | 23-25 |
| 27 | 21-25 |
| 28-30 | 1-25 |
| 31 | 1-21 |
| 35 | 4-25 |
| 36-37 | 1-25 |
| 38 | 1-24 |
| 42 | 2-25 |
| 48 | 19-25 |
| 49-58 | 1-25 |
| 59 | 1-18 |
| 60 | 11-25 |
| 61 | 1-22 |
| 68 | 8-25 |
| 69-75 | 1-25 |
| 76 | 1-11 |
| 82 | 18-25 |
| 83-87 | 1-25 |

| | |
|---|---|
| 88 | 1-4 |
| 92 | 22-25 |
| 93 | 1-4 |
| 98 | 11-25 |
| 99 | 1-2 |
| 108 | 17-25 |
| 109-110 | 1-25 |
| 111 | 1-7 |

<u>Defendants' Objections to the Proposed Deposition Testimony</u>

Defendants intend to call Mr. Stacy to testify at trial, if his testimony becomes necessary. Plaintiff has also listed Mr. Stacy as a witness. If Mr. Stacy is unavailable to testify at trial, the parties will have to decide upon which portions of the deposition that they wish to attempt to enter into the record. At this point in time, such designations are unnecessary. Defendants reserve the right to object on further grounds based on the presentation of evidence and the court's evidentiary rulings prior to and during trial.

**<u>Deposition of June Bernabucci (Volume 1)</u>**

<u>Plaintiff's Designations</u>

| <u>Page</u> | <u>Lines</u> |
|---|---|
| 12 | 16-25 |
| 12-20 | 1-25 |
| 22 | 16-25 |
| 23-40 | 1-25 |
| 41 | 1-18 (as corrected) |
| 44 | 24-25 |
| 45-46 | 1-25 |

| | |
|---|---|
| 47 | 1-7 |
| 48 | 14-25 |
| 49 | 1-11 |
| 56 | 3-25 |
| 57 | 1-10 |
| 73 | 5-25 |
| 74 | 1-12 |
| 79 | 13-25 |
| 80-81 | 1-25 |
| 82 | 1-9 |
| 85 | 7-25 |
| 86 | 1-25 |
| 87 | 1-11 |
| 91 | 25 |
| 92-103 | 1-25 |
| 119-121 | 1-25 |
| 122 | 1-24 |
| 124 | 11-25 |
| 125-139 | 1-25 |
| 140 | 1-11 (as corrected) |
| 156 | 20-25 |
| 157-164 | 1-25 |
| 165 | 1-3 |
| 166 | 12-25 |
| 167-175 | 1-25 |
| 176 | 1-23 |
| 183 | 22-25 |
| 184-185 | 1-25 |
| 186 | 1-13 |
| 187 | 12-25 |
| 188-199 | 1-25 |
| 200 | 1-21 |

**Volume 2**

| Page | Lines |
|---|---|
| 5 | 17-22 |

| | |
|---|---|
| 6 | 3-25 |
| 7-8 | 1-25 |
| 9 | 1-12 |
| 41 | 11-25 |
| 42 | 1-25 |
| 43 | 1-20 |
| 57-59 | 1-25 |
| 60 | 1-9 |
| 61 | 18-25 |
| 62 | 1-7 |
| 74 | 11-25 |
| 75 | 1-12 |
| 99 | 14-25 |
| 100-108 | 1-25 |
| 109 | 1-3, 19-25 |
| 110-116 | 1-25 |
| 117 | 1-17 |
| 120 | 6-25 |
| 121 | 1-5 |
| 123 | 19-25 |
| 124 | 1-25 |
| 125 | 1-5 |
| 126 | 3-25 |
| 127 | 1-21 |

<u>Defendants' Objections to Proposed Deposition Testimony</u>

Defendants intend to call Ms. Bernabucci, a defendant in this action, to testify at trial.

Defendants reserve the right to object on further grounds based on the presentation of evidence and the court's evidentiary rulings prior to and during trial.

