UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JANICE LAPENNA** | : | CIVIL ACTION |
| | : | MASTER DOCKET |
| Plaintiff, | : | 3:02CV753 (SRU) |
| v. | : | |
| | : | |
| **CITY OF HARTFORD, HARTFORD** | : | |
| **PUBLIC SCHOOLS, STATE BOARD** | : | |
| **OF TRUSTEES FOR THE HARTFORD** | : | |
| **PUBLIC SCHOOLS, ANTHONY** | : | |
| **AMATO, JUNE BERNABUCCI** | : | |
| and **JOSE COLON-RIVAS** | : | |
| Defendants. | : | |
| | : | |

| | | |
|---|---|---|
| **JANICE LAPENNA** | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:03CV1126 (SRU) |
| v. | : | |
| | : | |
| **JOSE COLON-RIVAS** | : | |
| Defendant. | : | |
| | : | **JANUARY 31, 2005** |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' THIRD MOTION IN LIMINE**

I. **INTRODUCTION**

The Plaintiff in this employment discrimination suit alleges that she was unlawfully discriminated against or retaliated against when she lost her extracurricular assignment as Faculty Manager at Hartford Public High School. More particularly, Plaintiff has asserted the following

Case 3:02-cv-00753-SRU    Document 85-2    Filed 01/31/2005    Page 2 of 10

claims: age and gender discrimination, retaliation for exercise of her First Amendment right to free speech and violations of her Fourteenth Amendment equal protection and due process rights.

Defendants request an order precluding witnesses, other than the relevant decision makers, from expressing their opinions regarding: Plaintiff's job performance; whether or not Plaintiff was discriminated against, harassed, or denied her Fourteenth Amendment equal protection or due process rights; whether the Faculty Manager extracurricular assignment could be performed from outside of Hartford Public High School; or whether she was the most qualified candidate for the Faculty Manager assignment at Hartford Public High School.

## II.     ARGUMENT

> Plaintiff's Witnesses, Except Relevant Decision Makers, Should Not Be Permitted To Express Their Opinions Regarding: Plaintiff's job performance; whether or not Plaintiff was discriminated against, retaliated against or denied her Fourteenth Amendment equal protection or due process rights; whether the Faculty Manager extracurricular assignment could be performed by a person stationed outside of Hartford Public High School; or whether she was the most <u>qualified person for the Faculty Manager assignment at Hartford Public High School</u>.

Neither party has disclosed any expert witnesses during the course of discovery or in the Trial Preparation Memorandum. However, Defendants are concerned that Plaintiff will attempt to offer inadmissible opinion testimony from individuals not qualified to testify regarding such matters.

Plaintiff has listed Cynthia Turcotte, a physical education teacher who was transferred out of and back into Hartford Public High School in 2000 with Plaintiff, and Elizabeth Gunn,

2

who is expected to testify regarding, <u>inter alia</u>, her "experience as a teacher and coach at Hartford High." Plaintiff also lists several union officials, William Hagan and Edwin Vargas, as witnesses. Mr. Hagan and Mr. Vargas are to testify regarding, <u>inter alia</u>, their "experiences with the HPS administration concerning the transfer of teachers out of Hartford High in the summer of 2000." While these witnesses may testify to their relevant facts that they observed, the Defendants are concerned that such witnesses are likely to offer their opinions as to whether Plaintiff was the victim of unlawful discrimination.

Additionally, Plaintiff offers testimony from the following witnesses regarding the issue of whether she could have performed the Hartford Public High School Faculty Manager extracurricular assignment while she was stationed at Webster Elementary School: Plaintiff ("the nature of and her performance of assigned job duties" "her continuance or removal from her position as Faculty Manager" "the reasons why it would be easier to perform the Faculty Manager position at Hartford High, while she was assigned to teach at Webster School"); Louis Lapenna ("his interactions with the Faculty Manager at Weaver High, and the fact that Mr. Steele teaches at a different school much of the day . . . ."); Elizabeth Gunn ("her experience of what the Faculty Manager does at school"); Harry Holloway ("He will also testify about the job of Faculty Manager, its requirements, and the feasibility of having a Faculty Manager for Hartford High who was not present for the first hour or so after the school day"). Also, Plaintiff lists in her "Statement of Contested Issues of Fact and Law" the following: "Could Janice

