UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JANICE LAPENNA** | : | **CIVIL ACTION** |
| | : | **MASTER DOCKET** |
| **Plaintiff,** | : | **3:02CV753 (SRU)** |
| **v.** | : | |
| | : | |
| **CITY OF HARTFORD, HARTFORD** | : | |
| **PUBLIC SCHOOLS, STATE BOARD** | : | |
| **OF TRUSTEES FOR THE HARTFORD** | : | |
| **PUBLIC SCHOOLS, ANTHONY** | : | |
| **AMATO, JUNE BERNABUCCI** | : | |
| **and JOSE COLON-RIVAS** | : | |
| **Defendants.** | : | |
| | : | |

| | | |
|---|---|---|
| **JANICE LAPENNA** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:03CV1126 (SRU)** |
| **v.** | : | |
| | : | |
| **JOSE COLON-RIVAS** | : | |
| **Defendant.** | : | |
| | : | **JANUARY 31, 2005** |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' FOURTH MOTION IN LIMINE**

I.    **INTRODUCTION**

The Plaintiff in this employment discrimination suit alleges that she was unlawfully

discriminated against or retaliated against when she lost her extracurricular assignment as Faculty

Manager at Hartford Public High School.  More particularly, Plaintiff has asserted the following

claims: age and gender discrimination, retaliation for exercise of her First Amendment right to free speech and violations of her Fourteenth Amendment equal protection and due process rights.

Defendants request an order precluding: (a) evidence on the issue of damages for any period of time after June 2001; and (b) testimony from any witnesses regarding whether or not Plaintiff would have remained as Faculty Manager at Hartford Public High School beyond June 2001.

## II.    ARGUMENT

The parties have agreed to stipulate to the following: "The Hartford Public Schools maintains a paid extracurricular assignment of Faculty Manager. Each of the three public high schools in Hartford is assigned a Faculty Manager."; "In 1999, the Hartford Public Schools and the Board of Trustees entered into a contract with the union representing Hartford teachers. The contract provided that the extracurricular assignment would be posted and anyone meeting the minimum criteria would be free to apply."; and "In May, 2001, the Faculty Manager position was posted and both Janice LaPenna and David Hodge applied for the job." Pre-Trial Memorandum at Section 13, Stipulations of Fact 6, 9 and 14. The relevant collective bargaining agreement provides: "Appointments to extracurricular positions . . . shall be for a two year term, during which the teacher may be removed only for just cause. At the end of the term, the position shall be re-posted and shall be open to all candidates, including the incumbent." Collective Bargaining Agreement between the State Board and the Hartford Federation of

Teachers (July 1, 1999 – June 30, 2002) at Article XI § C (excerpt attached hereto as Exhibit A);

Collective Bargaining Agreement between the State Board and the Hartford Federation of

Teachers (July 1, 2002 – June 30, 2005) at Article XI §C (excerpt attached hereto as Exhibit B).

There is no language in the contract providing an incumbent candidate with any advantage over

anyone else applying for an extracurricular assignment, unless the applicant is not within the

teachers' bargaining unit. In short, every two years, all applicants for an extracurricular

assignment are provided with an equal opportunity to convince the decision-maker to select them

for the extracurricular assignment.

    A review of Plaintiff's Second Amended Complaint (as well as its predecessors and the

complaint filed in the action against Mr. Colon-Rivas) reveals no mention of the postings and

interviews for the Faculty Manager assignment in 2001 or 2002. Thus, Plaintiff has never

asserted a claim that she was retaliated against or discriminated against with respect to those

selection processes. Consequently, Plaintiff can only claim damages for the period of time up to

June 2001. As a result, any evidence regarding damages after June 2001 is irrelevant and

immaterial to this trial.[1] Fed. R. Evid. 401, 403. The 2001 and 2003 Faculty Manager selection

processes are not at issue here.

---

[1] Defendants concede that Plaintiff conceivably could offer admissible evidence that her alleged emotional distress over the loss of the Faculty Manager assignment in 2000 manifested itself after June 2001. However, any proposed testimony regarding her alleged emotional distress because she no longer served as Faculty Manager after June 2001 would be irrelevant.

Despite the fact that the 2001 and 2003 selection processes for the Faculty Manager assignment are not a part of this case, Plaintiff has consistently asserted that, had she not lost the Faculty Manager assignment in 2000, she would remain as that Faculty Manager through this day. Such an assertion is based on pure speculation. Moreover, any testimony making such an assertion is inadmissible speculation.

