UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE LAPENNA, | : | CIVIL ACTION |
|     Plaintiff, | : | MASTER DOCKET |
| | : | 3:02CV753 (SRU) |
| v. | : | |
| | : | |
| HARTFORD PUBLIC SCHOOLS, | : | |
| STATE BOARD OF TRUSTEES FOR | : | |
| THE HARTFORD PUBLIC SCHOOLS, | : | |
| JUNE BERNABUCCI and | : | |
| JOSE COLON-RIVAS, | : | |
|     Defendants. | : | |
| | | |
| JANICE LAPENNA, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:03CV1126 (SRU) |
| | : | |
| v. | : | |
| | : | |
| JOSE COLON-RIVAS, | : | |
|     Defendant. | : | FEBRUARY 7, 2005 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' SECOND MOTION IN LIMINE**

    Plaintiff submits the following in response to the Defendants' Second Motion in Limine. In this Motion, defendants ask the Court to prohibit plaintiff from introducing any evidence, mention of or reference to discrimination or retaliation against any person other than plaintiff,

1

any adverse employment decision affecting individuals other than plaintiff, and administrative charges or lawsuits regarding discrimination or retaliation against employees other than plaintiff. The defendants claim they would be unfairly prejudiced by the admission of any such evidence. They accuse plaintiff of a "naked attempt to ... inflame the jury and suggest that they reward [her] for the treatment received by her husband," or to have the jury find that Ms. Bernabucci retaliated against plaintiff for her husband's speech.  Memorandum in Support of Defendants' Second Motion in Limine ("Second Defense Mem.") p. 4.

Perhaps the defendants do not fully appreciate that a very significant issue in this case, and one appropriately raised by plaintiff, is whether June Bernabucci, or other HPS administrators, penalized Plaintiff Janice LaPenna in order to chill any further speech by other teachers and coaches.  June Bernabucci's conduct towards other persons, especially those closely connected to plaintiff, in response to their speech on this topic, is directly relevant to her retaliatory motive and the purpose to chill further speech on this topic.

## STATEMENT OF THE CASE

The First Amendment claim in this case revolves around the response of the HPS administration when a group of teachers and coaches sought to meet with Superintendent Anthony Amato, to discuss their concerns about a mandate issued in a memorandum he signed (the "Directive," as Ms. Bernabucci, who drafted the memorandum, styled it).  The subject of the Amato Directive was that all athletic coaches would be required to alter the interscholastic game schedules for their teams, to include new teams from the Sports Sciences Academy ("SSA").  In

a previous year, when Ms. Bernabucci had convinced a previous superintendent to create such a mandate, a meeting had been held at which the coaches were permitted to voice their concerns, and then the mandate did not become effective. When the issue arose again in the fall of 1999, plaintiff prepared a petition seeking a meeting with Superintendent Amato, which petition was signed by the concerned coaches. Plaintiff asserts that it was her role as a ringleader in seeking further consideration of the concerns of the coaches, that led to the adverse actions at issue in this case. It is the very heart of the matter, to show the level of anger Ms. Bernabucci displayed when she believed, correctly or otherwise, that Louis LaPenna, or any other teacher or coach, had taken any action or expressed any view opposed to hers on this issue. It is evidence of retaliatory animus, and an intent to chill any further similar speech.

  Defendants have specifically identified, in their Motion and the Second Defense Mem., only the testimony of Louis LaPenna and of William Hagan, his union representative at the time and later the union's vice president, on the issue of a disciplinary measure administered by June Bernabucci against Mr. LaPenna. That incident is <u>directly</u> pertinent to the issues in this case, because it involved a false and irrational accusation by Ms. Bernabucci that Mr. LaPenna had faxed the Amato Directive to an athletic league official, in an attempt to "undermine" the Amato Directive or to "subvert" opportunities for SSA. *See,* Second Defense Mem., Exhibits A, B. She accused him of "insubordination," and threatened him with further discipline for "any action of this nature." *Id.* Exh. B. The evidence of this incident, and the opinions of Mr. LaPenna and Mr. Hagan regarding Ms. Bernabucci's conduct and conveyed attitude when she met with them, are

pithy to the issue of retaliatory motive. Moreover, Ms. Bernabucci's threatening conduct and statements to other teachers and coaches on the same subject matter are directly relevant to her purpose to chill further speech.

Plaintiff submits that exclusion of such evidence would be entirely improper in the case at bar. Evidence of actions taken by June Bernabucci against other HPS teachers and coaches who expressed opposition to the Amato Directive is admissible evidence from which the trier of fact is entitled to infer discriminatory or retaliatory intent against Ms. LaPenna. The issue is the level of animosity, bordering on the irrational, that Ms. Bernabucci demonstrated, when she believed any teacher was expressing an opinion regarding the SSA scheduling matter which was not her own. The evidence of her conduct towards other teachers and coaches directly related to expressions of such views, will tend to make a central material fact more probable.

