UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE LAPENNA, | : | CIVIL ACTION |
|     Plaintiff, | : | MASTER DOCKET |
| | : | 3:02CV753 (SRU) |
| v. | : | |
| | : | |
| HARTFORD PUBLIC SCHOOLS, | : | |
| STATE BOARD OF TRUSTEES FOR | : | |
| THE HARTFORD PUBLIC SCHOOLS, | : | |
| JUNE BERNABUCCI and | : | |
| JOSE COLON-RIVAS, | : | |
|     Defendants. | : | |
| | | |
| JANICE LAPENNA, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:03CV1126 (SRU) |
| | : | |
| v. | : | |
| | : | |
| JOSE COLON-RIVAS, | : | |
|     Defendant. | : | FEBRUARY 7, 2005 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' FOURTH MOTION IN LIMINE**

Plaintiff submits the following in response to the Defendants' Fourth Motion in Limine, in which they ask the Court to preclude any evidence on whether plaintiff would have remained in the position of Faculty Manager after June, 2001, and any backpay damages she would have sustained from June, 2001 forward. Such a ruling would be contrary to binding precedent and extraordinarily unfair. The Motion should be denied.

1

Essentially, defendants argue, first, that plaintiff has made no claim that her removal from the Faculty Manager position disadvantaged her after June, 2001; and second, that only improper speculation could be offered to prove that she would have continued in the position if she were still the incumbent when the position was subsequently posted in 2001 and 2003. Memorandum in Support of Defendants' Fourth Motion in Limine ("Fourth Defense Mem."), pp. 3, 4.

**A.    THE ISSUE OF BACKPAY AFTER JUNE, 2001, IS PROPERLY PRESENTED IN THIS CASE.**

Defendants assert that plaintiff cannot claim damages beyond June, 2001, because she did not expressly complain of retaliation or discrimination in the 2001 or 2003 selection procedures for Faculty Manager. Fourth Defense Mem. p. 3. Defendants cite no authority that suggests the plaintiff was required to allege additional acts of discrimination in subsequent years, in order to assert that her economic damages from the actions in the summer of 2000 continue through the date of trial and beyond. Nor can they, as there exists no such requirement. But at any rate, at Paragraphs 43, 49, 54, 55, 67, 71, 76, and 77 of the Second Amended Complaint, plaintiff expressly alleged that she "has suffered and will continue to suffer ... loss of earnings." It is difficult to find any reasonable grounds for defendants' assertion.

From the start of this action, plaintiff has set forth her claim for lost wages through at least 2005, and beyond that through her expected date of retirement. Her statements of damages

2

in her Rule 26(a) disclosures, her responses to written discovery, and even the stipulations of fact in the Joint Pretrial Memorandum include the amount of wages she would have earned if she had remained employed as Faculty Manager through the end of the current collective bargaining agreement (which is the source of information on the amount of the lost wages). The defendant has not been prejudiced by any failure to disclose this as a claim in this case.

**B.     PLAINTIFF MAY INTRODUCE EVIDENCE THAT IT IS MORE LIKELY THAN NOT, THAT IF SHE HAD BEEN RETAINED IN 2000 SHE WOULD HAVE CONTINUED IN THE POSITION.**

Defendants assert that evidence that plaintiff would still be in the position today, had she been retained in 2000, can only be pure speculation and therefore inadmissible. Plaintiff seeks to introduce evidence that if she had remained in her position, and if she had not been a victim of discrimination and/or retaliation or subject to a decision-making process infected with the fruits of past retaliation, then it is more likely than not that she would have continued in the position at least through the current time.

In Banks v. Travelers Cos., 180 F.3d 358, 363-364 (2d Cir., 1999), the Court reversed a trial court's refusal, on the grounds that it would be "entirely too speculative," to instruct the jury on a similar issue. *Id.* The question in Banks was whether the plaintiff would have been retained after a subsequent reorganization, if she had not been the victim of an earlier discriminatory discharge. The Court of Appeals noted that an inference that a plaintiff would have been retained in the subsequent reorganization, was permissible. The jury could consider

the surrounding circumstances and the employer's conduct in the subsequent action, and make an inference that but for the earlier act of discrimination, the plaintiff would have continued after the subsequent reorganization. Similarly, in Paolitto v. John Brown E.&C., Inc., 151 F.3d 60 (2d Cir. 1998), the Court held that a jury was permitted to infer that, if the defendant had not violated the ADEA in an earlier decision not to promote the plaintiff, then the plaintiff would more probably than not have been retained after a subsequent layoff. The Court sustained each of these claims over defense objections that the evidence supporting them was overly speculative.