11.    **EXHIBITS**:

**Plaintiff's Exhibits**

A.    EXHIBITS PLAINTIFF EXPECTS TO OFFER AT TRIAL

1.    Evaluation Report dated 5/6/96:  annual evaluation of Janice LaPenna's performance

2.    Evaluation Report dated 5/28/99:  annual evaluation of Janice LaPenna's performance

3.    Evaluation Report dated 5/13/2000:  annual evaluation of Janice LaPenna's performance

4.    Observation Report dated 5/23/00:  report of observation of Janice LaPenna's teaching, by Harry Holloway, Executive Vice Principal, Hartford High

5.    Job Description, Faculty Manager of Athletics

6.    Posting for Faculty Manager position, May 17, 2001

7.    "Duties of High School Faculty Manager of Athletics" dated "6/87, Revised 3/91"

8.    Letter from June Bernabucci to Athletic Coaches and Faculty Managers, dated June 10, 1998

9.    Memorandum to Head Coaches & Faculty Managers from Anthony Amato dated September 15, 1999, relating to City Series Interscholastic Sports Contest Scheduling

10.     Petition to Mr. Amato, dated October 8, 1999, requesting meeting and asking him to contact Janice LaPenna

11.     Letter from June Bernabucci to Head Coaches and Faculty Managers, dated December 13, 1999

12.     Letter to Janice LaPenna from Robert A. Stacy, dated August 3, 2000, regarding transfer out of Hartford High

13.     CHRO Amended Complaint

14.     CHRO Answer to Second Amended Complaint

15.     Letter to Janice LaPenna dated Sept. 25, 2000, relating to voluntary transfer to Hartford High

16.     Defendants' Responses to Plaintiff's First Set of Interrogatories and Requests for Production: Interrogatory Response Numbers 1, 4, 5, 6, 7, 8, 9, 10, 13, and 14

17.     Collective Bargaining Agreement between the State Board of Trustees for the Hartford Public Schools and the Hartford Federation of Teachers, July 1, 1999 - June 30, 2002 (Revised Version August 23, 1999)

18.     Collective Bargaining Agreement between the State Board of Trustees for the Hartford Public Schools and the Hartford Federation of Teachers, July 1, 2002 - June 30, 2005

19.    Letter dated May 6, 2002, from Ann Bird to Gregg Kotecki, regarding arbitration of Janice LaPenna's grievance not going forward the following day because HPS decided to grant the grievance

20.    Memorandum to Lou LaPenna from June Bernabucci, dated December 2, 1999, regarding fax to Mil Mason

21.    Letter to Lou LaPenna from June Bernabucci, dated December 17, 1999

22.    Letter to David Hodge from Robert Stacy, dated August 10, 2000

23.    Timeline showing events related to issue of including Sports Sciences Academy teams in schedules of interscholastic sports

24.    Timeline showing events related to removal of Janice LaPenna as teacher and as Faculty Manager at Hartford High, to her transfer back to Hartford High, and to the decision not to allow her to resume her position as Faculty Manager

25.    Before and after chart related to loss of enjoyment of life and emotional distress, humiliation and embarrassment, damage to her professional reputation, and loss of self-esteem

26.    Chart of Defendants' shifting reasons

27.    In addition, plaintiff expects to introduce the exhibits which are referenced in excerpts of depositions to be read to the jury, as necessary for purposes of clarity.

B.     EXHIBITS PLAINTIFF MAY OFFER AT TRIAL IF THE NEED ARISES

1.     Tape recordings from CHRO investigation:  excerpts of testimony to be played for the jury

2.     Letter from Janice LaPenna to Robert Stacy, dated Aug. 20, 2000.  LAP 000690

3.     Memorandum from Frank J. Dumont to "File," dated Sept. 21, 2000, regarding HPHS Physical Education Class Size

4.     Memorandum from Frank J. Dumont to William Hagan, dated March 26, 2001, regarding Superintendent-Level Hearing

5.     NEASC files concerning accreditation of Hartford Public High School, to be subpoenaed with Pamela Gray-Bennett as witness.