Lapenna have continued in her position as Faculty Manager?"; "Who decided Janice Lapenna could not continue in her position as Faculty Manager?" and "Why did HPS refuse to allow Janice Lapenna to continue in her position as Faculty Manager?" While all of these people may have an opinion on whether someone can perform the Faculty Manager assignment while assigned to teach exclusively at another school, none of these witnesses are the decision-makers. The opinions of these witnesses are irrelevant and such testimony is likely to confuse the jury.

      Given this description of such testimony, it is likely that these witnesses will be asked to (or will spontaneously) testify as to their opinion about whether the plaintiff was discriminated against, retaliated against or denied her Fourteenth Amendment equal protection or due process rights by Defendants or whether she could have performed the Faculty Manager assignment off-site. Such testimony is entirely irrelevant to Plaintiff's claims in this case since these witnesses were not the decision-makers with respect to the alleged actions of Defendants. Accordingly, Defendants object to the admission of such opinion testimony, since it would have no probative value whatsoever and should be excluded under Rule 401 of the Federal Rules of Evidence. Further, these witnesses do not have a sufficient basis of knowledge upon which to opine as to whether plaintiff was the victim of unlawful retaliation or other illegal actions. Accordingly, the introduction into evidence of other individuals' opinions about the plaintiff's discrimination claims would be improper, highly prejudicial and inadmissible under Rule 403 of the Federal Rules of Evidence, since it would cause confusion, mislead the jury, and be unfairly prejudicial.

Additionally, the Defendants object to such testimony under Rule 701.  In Hester v. BIC Corp., 225 F.3d 178, 185 (2d Cir. 2000), the Second Circuit joined other circuits in holding that "in an employment discrimination action, Rule 701(b) bars lay opinion testimony that amounts to naked speculation concerning the motivation for a defendant's adverse employment decision.  Witnesses are free to testify fully as to their own observations of the defendant's interactions with the plaintiff or with other employees, but 'the witness's opinion as to the defendant's [ultimate motivations] will often not be helpful within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant' was motivated by an impermissible animus." Id.  Thus, in Hester, the Second Circuit found harmful error and vacated a jury verdict, where the trial court allowed four witnesses who neither were involved in the decision-making process nor had personal knowledge of the decision-making process to testify regarding their speculation as to racial animus.  Id. at 184-86; see also, McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507 (8th Cir. 1995) (a supervisor's agreement with the plaintiff's claim that she was reassigned because of her gender was not evidence of bias because the supervisor had no role in the decision-making process); Visser v. Packer Engineering, 924 F.2d 655 (7th Cir. 1991) (testimony from co-workers that plaintiff was terminated because of his age was inadmissible because it was not based on personal knowledge).

Numerous courts have held that statements made by employees not involved in the decision-making process, which purport to describe the reason for the action under dispute or the

performance of the plaintiff, are not probative of an intent to discriminate by the decision-maker. See e.g., Khachikian v. BASF Corp., 1993 U.S. Dist. LEXIS 16053, at *35, 64 FEP Cases 1842, 1860-1851 (N.D.N.Y. Nov. 5, 1993); Gagne v. Northwestern National Ins. Co., 881 F.2d 309, 316, 50 FEP Cases 601, 605 (6th Cir. 1989); Menard v. First Security Service Corp., 848 F.2d 281, 286-87, 46 FEP Cases 1575, 1578 (1st Cir. 1988); Kotarski v. Binks Mfg. Co., 837 F. Supp. 247, 63 FEP Cases 366, 372 (N.D.Ill. 1993).