The record establishes that the Faculty Manager assignment is for a two year term and the term at issue expired in June 2001. Exhibits A & B; Stipulations of Fact. Under the contract, the extracurricular assignments are posted and all persons meeting the minimum criteria are free to apply. Exhibits A & B. When applicants from within the teachers' bargaining unit apply, the contract gives no preference to one applicant over any other applicant. Further, the contract does not require the decisionmaker to rely on any particular criterion when selecting between applicants who are members of the teachers' bargaining unit. Selection to the Faculty Manager assignment depends upon the nature of the applicants and the decisionmaker. For example, there is nothing in the contract preventing a decisionmaker from deciding to rotate the Faculty Manager assignment among qualified applicants.

Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." In this case, no witness can testify as to what might have happened if Plaintiff had not lost the Faculty Manager assignment in 2000. As it turned out, both Mr. Hodge and Ms.

LaPenna applied for the assignment in 2001 and Mr. Hodge was selected. No one can say with any degree of accuracy whether Plaintiff would have been selected in 2001, even if she had not lost the Faculty Manager assignment in the previous year.

Likewise, Rule 701 prevents the entry into evidence of witnesses' opinions as to whether Plaintiff would have retained the Faculty Manager assignment beyond 2001. Under Fed. R. Evid. 701(a), a lay witness' testimony in the form of opinions or inferences is limited to those opinions or inferences that are rationally based on the perception of the witness. In this case, none of the witnesses can rationally opine on what might have happened had Plaintiff remained as the Faculty Manager through June of 2001. There are simply too many variables at play to provide for a rational basis to such testimony.

Under Rule 701(b), the lay opinion testimony must be "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Rule 701(b) "is designed to 'provide assurances against the admission of opinions which would merely tell the jury what result to reach.' Thus if 'attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by [Rule 701(b)].'" Hester v. BIC Corp., 225 F.3d 178, 181-182 (2d Cir. 2000) (citations omitted). Thus, the "'likely benefits' of lay opinion testimony 'must outweigh its costs.'" Hester, 225 F.3d at 182. Because any proposed opinion testimony on whether Plaintiff would have prevailed in the 2001 and 2003 selection processes is nothing more than speculation, such testimony is not

helpful to a clearer understanding of the witness' testimony and does nothing to help determine a

fact in issue.  Such testimony is simply a matter of witness' choosing up sides to bolster one

party's position.  Therefore, such testimony should be excluded under Fed. R. Evid. 701.

### III.     CONCLUSION

For the foregoing reasons, Defendants' Fourth Motion in Limine should be granted.

> DEFENDANTS,
> HARTFORD PUBLIC SCHOOLS, STATE
> BOARD OF TRUSTEES FOR THE HARTFORD
> PUBLIC SCHOOLS, JUNE BERNABUCCI AND
> JOSE COLON-RIVAS
>
> By: _____
>      Joseph W. McQuade, ct12121
>      Kainen, Escalera & McHale, P.C.
>      21 Oak Street, Suite 601
>      Hartford, CT  06106
>      Telephone (860) 493-0870
>      Facsimile (860) 493-0871
>      jmcquade@kemlaw.com
>      Their Attorney

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing Memorandum of Law in Support of

Defendants' Fourth Motion in Limine was sent via e-mail on this the 31st day of January 2005

to:

Judith D. Meyer, Esq.
Law Office of Judith D. Meyer
3785 N. Camino de Oeste
Tucson, AZ 85745

At: judithdmeyer@igc.org

16824

Joseph W. McQuade

7

**EXHIBIT A**

REVISED VERSION – AUGUST 23, 1999

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN

## THE STATE BOARD OF TRUSTEES FOR THE HARTFORD PUBLIC SCHOOLS

## AND

## THE HARTFORD FEDERATION OF TEACHERS

## LOCAL NO. 1018, AFT, AFL-CIO

## JULY 1, 1999 - JUNE 30, 2002

LAP 000042

any teacher whose assignment is changed by the resolution shall receive five (5) days prior notification of said change of assignment. If the union appointed monitor(s) rejects the proposal of the administration, the union appointed monitor(s) shall within 7 days present at a meeting, a comprehensive written proposal to the administration to resolve all outstanding class size issues. If this does not resolve the outstanding issues, said dispute shall be appealed by the Union within five (5) days to the Board of Education for resolution.

E.    The Board of Education shall render its decision within ten (10) days of receipt of such appeal.

F.    If the matter is not settled satisfactorily by the Board of Education, the Union may within ten (10) days of receipt of the Board's decision, submit the matter to the American Arbitration Association for final and binding arbitration utilizing the AAA expedited arbitration rules, practices and procedures.

In August of each year, the parties shall begin the arbitration selection process. The selected arbitrator shall make available five (5) days for hearings during the last two weeks of November. The hearings shall be held according to the rules and regulations of expedited arbitration.

The resulting remedy, if any, shall address the problems encountered as a result of combination and/or oversized classes. The arbitrator shall have full authority to fashion an appropriate remedy.