## LEGAL ARGUMENT

### A.  EVIDENCE OF OTHER ADVERSE ACTIONS ARE ADMISSIBLE TO SHOW DISCRIMINATORY OR RETALIATORY ANIMUS

Contrary to the assertion of the defendants, evidence of other adverse actions by the same decision makers, or those whose decisions were "infected" by the same decision makers, is admissible to show discriminatory or retaliatory animus.

The jury must be permitted to decide the issue of retaliatory motive and intent to chill further speech on the totality of the circumstances of the case. That surely must include how

angry Ms. Bernabucci became, and how she acted on that anger, when a teacher or coach expressed disagreement with the Amato Directive – which was her own initiative, by her own admission.  A discriminatory or retaliatory purpose may often be inferred from the totality of the facts.  Howley v. Town of Stratford, 217 F.3d 141, 151 (2nd Cir. 2000);  Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977) (equal protection).  Accord, United States v. Tierney, 760 F.2d 382, 387-89 (1st Cir. 1985).  Stern v. Trustees of Columbia University of the City of New York, 131 F.3d 305, 314 (2d Cir. 1997), citing Washington v. Davis, 426 U.S. 229, 242 (1976) ("an invidious discriminatory purpose may often be inferred from the totality of the relevant facts").

Moreover, evidence of other acts of discrimination, which may tend to show a decision maker's attitude, intent, motive, plan, knowledge or absence of mistake or accident, is admissible in discrimination cases under Rule 404(b) Fed.R.Evid.  The United States Supreme Court has indicated a strong policy of permitting evidence of other similar acts by the same decision maker, on the issues of intent and pretext.  In National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002), the Court let stand the Ninth Circuit's ruling permitting evidence of other acts of discrimination in a race discrimination case, including racial jokes and negative comments or epithets at the work place.  122 S.Ct. 2076.  This was clearly evidence of "other acts," and actions directed at other employees, which was held admissible evidence from which a jury could legitimately infer the state of mind of the decision makers.  Similarly, Ms. Bernabucci's hostile treatment of other teachers or coaches for the same matter, has a tendency

to prove a retaliatory attitude toward anyone who opposed her initiative, and a purpose to chill any further such speech. Similarly, a general policy and practice to punish any dissent, to the extent Mr. Hagan observed it first-hand while representing teachers, is relevant to this retaliation claim. Evidence of other retaliatory acts should be freely admitted, because they illustrate the employer's attitude and they may well be probative of pretext. Conway v. Electro-Switch Corp., 825 F.2d 593, 597 (1st Cir. 1987) (discriminatory statements made by supervisors to women other than the plaintiff are relevant and admissible to show state of mind). *See, e.g.,* United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-14 n.2 (1983) (where the Court recognized that there cannot be an "eyewitness" or direct evidence of an employer's mental processes, *id.* p. 716, and a plaintiff must be permitted to show the employer's attitude in general toward a class of individuals). In the case at bar, plaintiff should be permitted to show Ms. Bernabucci's and the HPS administration's general attitude toward those who opposed the Amato Directive, which attitude is demonstrated by its actions towards other employees.

Evidence that a defendant has retaliated against another employee under similar circumstances "is evidence from which the jury could reasonably infer that [the defendant] had a similar motive or intent to retaliate against [the plaintiff]." Duckworth v. Ford, 83 F.3d 999, 1002 (8th Cir. 1996); *also see,* Heyne v. Caruso, 69 F.3d 1475, 1479-81 (9th Cir. 1995) (the probative value of evidence that a defendant also treated similarly situated employees unlawfully is "especially high" because of the inherent difficulty in proving state of mind); Becker v. ARCO Chem. Co., 207 F.3d 176, 194 n.8 (3rd Cir. 2000) (collecting cases); Burks v. Oklahoma

6

Pub. Co., 81 F.3d 975, 981 (10th Cir. 1996).

Defendants' assertion that the case of Haskell v. Kaman Corp., 743 F.2d 113 (2nd Cir. 1984), suggests that evidence of discrimination against other employees must be excluded, at the peril of reversible error, is inaccurate. In fact, the Kaman Court addressed an effort to show "pattern and practice" discrimination, through statistical evidence, with a sampling of only six carefully selected employees who were discharged over the course of eleven years. The Court noted,

> For such statistical evidence to be probative, however, the sample must be large enough to permit an inference that age was a determinative factor in the employer's decision.
>
> The sample in the present case of ten terminations over an 11-year period is not statistically significant, particularly against a background indicating that most of the Company's many officers had been employed by it for 10 or more years and were more likely than not in the protected age bracket (40 to 70 years). Indeed, the average age of the Company's officers rose during the period from 1969 and 1978 and Haskell irrationally excluded some older persons from the base "class" used by him for comparison. The courts have consistently rejected similar statistical samples as too small to be meaningful.