      This is appropriate, based upon the ancient and continuing notion of fairness, that where the defendant's own wrongdoing has created the need for speculation, he should not be permitted to benefit thereby. "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264 (1946) (although the jury may not render a verdict based entirely on speculation, it may make a "just and reasonable estimate of damages based on relevant data;" juries are allowed "to act upon probable and inferential, as well as direct and positive proof.").

      As defendants correctly point out, the parties have stipulated that the Faculty Manager position was a two-year contractual position, from which the employer could remove the incumbent only for good cause; and that the position was posted near the end of each two-year period. In 2001 it was posted again, one year after plaintiff had been removed from the position under circumstances which give rise to an inference of discrimination and retaliation. Plaintiff

intends to prove that no incumbent had <u>ever</u> been removed from this position, or <u>has</u> been so removed since that time; and that the incumbent, if s/he applied, has <u>always</u>, in every single selection, gotten the position. From this evidence alone, it is not "<u>entirely</u> speculative," as defendants assert, that plaintiff would have gotten the position again, had she been the incumbent.

In <u>Walker v. Ford Motor Co.</u>, 684 F.2d 1355 (11th Cir. 1982), a very frequently cited case on point, the Court addressed the issue of fixed-term contracts for teachers, and whether backpay damages should be allowed beyond the end of the fixed term, once an act of discrimination has been proven. The <u>Walker</u> Court did not have a teacher's contract before it; in that case it found, based upon precise evidence, that the plaintiff should not recover beyond the end of his eighteen-month training contract, because very few similarly situated employees actually did continue in employment after the period of training. But the Court examined the history of frequently permitting damages for teachers beyond their one-year contracts of employment, and the reasoning behind that history. The Court set forth a careful analysis of precedent in this area, particularly regarding teachers' contracts. As the <u>Walker</u> Court pointed out,

> a close review of these cases reveals a factual difference we perceive as critical: the teacher cases invariably included evidence that either the particular teacher's limited-term contract had been renewed in prior years or else that the school system involved typically had renewed teacher contracts. Putting this evidence in the perspective of our more general holdings on Title VII damages, this evidence fulfilled an initial burden concerning the plaintiff's economic loss by showing that absent discrimination a teacher reasonably could expect reemployment despite being hired under a fixed-term contract.

684 F.2d at 1362. The Court then articulated a test thus:

> Generalizing these holdings to a broad rule of Title VII damages, we conclude that the proper allocation of proof in cases involving fixed-term contracts is that a plaintiff must initially introduce some evidence showing that the economic injury resulting from the discharge extended beyond the employment term. As in the teacher discharge cases, this proof may consist of no more than a showing that the particular plaintiff's contract had been renewed in the past, that contracts of similarly situated employees had been renewed, or that the employer had made a promise of continued employment. Once the plaintiff carries this burden, and thus ... establishes the damages resulting from the discriminatory acts, then the burden shifts to the defendant to show by a preponderance of the evidence that the plaintiff would not have remained in employment beyond the contract term.

*Id.* (citing <u>Avery v. Homewood City Board of Education</u>, 674 F.2d 337 (5th Cir.1982), *cert. denied* 461 U.S. 943 (1983)).

Plaintiff submits that this test balances the unfairness of permitting a defendant to benefit from its retaliatory or discriminatory conduct, which prevented the plaintiff from demonstrating definitively what the result <u>would have been</u> absent the unlawful motive; against any danger of undue speculation. Plaintiff should be permitted to show evidence of the circumstances of the previous, concurrent and subsequent renewal of the contract of every single Faculty Manager who chose to reapply, and the reason she believes that absent the acts of retaliation or discrimination at issue the same would have been her fate. It should then be for the defendants to show why the plaintiff in particular would not have been so retained, even if she had been the incumbent in June, 2001. The danger of "entirely speculative" evidence claimed by the defendants is not present. To the extent the evidence cannot be definitive, once the plaintiff proves that retaliation or discrimination caused this uncertainty, it should be the defendants' burden, and not the plaintiff's burden, to overcome any doubt.

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny Defendants' Fourth Motion in Limine.

PLAINTIFF

By   /s/
Judith D. Meyer
Fed Bar No.: CT04976
3785 N. Camino de Oeste
Tucson, AZ 85745
Tel. (520) 743-8058 or (860) 202-1699
Fax (520) 743-8059 or (860) 677-6832
e-mail: judithdmeyer@igc.org
HER ATTORNEY

## **CERTIFICATION**

This is to certify that a copy of the foregoing was sent via first-class mail, postage prepaid, this 7th day of February, 2005, to the following counsel of record:
Joseph W. McQuade, Esq.
Kainen, Escalera & McHale, P.C.
21 Oak Street
Hartford, CT 06106

  /s/
Judith D. Meyer