C.     EXHIBITS THE DEFENDANTS' EXPECT TO OFFER AT TRIAL:

1.     Special Act 97-4.

2.     Special Act 01-7.

3.     Personnel Policy (Nondiscrimination) (LAP 1).

4.     October 8, 1999 Memo from Athletic Coaches of the Hartford Public High Schools to Mr. Amato re:  Response to September 15, 1999 memo.

5.     December 13, 1999 Letter from June Bernabucci to Head Coaches and Faculty Managers (19).

6.      September 11, 2000 E-Mail from June Bernabucci to Robert Stacy re:  HPHS Physical Education Staffing (LAP 603).

7.      September 22, 2000 Memo from Frank Dumont to file re:  HPHS Physical Education Class Size (LAP 423-424).

8.      September 22, 2000 E-Mail from Frank Dumont to Harriet Marek re:  HPHS Physical Education Class Size Transfers (LAP 418).

9.      September 25, 2000 Letter from Harriet Marek to Janice LaPenna re: voluntary transfer to HPHS (LAP 419).

10.     Grievance form (LAP 146).

11.     Faculty Manager posting posted May 17, 2001 (LAP 377).

12.     May 23, 2001 Application of Janice LaPenna for Faculty Manager assignment (LAP 583-585).

13.     May 25, 2001 Application of David Hodge for Faculty Manager assignment (LAP 580-581).

14.     June 11, 2001 Memo from June Bernabucci to Mrs. Janice LaPenna re: Interview for Faculty Manager at Hartford Public High School (LAP 289).

15.     Materials submitted by David Hodge at Interview for Faculty Manager position (see, LAP 439 – 576).

16.     2001-2003 Hartford Public High School Faculty Manager 2001-2003 Questionnaire (LAP 379).

17.     Notes of Faculty Manager Interviews (LAP 374-376).

18.     June 19, 2001 Memo from Aida Fernandez-Ramos to Jose Colon-Rivas with attached ballots (LAP 384-390).

19.     August 2, 2001 Letter from Constanza Paramo to Janice LaPenna (LAP 322).

20.     August 13, 2003 Interview evaluation forms for Interview of Janice LaPenna for the Faculty Manager assignment at Hartford Public High School.

21.     Materials submitted by Janice LaPenna in connection with 2003 interview for Faculty Manager assignment.

22.     August 13, 2003 Interview evaluation forms for Interview of David Hodge for the Faculty Manager assignment at Hartford Public High School.

23.     Materials submitted by David Hodge in connection with 2003 interview for Faculty Manager assignment.

24.     Payroll records re:  Plaintiff's coaching income.

D.     EXHIBITS THE DEFENDANTS MAY OFFER AT TRIAL:

Collective Bargaining Agreement between the State Board of Trustees for the Hartford Public Schools and the Hartford Federation of Teachers July 1, 1999 - June 30, 2000.

36

Collective Bargaining Agreement between the State Board of Trustees for the Hartford Public Schools and the Hartford Federation of Teachers July 1, 2002 – June 30, 2005.

Hartford Public Schools Employee Handbook (LAP 2 – 41).

Duties of High School Faculty Manager of Athletics.

Job Description:  Faculty Manager of Athletics Curriculum and Instruction (LAP 414-415).

Amended Affidavit of Illegal Discriminatory Practice dated August 28, 2001 (LAP 395-398).

Second Amended Affidavit of Illegal Discriminatory Practice dated September 20, 2001 (LAP 400-404).

June 10, 1998 Letter from June Bernabucci to Athletic Coaches and Faculty Managers (14-15).

Various Charts and documents regarding the transfers of teachers in and out of Hartford Public High School (see LAP 587 – 589, 592, 595 – 602, 604 – 609).

July 24, 2000 E-Mail from June Bernabucci to Harriet Marek (LAP 586).

August 3, 2000 Letter from Robert Stacy to Janice LaPenna re: administrative transfer (LAP 358).

Memo from June Bernabucci to All Coaches and Faculty Managers re:  Meeting on August 28, 2000 (24).