In Visser v. Packer Engineering, supra, the Seventh Circuit ruled that affidavits submitted by three of the plaintiffs' co-workers, in which the co-workers expressed their opinions that the plaintiff was discriminated against, were inadmissible. The Seventh Circuit reasoned as follows:

> "The affiants do not report admissions by [the decision-maker] about his motives in firing [the plaintiff]. They do not report primary facts from which a reasonable person in their position would infer that one of [the decision-maker's] motives was to deprive [the plaintiff] of his pension. They construct a psychological model of [the decision-maker] and deduce from it that he *must* have wanted to do [the plaintiff] out of a pension. This is the kind of argumentation one expects in a closing argument. It is doubtful that a psychiatrist or psychologist would be allowed to offer it as expert testimony -- it comes awfully close to arguing bad conduct from bad character, contrary to Fed. R. Evid. 404(a). It certainly exceeds the competence of a lay witness.
>
> Discrimination law would be unmanageable if disgruntled employees -- the friends of the plaintiff and often people in the same legal position as the plaintiff -- could defeat summary judgment by affidavits speculating about the defendant's motives. . . .The evidence here is speculation about the defendant's motives in dealing not with the witnesses but with the plaintiff. The affiants are a self-

>appointed biased tribunal to sit in judgment of [the decision-maker's] motives.

Visser, supra, 55 FEP Cases at 68.

Similarly, in Menard v. First Security Service Corp., supra, the First Circuit ruled that an affidavit submitted by the plaintiff's former supervisor, in which the supervisor expressed his opinion that the plaintiff was doing an excellent job and that the plaintiff was not responsible for the problems for which he was terminated was not probative of discrimination by the company. Id., 848 F.2d at 286-87. The First Circuit reasoned that the supervisor lacked personal knowledge of the reasons for the plaintiff's termination because he was not involved in, or informed of, any of the discussions concerning the problems on a particular account, nor was the supervisor employed at the time plaintiff was terminated. Id. Accordingly, the court affirmed the grant of summary judgment for the employer on the discrimination claim because the supervisor's affidavit could not establish the requisite pretextual intent by the employer in the termination decision.

In Gagne v. Northwestern National Ins. Co., supra, the Sixth Circuit ruled that affidavits submitted by three of the plaintiffs' co-workers, in which the co-workers expressed their opinions that the plaintiff was performing work in a satisfactory manner, were not probative of discrimination by the company. The court reasoned that none of the co-workers "had [ever] been in a position to observe or evaluate [the plaintiff's] job performance. As such, these individuals lacked the requisite personal knowledge or expertise to testify as to [the plaintiff's] work proficiencies." Accordingly, the court affirmed the grant of summary judgment for the employer on the age discrimination claim

because the affidavits could not establish the requisite pretextual intent by the employer in the termination decision. Similarly, in this case, very few of the witnesses listed by plaintiff were in a position to evaluate plaintiff's work performance and virtually none were in a position to express an opinion as to whether racial animus entered into the decision-making process for filling the acting assignment.

Finally, in Dryanski v. Sloan Valve Co., 1986 U.S. Dist. LEXIS 24502 (N.D.Ill. June 6, 1986), the Northern District of Illinois granted the Defendant's Motion in Limine to exclude the testimony of seventeen of the plaintiff's co-workers and subordinates, who were to give their opinions of his work performance. Id., 1986 U.S. Dist. LEXIS 24502 at *1-2. The court reasoned as follows:

> The issue here is whether [the plaintiff's] employer, not his fellow employees, thought [the plaintiff] was performing his job in a satisfactory manner. That [the plaintiff's] co-workers thought he was doing a good job is not probative of the opinion held by [the plaintiff's] supervisors. On the basis of Kephart [v. Institute of Gas Technology, 630 F.2d 1217 (7th Cir. 1980), cert. denied, 450 U.S. 959 (1981)],[1] this court finds that [the plaintiff's] seventeen co-worker witnesses are precluded from giving their opinion as to whether [the plaintiff's] job performance was satisfactory.

Id., 1986 U.S. Dist. LEXIS 24502 at *4-5.