## ARTICLE XI - EXTRACURRICULAR ACTIVITIES

A.    Assignments to paid extracurricular activities shall be voluntary. In the event that no volunteers are forthcoming for a given extracurricular activity for which there is a provision for payment in Appendix B annexed to this Agreement, a teacher may be appointed by his/her immediate supervisor, provided that no teacher may be required to accept such appointment in two (2) successive years.

B.    Vacancies in such assignments for which compensation is provided shall be posted for a period of ten days as they become available. The posting shall include the qualifications required and the qualifications preferred for the position. Where the posted extracurricular activity is limited to one school, then the activity may be posted with preference to unit members within the school.

C.    Members of the bargaining unit shall have preference for all such positions, provided that they are qualified. Appointments to extracurricular positions (with the exception of mandatory assignments made in accordance with Section A above) shall be for a two year term, during which the teacher may be removed only for just cause. At the end of the term, the position shall be re-posted and shall be open to all candidates, including the incumbent.

LAP 000067

D.   Any teacher involved in athletic coaching shall not be scheduled for detention time which will conflict with that activity. However, excused time for this activity will be made up after the activity is completed.

E.   It is understood that if an employee is expected to conduct activities within the school building after the normal school hours, a custodian shall be required to be in the building until the activity is concluded and such employee has left the premises.

## ARTICLE XII - MISCELLANEOUS

A.   Representation.

   1.   Any employee who is summoned to the Board of Education building by an administrator shall be given one day's notice except in the case of an emergency and shall be informed of the matter in regard to which his/her presence is required. If the employee reasonably believes that the meeting will result in disciplinary action he/she may be accompanied by a representative of the Union if he/she desires.

   2.   If a school administrator summons a teacher to the school office, the teacher shall be informed a reasonable time in advance of the meeting in regard to which his/her presence is desired. If the employee reasonably believes that the meeting will result in disciplinary action he/she may be accompanied by a representative of the Union if he/she desires.

B.   Substitutes.

   1.   Whenever a teacher, K-8, who is otherwise free from teaching or duty assignment is required to cover more than one half of a class period for another teacher, he/she shall be paid at the emergency coverage compensation rate listed in Appendix G of this Agreement for each class period. A regular K-6 teacher shall be considered free from teaching or duty assignment whenever a special, art, music or physical education teacher is instructing the class and an agreement has been reached with the special teacher or with the principal that does not require the presence of the regular teacher.

   Whenever a shortage of qualified substitutes occurs and the Board is unable to hire a substitute for an absent teacher according to its normal procedure and coverage is required, then coverage will be provided as follows:

LAP 000068

# EXHIBIT B

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN

## THE STATE BOARD OF TRUSTEES
## FOR THE HARTFORD PUBLIC SCHOOLS

### AND

## THE HARTFORD FEDERATION OF TEACHERS
## LOCAL NO. 1018, AFT, AFL-CIO

### JULY 1, 2002 - JUNE 30, 2005

F.  If the matter is not settled satisfactorily by the Superintendent, the Union may within ten (10) days of receipt of the Superintendent's decision, submit the matter to the American Arbitration Association for final and binding arbitration utilizing the AAA expedited arbitration rules, practices and procedures.

In August of each year, the parties shall begin the arbitration selection process. The selected arbitrator shall make available five (5) days for hearings during the last two weeks of November. The hearings shall be held according to the rules and regulations of expedited arbitration.

The resulting remedy, if any, shall address the problems encountered as a result of combination and/or oversized classes. The arbitrator shall have full authority to fashion an appropriate remedy.

## ARTICLE XI - EXTRACURRICULAR ACTIVITIES

A.  Assignments to paid extracurricular activities shall be voluntary. In the event that no volunteers are forthcoming for a given extracurricular activity for which there is a provision for payment in Appendix B annexed to this Agreement, a teacher may be appointed by his/her immediate supervisor, provided that no teacher may be required to accept such appointment in two (2) successive years.

B.  Vacancies in such assignments for which compensation is provided shall be posted for a period of ten days as they become available. The posting shall include the qualifications required and the qualifications preferred for the position. Where the posted extracurricular activity is limited to one school, then the activity may be posted with preference to unit members within the school.

C.  Members of the bargaining unit shall have preference for all such positions, provided that they are qualified. Appointments to extracurricular positions (with the exception of mandatory assignments made in accordance with Section A above) shall be for a two year term., during which the teacher may be removed only for just cause. At the end of the term, the position shall be reposted and shall be open to all candidates, including the incumbent.

D.  Any teacher involved in athletic coaching shall not be scheduled for detention time which will conflict with that activity. However, excused time for this activity will be made up after the activity is completed.

E.  It is understood that if an employee is expected to conduct activities within the school building after the normal school hours, a custodian shall be required to be in the building until the activity is concluded and such employee has left the premises.

24