743 F.2d at 121. Haskell did not hold that evidence of conduct towards other employees was inadmissible, in contravention of the weight of Supreme Court and other precedent.

Evidence of June Bernabucci's attitude and conduct towards those who sought to address the SSA scheduling issue is central material evidence which must not be excluded.

**B.    THE FACT THAT THE EVIDENCE DISADVANTAGES THE DEFENDANTS DOES NOT RENDER IT INADMISSIBLE.**

Defendants apparently believe this testimony, or any relevant evidence, may lead to "prejudice;" but this does not mean it should be excluded.  Evidence is relevant precisely because it tends to make the factual contentions of one side more or less probable.  That does not render it <u>unfairly</u> prejudicial, which is the standard for exclusion.  Rule 403, Fed.R.Evid.  Evidence is not unfairly prejudicial and therefore inadmissible merely because it is adverse to the defendant's position.  As the Second Circuit explained in <u>Perry v. Ethan Allen</u>, 115 F.3d 143 (2nd Cir. 1997),

> [t]he prejudice that Rule 403 is concerned with involves some adverse effect ... beyond tending to prove the fact or issue that justified its admission into evidence. ...  Although any evidence that tends to establish liability is prejudicial to the interests of the defendant, the prejudice is unfair only if the evidence has "an undue tendency to suggest decision on an improper basis."  Fed. R. Evid. 403 Advisory Committee Notes (1972).

115 F.3d at 151 (citations and internal quotation marks omitted).

Plaintiff believes that this evidence will prove that June Bernabucci was irrationally angry about what she perceived as an attack on her "child," as she has called SSA;  that she issued entirely inappropriate and unjustified discipline when she believed someone opposed an advantage for her "child;"  and that in the meeting with Mr. Hagan and Mr. LaPenna, and the action she took against Mr. LaPenna, her conduct was unreasonable and retaliatory.

### C.  **THE SUBJECT OPINION TESTIMONY IS NOT INADMISSIBLE.**

To the extent that Mr. LaPenna and Mr. Hagan or other witnesses may be providing opinion testimony, it is not inadmissible on that basis.  If their opinions or inferences are

8

rationally based on their perceptions, and helpful to a clear understanding of their fact testimony, or to the determination of a fact in issue, it is admissible under Rules 701 and 704(a), Fed.R.Evid. Lightfoot v. Union Carbide Corp., 110 F.3d 898, 911 (2nd Cir. 1997); United States v. Rea, 958 F.2d 1206, 1214-15 (2nd Cir. 1992). When a witness describes a person as having been angry, of course he is expressing an opinion. It is the type of lay opinion that is admissible on a day-to-day basis, from persons who had direct interactions with the subject individual. Nobody is in a better position than Mr. LaPenna and Mr. Hagan to provide information about how Ms. Bernabucci responded to the "attacks" she perceived on her initiative, or to provide information about the chilling effect of Ms. Bernabucci's conduct on the teachers and coaches who had sought to have their concerns heard on the SSA scheduling issue. Defendants may try to discredit their testimony, but to the extent their observations were first-hand, they have directly relevant information which the jury should be permitted to consider, on the issue of retaliatory motive and the chilling effect of Ms. Bernabucci's conduct.

**D.    THE EVIDENCE AT ISSUE DOES NOT THREATEN AN UNREASONABLE EXPANSION OF THIS TRIAL.**

Contrary to defendant's contention, calling these two witnesses and the others on plaintiff's witness list to testify to the proposed subject matter, will not cause the scope of the trial to "expand significantly." Second Defense Mem. p. 6.    The incidents at issue are few and finite and have been the subject matter of discovery in this case already. The employees

involved in the incidents are already expected to testify, and the pertinent exhibits are already part of the parties' Joint Pretrial Memorandum. Unless the defendants can specify some – or even one – of the "numerous additional witnesses" they will be "forced to call," or identify the "substantial additional exhibits to rebut" such claims as plaintiff has identified, the Court should not entertain a broad exclusion of evidence on such flimsy grounds.

## CONCLUSION

The evidence at issue is admissible, and Defendant's Second Motion in Limine should be denied.

PLAINTIFF

By _____
Judith D. Meyer
Fed Bar No.: CT04976
3785 N. Camino de Oeste
Tucson, AZ 85745
Tel. (520) 743-8058 or (860) 202-1699
Fax (520) 743-8059 or (860) 677-6832
e-mail: judithdmeyer@igc.org
HER ATTORNEY

## CERTIFICATION

This is to certify that a copy of the foregoing was sent via first-class mail, postage prepaid, this 7th day of February, 2005, to the following counsel of record:
Joseph W. McQuade, Esq.
Kainen, Escalera & McHale, P.C.
21 Oak Street

Hartford, CT 06106

                                                _____

                                                Judith D. Meyer