August 9, 2000 Grievance form (LAP 593 – 594).

August 20, 2000 letter from Janice LaPenna to Robert Stacy re:  request for consultation (LAP 690).

August 23, 2000 Memo from Joseph Lee to Frank Dumont (LAP 416).

September 1, 2000 Memo from Bernabucci to Colon re:  Physical Education/Faculty Manager-Staffing at Hartford Public.

September 8, 2000 Personnel Action Form (LAP 355).

September 26, 2000 Personnel Action Form (LAP 356).

January 26, 2001 Agreement between the State Board and the Teachers' Union (LAP 590-591, 683-684).

March 26, 2001 Memo from Frank Dumont to William Hagan (LAP 161-162).

June 18, 2001 Faculty Manager Interviews (LAP 373).

June 20, 2001 Letters from Migdalia Dones to those selected as Faculty Managers (LAP 430 – 432).

2003 Faculty Manager Posting.

January 30, 2001 Memo from William Hagan to Anthony Amato concerning Grievance #00-32, Janice LaPenna (LAP 422).

August 10, 2000 Letter from Robert Stacy to David Hodge re:  administrative transfer.

June 27, 2001 Letter from David Hodge to Penny Leto re:  weight lifting program at HPHS.

June 2, 1996 National Football Foundation & College Hall of Fame Scholar-Athlete Awards Dinner program.

Newspaper articles regarding David Hodge and championship football teams.

August 24, 2001 Memo from William Hagan to Constanza Paramo concerning First Step Grievance—Janice LaPenna (LAP 147).

September 14, 2001 Memo from William Hagan to Anthony Amato concerning grievance #01-10, Janice LaPenna (LAP 145).

Applicant listing for certified vacancy #963 (LAP 148).

January 30, 2002 Memo from William Hagan to Anthony Amato concerning Grievance #01-10, Janice LaPenna (LAP 133).

American Arbitration Association Demand for Arbitration (LAP 134).

American Arbitration Association Demand for Arbitration (LAP 149).

May 26, 2002 Letter from Ann Bird to Gregg Kotecki re:  settlement of grievance.

Plaintiff's Responses to Defendants' First Set of Interrogatories and Requests for Production Directed to Plaintiff.

Plaintiff's W-2 Forms 1997 – present.

Payroll Records for Janice LaPenna.

Actions to Improve the Hartford Public Schools, 1999-2000, 2002-2003.

November 23, 1993 "We Believe in Tomorrow" Governance and Accountability
Framework.

48 Recommendations for School Improvement, 1999-2000 Annual Report.

March 21, 2001 Five Year Progress Report to NEASC.

June 21, 2002 State Labor Board Decision No. 3871 (Case #TPP-22,262) Decision and
Dismissal of Complaint.

April 24, 2000 Letter from NEASC to Joseph Wall.

August 7, 2000 Letter from NEASC to Jose Colon-Rivas.

August 1, 2001 Letter from NEASC to Jose Colon-Rivas re: continuing HPHS's
accreditation.


**12.    ANTICIPATED EVIDENTIARY PROBLEMS/MOTIONS IN LIMINE:**

The parties are filing this day a number of Motions in Limine.

In addition, plaintiff objects to defendants' numbered proposed exhibits 1 and 2 as likely to

lead to jury confusion and unnecessarily compound the proceedings, especially in light of the

stipulations of fact;  exhibits 12 and 13 as unnecessarily cumulative;  and exhibits 20 through

25 as never properly disclosed before this time, although apparently in existence and not work

product, and therefore excludable at the Court's discretion.  Plaintiff would expect to make further objections if defendants seek to introduce any of their unnumbered possible exhibits.

**13.**     **STIPULATIONS OF FACT AND LAW:**

A.     Stipulations of Fact

1.     Plaintiff Janice LaPenna is a female physical education teacher at Hartford Public High School (also called Hartford High or HPHS). She was born in 1951 and, thus, she was over the age of 40 during all the incidents at issue in this case.