---

[1] In Kephart, the Seventh Circuit ruled that "contrary assessments of [the plaintiff's] performance by [co-workers] do not impeach the legitimacy of his employer's expectations." Id., 630 F.2d at 1223.

Therefore, any testimony from Plaintiff's witnesses, other than decision-makers, as to Defendant's motivation for its alleged conduct is inadmissible.[2]

As these cases demonstrate, it is clear that the testimony of co-workers, subordinates and outsiders about matters outside their personal knowledge exceeds the competency of lay witnesses. See also Fed. R. Evid. 602. Therefore, such opinion testimony should be excluded from evidence.

## III.   CONCLUSION

For the foregoing reasons, Defendants' Third Motion in Limine should be granted.

---

[2] Id.; see also (Kocher v. Loyola University of New Orleans, 1997 U.S. Dist. LEXIS 2171, 3 (E.D.La. 1997) (granting motion in limine to exclude any testimony by co-workers that the plaintiff was discriminated against because of her disability. "Testimony based on mere personal belief, conjecture or speculation that [the defendant] discriminated against plaintiff is excludable [under Fed. R. Evid. 602]."); Kirts v. The Selmer Co., 1996 U.S. Dist. LEXIS 20321, 33 (N.D.Ind. 1996) (ruling that statements made by manager (Mr. Givens), who frequently worked with the decision-maker (Mr. Lieberg), were not admissible to prove age discrimination. "Mr. Givens' statements . . . merely assert his opinion on the issue of intent presented in an employment discrimination case, i.e., that Mr. Lieberg preferred younger workers and intentionally got rid of older workers to 'clean house.' Mr. Givens' opinions of Mr. Lieberg's motivations are subjective and conclusory, and not based on personal knowledge. His statements are not admissible to prove Mr. Lieberg's intent to discriminate."); Acampora v. Konica Business Machines, 1997 U.S. Dist. LEXIS 5481, 73 FEP Cases 1511, 1516 (E.D.Pa. 1997) (plaintiff fails to demonstrate ADEA violation based on deposition of co-worker, who testified as to the good performance of the plaintiff. "[T]he belief of a co-worker is not indicative of pretext. [The court] must focus on the perception of the decision maker."); Anderson v. Baker Healthcare Corp., 13 F.3d 1120, 1124-25 (7th Cir. 1994) (affidavit of former supervisor and testimony of co-worker that plaintiff's performance was satisfactory and that admitted mishaps were not entirely his fault insufficient to defeat summary judgment.); Cherry v. Thermo Electron Corp., 800 F. Supp. 508, 511, n.2 (E.D.Mich. 1992) (statements from co-workers that plaintiff was being phased out because of his age, or transferred in an attempt to move him out of the company, are not probative of whether or not the defendant discriminated against the plaintiff due to his age. "Only statements by those with personal knowledge who were involved in [plaintiff's] discharge are relevant to this issue.").

DEFENDANTS,
HARTFORD PUBLIC SCHOOLS, STATE
BOARD OF TRUSTEES FOR THE HARTFORD
PUBLIC SCHOOLS, JUNE BERNABUCCI AND
JOSE COLON-RIVAS


By: _____
    Joseph W. McQuade, ct12121
    Kainen, Escalera & McHale, P.C.
    21 Oak Street, Suite 601
    Hartford, CT  06106
    Telephone (860) 493-0870
    Facsimile (860) 493-0871
    jmcquade@kemlaw.com
    Their Attorney


**CERTIFICATION OF SERVICE**

This is to certify that a copy of the foregoing Memorandum of Law in Support of Defendants' Third Motion in Limine was sent via first-class U. S. Mail, postage prepaid, on this the 31st day of January 2005 to:

Judith D. Meyer, Esq.
Law Office of Judith D. Meyer
3785 N. Camino de Oeste
Tucson, AZ  85745

And e-mailed to:  judithdmeyer@igc.org


_____
    Joseph W. McQuade

16821