2.     The Hartford Public Schools is the name of the Hartford school district.

3.     June Bernabucci is the Director of Unified Arts for the Hartford Public Schools. In that role, she oversees music, art, physical education and athletics for the Hartford Public Schools.  In the summer of 2000 and for at least three years before that time, she was the Athletic Director for the Hartford Public Schools.

4.     On or about July 1, 2000, Jose Colon-Rivas officially became the Principal of Hartford High.

5.     In 1997, the Connecticut Legislature had dissolved the Hartford Board of Education and created the State Board of Trustees for the Hartford Public Schools.  From then until late 2002, the State Board of Trustees was solely responsible for the management of the Hartford Public Schools.

6.      The Hartford Public Schools maintains a paid extracurricular assignment of Faculty Manager.  Each of the three public high schools in Hartford is assigned a Faculty Manager.

7.      In or around December of 1996, Plaintiff became the Faculty Manager at Hartford High.  She was paid a stipend for the Faculty Manager assignment in addition to her pay as a teacher.

8.      The stipend for the Faculty Manager assignment in the Hartford Public Schools, Step 3, as established by contract, was as follows:  $9,950.00 for the 2000-2001 school year; $10,149.00 for the 2001-2002 school year;  $10,413.00 for the 2002-2003 school year; $10,674.00 for the 2003-2004 school year; and $10,938.00 for the 2004-2005 school year.

9.      In 1999, the Hartford Public Schools and the Board of Trustees entered into a contract with the union representing Hartford teachers.  The contract provided that the extracurricular assignment of Faculty Manager would have a two-year term, expiring in June, 2001; thereafter, the extracurricular assignment would be posted and anyone meeting the minimum criteria would be free to apply.

10.      In August, 2000, David Hodge, a white male under the age of 40, was transferred to Hartford High to teach physical education.

11.      David Hodge was appointed acting Faculty Manager in 2000.

12.      Ms. LaPenna filed a union grievance over the Faculty Manager assignment.

13. In May of 2002, Ms. LaPenna's grievance, concerning the Faculty Manager assignment was scheduled to be heard by an arbitrator. Just prior to the arbitration of that grievance, the Hartford Public Schools agreed to accept Ms. LaPenna's grievance concerning the Faculty Manager assignment for the 2000-2001 school year. Ms. LaPenna was paid the full stipend that she would have earned as Faculty Manager at Hartford High for the 2000-2001 school year.

14. In May, 2001, the Faculty Manager position was posted and both Janice LaPenna and David Hodge applied for the job.

B.    Stipulations of Law

1. All administrative procedural conditions precedent to the filing of plaintiff's gender discrimination and age discrimination claims have been met.

C.    Stipulations of Contested Issues of Fact and Law

1. Did Janice LaPenna speak out on the issue of whether the interscholastic athletic teams of the other public high schools in Hartford should be required to include teams from the Sports Sciences Academy in their scheduled games, a matter of public concern?

Plaintiff's Statement of Contested Issues of Fact and Law:

1. Who made the decision to transfer Janice LaPenna out of Hartford High?

2. Why was Janice LaPenna transferred out of Hartford High?

3.      Could Janice LaPenna have continued in her position as Faculty Manager for Hartford High, while teaching at Webster School?

4.      Who decided Janice LaPenna could not continue in her position as Faculty Manager?

5.      Why did HPS refuse to allow Janice LaPenna to continue in her position as Faculty Manager?

6.      Did Janice LaPenna speak out on whether the Superintendent should hear and consider the concerns raised by the high school athletic coaches before directing them to include teams from the Sports Sciences Academy in their scheduled games, a matter of concern?

7.      Were the decisions to remove Janice LaPenna from her position as Faculty Manager, and not to return her to that position after she returned to Hartford High, motivated, at least in part, by Janice LaPenna's speech on a matter of public concern?

8.      Were the decisions at issue motivated, at least in part, by Janice LaPenna's gender, her age, or a combination of her gender and age?  If so, were the defendants aware, at the time of making the decision or ratifying the decision, that it was a violation of federal law to take an adverse employment action because of age and/or gender?

9.      If the decision to remove Janice LaPenna from her position as Faculty Manager was a direct and unavoidable result of transferring her to an elementary school, was the transfer itself therefore an adverse action?

10.      What other opportunities were lost to Janice LaPenna because she was transferred to an elementary school?

11.      What other opportunities were lost to Janice LaPenna because she was removed from her position as Faculty Manager?

12.      Was HPS legally obligated to provide Janice LaPenna with a meaningful opportunity to meet with the Director of Human Resources, as the agent of the Superintendent, or another high-level HPS administrator with authority to effect a reversal of the decision, prior to making a final decision whether to transfer her out of Hartford Public High School?  If so, did HPS fail in this legal duty?

13.      If Janice LaPenna had not been removed from her position as Faculty Manager in 2000, is it more likely than not that she would have continued in that position beyond June 30, 2001; and, if so, for how long?

14.      What economic and non-economic injuries has Janice LaPenna suffered as a result of any unlawful conduct of any of the defendants?

Defendants Statement of Contested Issues of Fact and Law:

45

1.      Can Ms. LaPenna prove that she suffered an adverse employment action when she lost the Faculty Manager assignment at Hartford Public High School in 2000?

2.      Can Ms. LaPenna prove that the Hartford Public Schools or the State Board intentionally discriminated against her on the basis of her age with respect to the Faculty Manager assignment in 2000?

3.      Can Ms. LaPenna prove that the Hartford Public Schools or the State Board intentionally discriminated against her on the basis of her sex with respect to the Faculty Manager assignment in 2000?

4.      Can Ms. LaPenna prove that the Defendants intentionally violated her Fourteenth Amendment right to equal protection when she lost the Faculty Manager assignment at Hartford Public High School in 2000?

5.      Can Ms. LaPenna prove that she possessed a Constitutionally protected property interest in the Faculty Manager assignment at Hartford Public High School in 2000?

6.      Can Ms. LaPenna prove that the Defendants unlawfully denied her her procedural due process rights when she lost the Faculty Manager assignment at Hartford Public High School in 2000?

7.      Can Ms. LaPenna prove that the relevant Defendants retaliated against her for Constitutionally protected speech on a matter of public concern when she lost the Faculty Manager assignment at Hartford Public High School in 2000?

8.      Would the relevant Defendants have taken the same actions even if Ms. LaPenna had not engaged in any constitutionally protected speech?

9.      Was it objectively reasonable for Ms. Bernabucci and Mr. Colon-Rivas to believe that their actions, if any, with respect to Ms. LaPenna's loss of the Faculty Manager assignment in 2000 did not violate Ms. LaPenna's First or Fourteenth Amendment rights?

10.     If liability in determined in favor of Ms. LaPenna, what has Ms. LaPenna proven are appropriate damages?

11.     Should any damages award be reduced for failure to minimize damages?

## 14.    <u>TRIAL TO JURY</u>:

(b)(1)  <u>Proposed Voir Dire Questions</u>:

1.      Do you or any member of your family know Ms. Janice LaPenna, any member of Ms. LaPenna's family, or anyone who has ever worked with her or been associated with her? If so, please describe the circumstances.

2.      Do you or any member of your family know Mr. Louis LaPenna, the head basketball coach at Weaver High School in Hartford? If so, please describe the circumstances.

3.      Do you or any member of your family, know or have you had dealings with any of the following persons or law firms or with their immediate respective families? If so, please describe the circumstances.

Attorney Judith D. Meyer

Attorney Joseph W. McQuade

The law firm of Kainen, Escalera & McHale, P.C., in Hartford

Cynthia Turcotte

Betty Gunn

William Hagan

Harry Holloway

Joseph Wall

Jose Colon-Rivas

June Bernabucci

Anthony Amato

Robert Stacy

Robert Henry

Gail Johnson

Harriet Marek

Paul Stringer

Lindy Remigino

Helen Greene

Marjorie Jackson

Aida Fernandez-Ramos

Ezequiel Alejandro

Mark Zito

David Hodge

Matthew Steele

Edwin Vargas

Norma Lavoie

Freeman Burr

Joseph Lee

Thomas Ritter

Marilyn Kulpa

Diane Kutsavage-Prescod

4.      Have you, or any member of your family or any of your friends, ever been employed by the Hartford Public Schools?  If so, in what department and in what position?  For how long?  Did such employment end?  If so, how or under what circumstances?

5.      Have you, or any member of your family or any of your friends, ever applied to work for the Hartford Public Schools?  If you or your family member or friend were not hired, why not?

6.      Do you, or any member of your family or your friends, know or have dealings with employees of the Hartford Public Schools?

7.      Have you, or any member of your family or any of your friends, ever been employed by in a school?  If so, please state which school, the number of years of employment, the position and department in which you, your family member or friend were employed, whether you, your family member of friend are still employed there and, if applicable, the reasons that you, your family member or friend are no longer employed there.

8.      Have you, or any member of your family or any of your friends, ever been employed by a municipality?  If so, please state which municipality, the number of years of employment, the position and department in which you, your family member or friend were employed, whether you, your family member or friend are still employed there and, if applicable, the reasons that you, your family member or friend are no longer employed there.

9.      Are you, or any member of your family or any of your friends, members of a union?

10.     Do you believe that you are more likely to believe or credit the testimony of a union official or union member over testimony given by a non-union employee?  Are you more likely to believe or credit the testimony of a union official or union member over the testimony of management?  Do you believe you are more likely to believe or credit the testimony of a school administrator?

50

11.     Do you or any member of your family "tele-commute" or work from home?

12.     Have you read or heard anything about this case prior to today or had any knowledge about it?  If so, please explain.

13.     Have you heard anything about the Hartford Public Schools' employment practices?  If so, what have you heard or read?  Do you think that what you have heard or read will affect your ability to hear and impartially decide this case, based solely on the evidence presented here in court?

14.     Have you heard anything about Anthony Amato, the former Superintendent of Schools in Hartford?  If so, what have you heard?  Have you formed any opinions regarding him or the Hartford Public Schools?  Do you think that your opinions will affect your ability to hear and impartially decide this case based solely on the evidence presented here in court?

15.     Have you heard anything about Robert Henry, the current Superintendent of Schools in Hartford?  If so, what have you heard?  Have you formed any opinions regarding him or the Hartford Public Schools?  Do you think that your opinions will affect your ability to hear and impartially decide this case based solely on the evidence presented here in court?

16.     Have you heard about the Sheff v. O'Neill case?  What do you know?  Have you formed any opinions regarding efforts to racially integrate the Hartford Public Schools?

17.     Have you heard about the state's takeover of the Hartford Public Schools starting in 1997?  What have you heard?  Have you formed any opinions regarding the state takeover?

18.     Have you heard any information regarding the accreditation of Hartford Public High School?  What have you heard?  Have you formed any opinions regarding Hartford Public High School?

19.     Have you, any of your family members or friends ever been involuntarily transferred at work or denied a promotion?  Was it for discriminatory reasons?  Explain.

20.     Have you ever employed other people?  If so, explain the circumstances.

21.     Have you ever been involved in personnel, human resources or employee relations work?  If so, explain.

22.     Have you, any member of your family or friends, ever been laid off or terminated from employment?  If so, please explain the circumstances. Have you ever been in the position to have to lay off an employee or terminate someone's employment?

23.     Do you have any strong personal feelings about cities or urban schools?  If so, explain.

24.     Do you have any strong personal feelings about the Hartford Public Schools?  If so, explain.

25.     Do you have any strong personal feelings about teachers or school administrators?  If so, explain.

26.     Do you believe that you could treat a school district with the same fairness that you could treat an individual?  If not, why not?

27.     Have you or any member of your family or your friends ever felt discriminated against or treated unfairly because of race, sex, age, color, disability, national origin or sexual orientation?  If so, please explain the circumstances.  What action, if any, did you, your family member or close friend take?  What was the result of that action?  Were you, your family member or your friend satisfied with the results?

28.     Have you or any member of your family or your friends ever felt discriminated against or treated unfairly because of your speech or positions that you have argued?  If so, please explain the circumstances.  What action, if any, did you, your family member or close friend take?  What was the result of that action?  Were you, your family member or your friend satisfied with the results?

29.     Have you, or any member of your family or friends ever been accused of discrimination or retaliation or any other unfair practice?  What action was taken, if any?  What was the result?

30.     Have you, any of your family members or friends ever been involved in a lawsuit either as a plaintiff, defendant or witness?  If so, what type of case was it and what was

your or their involvement?  What was the result?  Were you or they satisfied with the result?
Explain.

31.    Have you, any member of your family or friends, ever filed charges or claims of
employment discrimination with any governmental agency?  If so, what type of claim was it?
What was the outcome?  Was the result satisfactory?

32.    Have you, any member of your family or friends, ever had a charge of this kind
filed against you, or him or her?  If so, what type of claim was it?  What was the outcome?
Was the result satisfactory?

33.    Has any member of the panel served on a jury before?  If so, please provide the
details regarding the nature of the case and the result in the case.

34.    Do you believe that if somebody sues a school district, he or she should get at
least something for having brought the lawsuit?

35.    Do you believe that, regardless of fault, the party with the greater resources and
greater ability to pay should do so?

36.    Do you believe it is wrong for a teacher to sue a school district if she believes
she has been treated unlawfully and has lost wages and suffered other harm as a result?

37.    Do you believe that school districts have "deep pockets" and can better afford to
pay claims because no individual will be hurt, only the taxpayers?

38.     Do you believe that school districts should not be held liable, because the taxpayers will have to pay the resulting damages?

39.     Do you have any preconceived notions about civil rights or employment discrimination litigation that would cause you not to have a free and open mind in this case?

40.     Do you have any feelings or beliefs that would cause you to favor the testimony of an employee over the testimony of a supervisor?  Do you have any feelings or beliefs that would cause you to favor the testimony of a supervisor over that of an employee?

41.     Do you have any feelings or beliefs that would cause you to favor the testimony of an older person over the testimony of a younger person?

42.     Do you have any feelings or beliefs that would cause you to favor the testimony of a younger person over the testimony of an older person?

43.     Have you, any member of your family or close friends ever been a member of or active in any group that advocates for the preservation or advancement of civil liberties?  What is the name of such organization and what is the nature of such involvement?

44.     Have you, any member of your family or close friends ever been in therapy for any reason, including emotional problems related to any employment?  If so, explain.

45.     Have you, any member of your family or close friends ever served as a coach or athletic director for a high school or college?  Describe such involvement.

(b)(2)   <u>Proposed Jury Instructions</u>:

The parties' proposed jury instructions are attached hereto.

(b)(3)   <u>Jury Interrogatories/Proposed Verdict Form</u>:

The parties are attaching hereto their respective Jury Interrogatories/Proposed Verdict Forms.

(b)(4)   <u>Proposed Case Statement</u>:

<u>See</u>, Item #7 "Statement of the Case."


|  |  |
|---|---|
|  | DEFENDANTS,<br>HARTFORD PUBLIC SCHOOLS, STATE<br>BOARD OF TRUSTEES FOR THE<br>HARTFORD PUBLIC SCHOOLS, JUNE |
| PLAINTIFF,<br>JANICE LAPENNA | BERNABUCCI and JOSE COLON-RIVAS |

By:_____

    Judith D. Meyer, ct04976
    3785 N. Camino de Oeste
    Tucson, AZ  85745
    (520) 743-8058 (tel.)
    (520) 743-8059 (fax)
    judithdmeyer@igc.org
    Her Attorney

By:_____

    Joseph W. McQuade, ct12121
    Kainen, Escalera & McHale, P.C.
    21 Oak Street, Suite 601
    Hartford, CT  06106
    (860) 493-0870 (tel.)
    (860) 493-0871 (fax)
    jmcquade@kemlaw.com
    Their Attorneys

14470